Morgan D. Ross, Esq. (SBN 270650)
Robert B. Salgado, Esq. (SBN 297391)
**COUNTERPOINT LEGAL**
600 B Street, Ste 1550
San Diego, CA 92101
Tel:  (619) 780-3303
Fax: (619) 344-0332
morgan@counterpointfirm.com
rsalgado@counterpointfirm.com

*Attorneys for Plaintiffs and Putative Class*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL GARCIA, SALENA GARCIA, AND R.G., a minor by and through her guardians Michael Garcia and Salena Garcia, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> MICROSOFT CORPORATION and MOJANG AB, and DOES 1-10, <br><br> Defendants <br> _____ | Case No.: <br><br> **CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR VIOLATIONS OF:** <br><br> 1. Violation of California Invasion of Privacy Act (CIPA), Cal. Penal Code § 631 (Wiretapping) <br> 2. Violation of California Invasion of Privacy Act (CIPA), Cal. Penal Code § 632 <br> 3. Violation of California Invasion of Privacy Act (CIPA), Cal. Penal Code § 635 <br> 4. Violation of Intrusion Upon Seclusion (Common Law Invasion of Privacy) <br> 5. Violation of California Constitutional Right to Privacy (Cal. Const. art. I, § 1) <br> 6. Violation of California's Unfair Competition Law (UCL), Bus. & |

Prof. Code § 17200 et seq.

7. Declaratory and Injunctive Relief
(28 U.S.C. §§ 2201–2202)

**JURY TRIAL DEMANDED**

## INTRODUCTION

Plaintiffs MICHAEL GARCIA, SALENA GARCIA and R.G. (collectively "Plaintiffs") individually and on behalf of all others similarly situated, by and through Plaintiffs' undersigned counsel, bring this class action lawsuit against MICROSOFT CORPORATION, MOJANG AB collectively ("Defendants" or "Minecraft") and alleges, based upon information and belief and the investigation of Plaintiffs' counsel as follows:

## NATURE OF THE ACTION

1. This is a privacy class action brought on behalf of California residents who used Defendants' Minecraft websites, applications, and related online services, including the child-directed "Minecraft: Education Edition," from within the State of California.

2. Plaintiffs allege that Defendants Microsoft Corporation and Mojang AB secretly instrumented Minecraft-branded properties with tracking technologies—including session-replay, keystroke and mouse-movement logging, device fingerprinting, and embedded analytics and video integrations—that intercept, record, and transmit the contents of users' communications and detailed behavioral data in real time.

3. When California users—including children using Minecraft for

2

CLASS ACTION COMPLAINT

entertainment and in school settings—interact with Defendants' websites and applications, Defendants' code captures what users do and say on those properties, including page and form content, search terms, clicks, scrolls, and other interaction data, along with device identifiers and network information. Defendants then transmit this information to their own servers and to third-party analytics, advertising, fraud-prevention, and video-hosting providers for profiling, marketing, and product-development purposes.

4.   Defendants do not obtain valid, informed, prior consent from all parties to these communications before intercepting and duplicating them, and they do not clearly or prominently disclose that Minecraft-related properties are wired with technologies that function as modern eavesdropping devices. Any references to "cookies," "analytics," or "personalization" in Defendants' disclosures are generic, incomplete, and presented in a manner that would not reasonably inform ordinary consumers—much less children and parents—that their interactions are being continuously recorded and shared in this way.

5.   Defendants' conduct violates the California Invasion of Privacy Act ("CIPA"), including by (a) willfully intercepting and attempting to learn the contents of communications in transit using machines, instruments, or contrivances, and (b) manufacturing, assembling, furnishing, and possessing devices primarily designed for eavesdropping. Defendants' practices also constitute an intentional intrusion upon Plaintiffs' and class members' privacy that would be highly offensive to a reasonable person, violate Californians' constitutional right to privacy, and amount to unlawful and unfair business practices under California's Unfair Competition Law.

6.   Plaintiffs bring this action on behalf of themselves and a class of similarly situated California users to seek statutory damages, restitution and disgorgement, injunctive and declaratory relief, and all other remedies available at law or in equity, including an order requiring Defendants to cease their unlawful interception and

recording practices, to delete unlawfully collected data, and to implement privacy-protective safeguards for adults and children who use Minecraft-related services in California.

## **PARTIES**

7.    Plaintiff Michael Garcia is an adult individual and a resident of California. He is the father and legal guardian of Plaintiff R.G., a minor child. Michael Garcia has directly interacted with Defendants' "Minecraft" websites, applications, and related online services ("Minecraft Properties") from within California—including downloading and using Minecraft software, visiting minecraft.net and related web properties, and supervising R.G.'s use of Minecraft and Minecraft: Education Edition. In doing so, Michael Garcia's own electronic communications and device data were subjected to the tracking, interception, and recording practices alleged in this Complaint. Michael Garcia brings this action on his own behalf (to the extent his own communications and personal data were intercepted and exploited by Defendants), in his capacity as a consumer and as a parent, and on behalf of his minor child, R.G., as guardian. He has a strong interest in protecting his child's online privacy and would not have permitted R.G. to use the Minecraft Properties had he known of the hidden surveillance and tracking now at issue.

8.    Plaintiff Salena Garcia is an adult individual and a resident of California. She is the mother and legal guardian of Plaintiff R.G. Salena Garcia has also directly interacted with the Minecraft Properties from within California, including visiting Minecraft-related websites, accessing account and support pages, and assisting R.G. with set-up and use of Minecraft and Minecraft: Education Edition. In doing so, Salena Garcia was exposed to the same undisclosed interception and tracking practices that Defendants deployed on the Minecraft Properties, including the capture of her browser and device communications. Salena Garcia joins this action on her own behalf and as a guardian on behalf of R.G. Defendants' conduct interfered with her right to control what information is collected from her child and

CLASS ACTION COMPLAINT

how it is used. She brings this case to safeguard her own privacy interests and those of her child, and to hold Defendants accountable for their unlawful practices.

9.   Plaintiff R.G. is a minor child residing in California. R.G. has used the Minecraft Properties regularly during the relevant period, including playing Minecraft for entertainment and using Minecraft-related educational resources such as Minecraft: Education Edition from within the State of California. R.G. accessed these services via web browsers, launchers, and other applications to play, learn, and socialize. During significant portions of the Class Period, R.G. was under the age of eighteen, and at times under the age of thirteen. By and through her parents and legal guardians, Michael and Salena Garcia, R.G. brings this action because the electronic communications generated by her use of the Minecraft Properties—including page and form content, in-game and educational interactions, device identifiers, behavioral telemetry, and other online activity—were intercepted, recorded, transmitted, and exploited by Defendants without valid consent and without verifiable parental consent when required.

10. Defendant Microsoft Corporation ("Microsoft") is a corporation organized under the laws of the State of Washington with its principal place of business in Redmond, Washington. Microsoft develops, owns, operates, and controls the Minecraft Properties, including minecraft.net, education.minecraft.net, Minecraft launchers and account portals, and associated online services. Microsoft markets and distributes Minecraft-branded games and services throughout the United States, including extensively within California and this District, and derives substantial revenue from those activities. At all relevant times, Microsoft acted through its officers, employees, software engineers, and agents, and is responsible for the acts and omissions alleged in this Complaint that were undertaken within the course and scope of their agency and employment.

11. Defendant Mojang AB ("Mojang") is a Swedish corporation with its principal place of business in Stockholm, Sweden. Mojang originally developed

Minecraft and, at all relevant times, has been a subsidiary of Microsoft that collaborates in the development, operation, and maintenance of the Minecraft Properties. Mojang participates with Microsoft in designing, implementing, and managing the code, infrastructure, and business practices at issue in this Complaint, including the tracking and data-collection technologies embedded in Minecraft-related websites and applications. At all relevant times, Mojang acted as Microsoft's agent and partner with respect to the Minecraft Properties, and the knowledge and conduct of each is imputed to the other.

12. The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants sued herein as DOES 1–10 are currently unknown to Plaintiffs. These Doe Defendants include, without limitation, analytics, telemetry, tag-management, advertising, and video-hosting entities that participated in, facilitated, received, or profited from the interception, recording, or exploitation of Plaintiffs' and Class members' communications with the Minecraft Properties, as well as any parent companies, subsidiaries, or affiliates that directed or benefitted from the challenged practices. Plaintiffs will amend this Complaint to allege the true names and capacities of these DOE Defendants when their identities and roles have been ascertained.

13. Unless otherwise indicated, references in this Complaint to "Defendants" or "Minecraft" refer collectively to Microsoft Corporation, Mojang AB, and DOES 1–10, each of whom acted in concert with, aided and abetted, or ratified the conduct of the others in implementing and maintaining the unlawful tracking and data-collection scheme described herein.

## JURISDICTION AND VENUE

14. This Court has subject-matter jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because this is a class action in which: (a) the proposed class contains at least one hundred (100) members; (b) the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and

costs; and (c) at least one class member is a citizen of a state different from at least one defendant. Plaintiffs and the putative Class are citizens of California, while Defendant Microsoft Corporation is a citizen of Washington, and Defendant Mojang AB is a citizen of a foreign state.

15. The Court also has original jurisdiction under 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and complete diversity of citizenship exists between Plaintiffs and Defendants.

16. This Court has personal jurisdiction over Defendants because they have purposefully availed themselves of the privilege of conducting business activities within California and this District, and because Plaintiffs' claims arise out of and relate to Defendants' contacts with California and this District. Defendants own, operate, control, and/or maintain the Minecraft websites, applications, and related online services that are at issue in this case; collect and process data from users in California and this District; and derive substantial revenue from their activities directed at California residents.

17. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (b)(2) because Defendants are subject to the Court's personal jurisdiction in this District and reside in this District for venue purposes, and because a substantial part of the events or omissions giving rise to the claims occurred in this District. Among other things, Defendants designed, deployed, and administered the tracking technologies and data-collection practices challenged in this Complaint so as to collect data from users located in this District; transmitted and received the intercepted communications and data to and from servers and infrastructure serving this District; and caused injury to Plaintiffs and Class members while they used Minecraft-related websites and services from within this District.

18. Assignment to the San Francisco or Oakland Division of this Court is proper because many of the acts and practices complained of herein occurred in those

CLASS ACTION COMPLAINT

counties, Defendants conduct substantial business there, and one or more Plaintiffs and Class members reside there.

FACTUAL ALLEGATIONS

19. Microsoft Corporation and Mojang AB own, operate, and control the "Minecraft" family of websites, applications, and online services, including but not limited to minecraft.net, education.minecraft.net, and related launchers, account portals, and support pages (collectively, the "Minecraft Properties"). These services are widely used in California for both entertainment and educational purposes, including by children in elementary and secondary schools through "Minecraft: Education Edition."

20. When California users—including minor children—visit the Minecraft Properties or use Minecraft-related services, their devices engage in continuous electronic communications with Defendants' servers. These communications include HTTP/HTTPS requests and responses, page and form content, search queries, clicks and scrolls, video interactions, and other data necessary to render pages, authenticate users, and deliver content.

21. In addition to what is technically necessary to provide the requested service, Defendants have implemented a covert tracking and surveillance architecture on the Minecraft Properties. This tracking stack includes, among other tools, Microsoft's own "Clarity" session-replay code, Adobe "Helix RUM" (Real User Monitoring), Microsoft "OneCollector" telemetry endpoints, "Microsoft Target" personalization endpoints, and other analytics and performance scripts that silently log users' behavior and device characteristics.

22. When a user—adult or child—loads a Minecraft Property in a browser or app, Defendants' code automatically fetches and executes these tracking scripts. This occurs immediately upon page load, often before any cookie banner or privacy notice is rendered, and regardless of whether the user has created an account, logged in, or affirmatively agreed to any terms.

23. The session-replay components, including Microsoft Clarity, capture and reconstruct users' interactions on Minecraft web pages essentially "click-by-click." These tools record mouse movements, clicks, scrolls, keystrokes, typed text, focus changes, and other granular interaction signals, then transmit that data in real time to Microsoft-controlled servers for analysis. From Defendants' vantage point, this provides a near-complete replay of what the user saw and did on the page, as though Defendants were looking over the user's shoulder the entire time.

24. Defendants' tracking stack also performs device fingerprinting. Scripts on the Minecraft Properties quietly execute functions such as canvas operations (e.g., calls to canvas.getContext()), audio and hardware profiling, and inspection of browser properties like navigator.deviceMemory and hardwareConcurrency to generate unique, persistent signatures of each user's device. These fingerprints enable Defendants to recognize and track a device across sessions—even if cookies are deleted or the user attempts to use "private" or "incognito" browsing modes.

25. In addition, the Minecraft Properties send frequent telemetry beacons to Microsoft's data-collection endpoints, including but not limited to browser.events.data.microsoft.com and target.microsoft.com. These telemetry calls include unique identifiers (such as Microsoft cookies and session IDs), device fingerprints, browser and device configuration data, timestamps, navigation paths, and detailed usage metrics reflecting exactly how a user moved through the site or application.

26. Defendants further embed and integrate tracking with third-party services such as Adobe analytics/real-user monitoring, Akamai mPulse, and embedded video players (including YouTube or similar platforms). As a result, when users interact with embedded media or even simply view pages containing these elements, additional domains controlled by those third parties receive data about the user's communications, viewing behavior, and device characteristics—again without clear disclosure or informed consent.

CLASS ACTION COMPLAINT

27. These tracking behaviors occur not only on the main consumer-facing Minecraft website but also on child-directed and education-facing properties. For example, the Education Edition site at education.minecraft.net is explicitly aimed at students and teachers and is used in classroom settings by children in California who are under the age of 13. Yet forensic inspection shows that the Education Edition site is "laden" with the same or even more aggressive tracking code as the main site, including session replay, Adobe Helix RUM, device fingerprinting, and telemetry beacons that fire as soon as the page loads.

28. Through these mechanisms, Defendants intercept and duplicate the contents of users' electronic communications with the Minecraft Properties in real time, including: the specific URLs and pages visited; search queries or text entered into forms; the sequence and timing of clicks, scrolls, and interactions; and in some instances, details about which videos were viewed and how users engaged with those videos. These are more than mere "headers" or routing information; they reflect the substance of what users are viewing, requesting, and doing online.

29. Defendants link this behavioral and content data to persistent identifiers and device fingerprints, allowing them to build detailed profiles of individual users and devices across sessions and contexts. Over time, Defendants can associate multiple visits and interactions with the same person or household, even where the user attempts to limit tracking by clearing cookies, using different browsers, or switching between home and school devices.

30. Neither Plaintiffs nor reasonable Minecraft users were informed—in a clear, conspicuous, and timely manner—that the Minecraft Properties are wired with session-replay, fingerprinting, and telemetry tools that operate in this way. Defendants' public-facing privacy disclosures use vague, generic references to "analytics," "cookies," or "personalization," and do not adequately explain that every movement and keystroke on the site may be recorded and stored, or that persistent device fingerprints will track users across visits.

CLASS ACTION COMPLAINT

31. Any purported consent Defendants rely on is invalid for multiple reasons. To the extent cookie banners or pop-ups appear at all, they are typically displayed only after tracking scripts have already fired; they are written in vague, legalistic language that does not meaningfully convey the nature and extent of session replay, fingerprinting, and third-party tracking; and they do not provide a genuine choice, especially for minors. Children using Minecraft—whether at home or in school—cannot reasonably understand or agree to these practices, and parents are not given a fair opportunity to review and authorize them before Defendants begin intercepting their children's communications.

32. Defendants' conduct is particularly egregious in child-focused and education contexts. When minors in California access Minecraft: Education Edition or related learning resources, they and their parents reasonably expect that their activity will be used for instructional or limited operational purposes, not to fuel a hidden web of analytics, profiling, and cross-site tracking. Nonetheless, Defendants collect and transmit persistent identifiers and detailed behavioral telemetry from these child users without verifiable parental consent and for purposes that go far beyond narrow "internal operations."

33. Defendants did not implement this surveillance infrastructure for purely benign or narrow security purposes. The detailed data they harvest—from session replays, fingerprints, telemetry, and embedded third-party integrations—is a critical commercial asset that supports their broader business goals, including product optimization, personalization, and marketing. By closely monitoring how users (including children) interact with Minecraft content, Defendants can test and refine designs, adjust promotions, encourage longer engagement, and better target features, offerings, and advertising.

34. In the modern digital economy, this type of granular behavioral and device data is highly valuable. Large technology companies, including Defendants, routinely leverage user data as a key input into analytics, recommendation engines,

and advertising systems that drive revenue and competitive advantage. The more detailed and persistent the tracking, the more useful it becomes for modeling user behavior, predicting engagement, and optimizing monetization strategies.

35. By surreptitiously collecting, retaining, and exploiting Plaintiffs' and Class members' data in this manner, Defendants deprived them of the ability to control how their personal information and online activities are used and to decide whether, and on what terms, their data should be shared or monetized. Defendants instead captured that value for themselves, using Plaintiffs' private communications and behavior to enrich their own data assets and business operations.

36. Plaintiffs and Class members suffered privacy harms as a result of Defendants' conduct, including the loss of control over confidential communications and personal information, the invasion of their seclusion, the exposure of their online activities to unseen observers, and the appropriation of their data for Defendants' commercial benefit. For children and families using Minecraft in educational or child-directed contexts, these intrusions are especially offensive and contrary to reasonable expectations of privacy.

37. At all times, Microsoft and Mojang jointly designed, implemented, and controlled the tracking architecture at issue, and they acted as each other's agents with respect to the Minecraft Properties. The identities and precise roles of additional participants in this surveillance scheme—including analytics vendors, advertising partners, and video-hosting or tag-management entities—are presently unknown to Plaintiffs. Plaintiffs therefore sue DOES 1–10 and will amend this Complaint to identify those entities once their identities and roles are ascertained in discovery.

## STANDING

38. Plaintiffs are California residents who used the Minecraft Properties from within the State of California during the relevant period. Each Plaintiff accessed one or more Minecraft websites and/or applications identified above, and at least some Plaintiffs, including minor Plaintiff R.G., used child-directed and education-facing

CLASS ACTION COMPLAINT

properties, and their electronic communications with those services were intercepted, recorded, and transmitted by Defendants' tracking technologies without valid consent.

39. As a direct and proximate result of Defendants' conduct, Plaintiffs suffered concrete privacy harms, including: (a) the loss of the right to control the contents of their confidential communications with the Minecraft Properties; (b) the invasion of their seclusion by unseen observers who recorded and scrutinized their online behavior; and (c) the exposure and exploitation of their detailed browsing and interaction patterns for Defendants' commercial benefit. These are precisely the types of harms that privacy laws such as CIPA and California's constitutional privacy protections are designed to prevent.

40. Plaintiffs and Class members also suffered economic injury. They conferred value on Defendants when they used the Minecraft Properties, including by providing Defendants with highly valuable behavioral and device data that Defendants captured and used for analytics, profiling, product optimization, and other revenue-related purposes. Plaintiffs were deprived of the ability to control, withhold, or monetize this data themselves and were not compensated for its use, while Defendants unjustly enriched themselves by appropriating that value without adequate disclosure or consent.

41. In addition, Plaintiffs and Class members paid money, or incurred obligations, to access and use Minecraft-related services and content and the devices and connectivity necessary to do so. Had Plaintiffs known that Defendants would secretly deploy session replay, device fingerprinting, telemetry, and third-party tracking tools on the Minecraft Properties, they would not have used those services at all, or would not have used them on the same terms, or would have taken additional steps to protect their privacy. Plaintiffs thus suffered economic loss in the form of overpayment and loss of the benefit of their bargain.

42. Minor Plaintiffs suffered additional privacy harms by virtue of their age

and the contexts in which they used Minecraft, including in school settings through Minecraft: Education Edition. Parents and guardians of minor Plaintiffs also suffered injury in fact by having their children's data collected and exploited without verifiable parental consent and by being denied a meaningful opportunity to review and authorize (or withhold consent for) Defendants' tracking practices before those practices began.

43. Plaintiffs have statutory standing to bring claims under the California Invasion of Privacy Act because they are persons whose communications were intercepted, recorded, and used by Defendants in violation of CIPA's provisions. Plaintiffs have statutory standing under the Unfair Competition Law because they have lost money or property and suffered injury in fact as a result of Defendants' unlawful and unfair business practices, including the economic and privacy injuries described above.

44. Plaintiffs' injuries are fairly traceable to Defendants' challenged conduct because they arise directly from Defendants' decisions to design, deploy, and operate the tracking architecture on the Minecraft Properties, and from Defendants' resulting interception, recording, and use of Plaintiffs' communications and data.

45. Plaintiffs' injuries are likely to be redressed by a favorable decision in this action. Plaintiffs seek, among other things, statutory damages under CIPA, restitution and disgorgement, and injunctive and declaratory relief requiring Defendants to cease their unlawful interception practices, delete unlawfully collected data, and implement effective privacy safeguards. Such relief would compensate Plaintiffs for past harms and reduce or eliminate the risk of similar harms occurring in the future.

**TOLLING, DISCOVERY RULE, AND FRAUDULENT CONCEALMENT**

46. The applicable statutes of limitations for Plaintiffs' and Class members' claims are tolled under the discovery rule. Plaintiffs and Class members did not and could not reasonably have discovered the facts underlying their claims, including

Defendants' interception, recording, and transmission of their communications and detailed behavioral data, until shortly before the filing of this action.

47. Defendants' tracking and interception practices are by design invisible to ordinary users. The conduct at issue occurs in the background of web pages and applications, through hidden code, remote scripts, telemetry beacons, and server-side processing that are not accessible to, or understandable by, reasonable consumers. Plaintiffs and Class members had no way to detect these practices simply by using the Minecraft Properties.

48. Defendants further concealed their unlawful conduct through vague, incomplete, and misleading privacy disclosures. Defendants' public-facing terms, cookie notices, and privacy policies do not clearly, prominently, or accurately disclose that Defendants deploy session replay, device fingerprinting, and similar technologies that capture users' keystrokes, mouse movements, page content, and other detailed interaction data in real time and transmit that data to Defendants and third parties. Instead, Defendants use generic references to "cookies," "analytics," and "personalization" that would not alert a reasonable user that their communications are being wiretapped and replayed.

49. Defendants also failed to provide any meaningful, advance notice to parents or guardians that children using Minecraft Properties—including Minecraft: Education Edition in school settings—would be subject to this type of pervasive tracking, and failed to obtain verifiable parental consent before beginning to intercept and record children's communications and interactions. Parents and guardians reasonably believed that their children were simply using a game or educational tool, not participating in a hidden data-collection program.

50. Because of Defendants' concealment and the technical, server-side nature of the interception, Plaintiffs and Class members could not have discovered the essential facts of Defendants' misconduct through reasonable diligence until, at the earliest, specialized investigation and analysis of the Minecraft Properties and

CLASS ACTION COMPLAINT

associated network traffic began to reveal the presence and behavior of Defendants' tracking stack.

51. The statutes of limitations are further tolled by the doctrine of fraudulent concealment. Defendants knew or should have known that their practices violated California privacy and consumer-protection laws, yet failed to disclose those practices, affirmatively misrepresented the nature and extent of their tracking, and continued to operate the Minecraft Properties in a manner calculated to prevent Plaintiffs and Class members from learning of the violations. Plaintiffs and Class members justifiably relied on Defendants' omissions and misleading disclosures.

52. Limitations periods applicable to the claims of minor Plaintiffs and minor Class members are independently tolled under California law during their minority. Many users of the Minecraft Properties during the relevant period were children whose claims did not begin to accrue, or whose limitations periods did not begin to run, until they reached the age of majority.

53. In addition, Defendants' wrongful acts and omissions are of a continuing nature. Defendants have continuously intercepted, recorded, and transmitted users' communications and data through the tracking technologies deployed on the Minecraft Properties throughout the relevant time period, and continue to do so. Each visit to a tracked Minecraft Property and each intercepted communication constitutes a new and separate violation, further tolling or extending any applicable limitations periods.

## CLASS ACTION ALLEGATIONS

54. Plaintiffs bring this action as a class action pursuant to Rules 23(a), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of themselves and the Class and Subclasses defined below (collectively, the "Class" unless otherwise indicated).

### Class Definition

55. **California Class**: All natural persons who, while residing in California,

CLASS ACTION COMPLAINT

accessed or used one or more Minecraft Properties from within the State of California during the four years preceding the filing of this Complaint through the date of class certification (the "Class Period"), and whose electronic communications with a Minecraft Property were intercepted, recorded, or transmitted by one or more of the tracking technologies described in this Complaint.

56. **Minor Subclass**: All members of the California Class who were under eighteen (18) years of age at the time they accessed or used one or more Minecraft Properties during the Class Period.

57. **Education Subclass**: All members of the Minor Subclass who accessed or used Minecraft: Education Edition, education.minecraft.net, or any other Minecraft Property offered, promoted, or deployed for classroom or school-related use in California during the Class Period.

58. Excluded from the Class and Subclasses are: (a) Defendants, their parents, subsidiaries, affiliates, officers, directors, employees, and agents; (b) any entity in which Defendants have a controlling interest; (c) any judge assigned to this case and his or her immediate family; and (d) any persons who timely and validly request exclusion from the Class or Subclasses in accordance with the Court's orders.

59. Plaintiffs reserve the right to modify, expand, or amend the foregoing class definitions, and to propose additional subclasses, based on discovery and further investigation, including subclasses for specific tracking technologies, specific Minecraft Properties, or particular time periods if appropriate.

**Numerosity**

60. The members of the Class and Subclasses are so numerous that joinder of all members is impracticable. Minecraft is one of the most popular video game franchises in the world, with a substantial and well-known user base in California. During the Class Period, large numbers of California residents—including many children—accessed and used the Minecraft Properties, and Defendants' tracking architecture operated uniformly on those Properties.

CLASS ACTION COMPLAINT

61. The precise number of Class and Subclass members is known only to Defendants and can be ascertained from Defendants' records, including server logs, telemetry databases, analytics records, and account information reflecting use of the Minecraft Properties from California IP addresses and devices. On information and belief, the Class consists of at least tens of thousands, and likely hundreds of thousands or more, of individuals.

Commonality

62. Numerous questions of law and fact are common to Plaintiffs and the Class and Subclasses, and those questions predominate over any questions affecting only individual members. Common questions include, without limitation:

a.  Whether Defendants configured and deployed tracking, session-replay, device-fingerprinting, telemetry, analytics, or similar technologies on the Minecraft Properties in the manner alleged in this Complaint;

b.  Whether those technologies intercepted, recorded, or transmitted the contents of users' communications with the Minecraft Properties in real time;

c.  Whether the communications and data intercepted included "contents" within the meaning of CIPA and California privacy law;

d.  Whether the Minecraft Properties, together with the tracking code and infrastructure Defendants deployed, constitute "machines, instruments, or contrivances" within the meaning of CIPA;

e.  Whether Defendants' interception and recording of users' communications was done without the consent of all parties to the communications;

f.  Whether any consent Defendants contend they obtained was informed, voluntary, and legally valid, particularly with respect to minors and users of Education Edition;

g.  Whether Defendants manufactured, assembled, furnished, or possessed devices primarily designed or intended for eavesdropping, within the meaning

of CIPA § 635;

h.  Whether Defendants' conduct constitutes an intentional intrusion upon Plaintiffs' and Class members' privacy in a manner that would be highly offensive to a reasonable person;

i.  Whether Defendants' practices violate Californians' constitutional right to privacy;

j.  Whether Defendants' conduct constitutes "unlawful" business acts or practices under the UCL;

k.  Whether Defendants' conduct constitutes "unfair" business acts or practices under the UCL, including in light of California's strong public policy protecting children's privacy;

l.  Whether Defendants were unjustly enriched by their interception, recording, and exploitation of Plaintiffs' and Class members' data;

m. Whether Defendants' conduct caused injury to Plaintiffs and Class members, including privacy harms, loss of control over personal information, and economic injury; and

n.  The nature and scope of appropriate relief, including statutory damages, restitution and disgorgement, and injunctive and declaratory relief.

**Typicality**

63.  Plaintiffs' claims are typical of the claims of the Class and Subclasses. Like other Class members, Plaintiffs are California residents who used the Minecraft Properties from within California during the Class Period and whose electronic communications and behavior on those Properties were intercepted, recorded, and transmitted by Defendants' tracking technologies without valid consent.

64.  Plaintiffs' claims arise from the same course of conduct and are based on the same legal theories as the claims of other Class members, including violations of CIPA, intrusion upon seclusion, California's constitutional right to privacy, and the UCL's unlawful and unfair prongs. The injuries Plaintiffs suffered are of the

same nature as those suffered by the Class: invasions of privacy, loss of control over personal information, and economic injury resulting from Defendants' surreptitious data-collection practices.

**Adequacy**

65. Plaintiffs will fairly and adequately protect the interests of the Class and Subclasses. Plaintiffs have no interests that are antagonistic to or in conflict with the interests of other Class members. Plaintiffs understand the nature of the claims and are committed to vigorously prosecuting this action on behalf of the Class.

66. Plaintiffs have retained counsel experienced in complex litigation, privacy and consumer class actions, and California statutory and common-law privacy claims. Plaintiffs' counsel have the resources, knowledge, and commitment to prosecute this case to judgment and, if necessary, through appeal.

**Superiority and Manageability**

67. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The harm suffered by individual Class members, while significant, is unlikely to be large enough to justify the burden and expense of individual litigation against Defendants. It would be impracticable for most Class members to seek redress individually for Defendants' wrongful conduct.

68. Class treatment will permit the adjudication of many claims that, if brought individually, would involve repetitive litigation of the same facts and legal issues, at substantial cost to the parties and the judicial system. Class litigation will also avoid the risk of inconsistent or conflicting judgments that could arise if individual actions were pursued separately.

69. The proposed Class and Subclasses are readily ascertainable from Defendants' records and from objective criteria, such as residence in California, access to or use of Minecraft Properties during the Class Period, and the operation of tracking technologies on those Properties. The issues to be resolved in this case are capable of classwide proof through common evidence, including Defendants'

own source code, configuration files, server logs, telemetry databases, policies, and disclosures.

70. This case does not present any unusual difficulties that would impede its management as a class action. To the contrary, because Defendants' tracking architecture was implemented and operated in a standardized way across Minecraft Properties, and because Defendants' legal obligations under California privacy and consumer-protection law apply uniformly, the central liability questions can and should be resolved on a classwide basis.

**Rule 23(b)(3) – Predominance**

71. The common questions of law and fact identified above predominate over any questions that may affect only individual Class members. Defendants' liability for deploying and operating the tracking technologies at issue, and for intercepting and recording Plaintiffs' and Class members' communications without valid consent, turns on evidence and legal questions that are common to the Class as a whole.

72. Individual issues, if any, will be confined largely to the allocation and computation of damages or restitution for individual Class members, which can be determined through common methodologies and formulae, and do not predominate over the common issues relating to Defendants' conduct, knowledge, and intent.

**Rule 23(b)(2) – Injunctive and Declaratory Relief**

73. Defendants have acted and refused to act on grounds that apply generally to the Class and Subclasses, such that final injunctive relief and corresponding declaratory relief are appropriate with respect to the Class as a whole. Defendants' ongoing deployment of session replay, fingerprinting, telemetry, and related tracking technologies on the Minecraft Properties continues to subject Plaintiffs and Class members to unlawful interception and privacy invasions.

74. Plaintiffs seek, on behalf of themselves and the Class, declaratory relief that Defendants' practices are unlawful and injunctive relief requiring Defendants

to, among other things: (a) cease intercepting and recording users' communications through the tracking technologies described in this Complaint without valid, informed, prior consent; (b) purge data that was unlawfully collected; (c) implement effective privacy safeguards and transparency measures, particularly for minors and educational uses; and (d) submit to reasonable monitoring and audits to ensure ongoing compliance.

**Rule 23(c)(4) – Issue Certification (Reservation)**

75. To the extent necessary or appropriate, Plaintiffs reserve the right to seek certification of one or more issues under Rule 23(c)(4), including but not limited to issues of Defendants' liability under CIPA, the UCL, common-law intrusion upon seclusion, and California's constitutional privacy right, as well as issues relating to the form and scope of injunctive and declaratory relief.

## FIRST CAUSE OF ACTION

Violation of California Invasion of Privacy Act (CIPA), Cal. Penal Code § 631

(Wiretapping)

76. Plaintiffs reallege and incorporate by reference the allegations in the preceding paragraphs as though fully set forth herein.

77. California Penal Code § 631 makes it unlawful, among other things, for any person, by means of any machine, instrument, or contrivance, willfully and intentionally to tap, or make any unauthorized connection with, any telegraph or telephone wire, line, cable, or instrument; willfully and intentionally to attempt to read, or to learn the contents or meaning of, any message, report, or communication while the same is in transit or passing over any such wire, line, or cable, or is being sent from, or received at any place within this state; or to aid, agree with, employ, or conspire with any person to do any of the foregoing, without the consent of all parties to the communication.

78. At all relevant times, Plaintiffs and California Class members were "persons" within the meaning of CIPA whose communications with the Minecraft

CLASS ACTION COMPLAINT

Properties were sent from, received at, and/or passed through places within the State of California.

79. At all relevant times, Defendants Microsoft and Mojang were "persons" within the meaning of CIPA and acted willfully and intentionally. Defendants knew that their tracking technologies intercepted communications between users' devices and the Minecraft Properties (and third-party endpoints), and they designed and deployed those technologies precisely for that purpose.

80. The electronic communications at issue include, but are not limited to, HTTP/HTTPS requests and responses, page and form content, search queries, text entered into fields, navigation and click paths, video interactions, and other data that users' devices transmitted to and from the Minecraft Properties in order to request, receive, and view content and services.

81. Defendants used "machines, instruments, or contrivances" within the meaning of § 631(a)—including, without limitation, Microsoft Clarity session-replay code, Adobe Helix RUM, telemetry and analytics scripts, device-fingerprinting code, and related tracking and tag-management infrastructure—to tap into, intercept, and make unauthorized connections with Plaintiffs' and Class members' communications with the Minecraft Properties.

82. By embedding and executing these tracking technologies on the Minecraft Properties, Defendants caused users' communications to be duplicated and transmitted, in real time, to Defendants' own telemetry and analytics endpoints and to additional domains associated with third-party analytics, performance monitoring, and video-hosting services, before the communications had reached their intended destination or while they were still in transit.

83. The communications and data that Defendants intercepted and attempted to learn included the **contents** of messages and communications within the meaning of § 631, such as: the specific URLs and pages visited; search terms and other text entered by users; the sequence, timing, and context of clicks and other interactions;

CLASS ACTION COMPLAINT

and information revealing what particular content, options, or videos users chose to view or engage with on the Minecraft Properties. These details go beyond mere record information or routing data and instead reflect the substance of users' online activities and requests.

84. Defendants' tracking technologies intercepted these communications while they were "in transit or passing over" wires, lines, cables, and electronic communication networks, and/or while they were being sent from or received at places within California. The interception occurred contemporaneously with the transmission, as user interactions were captured and transmitted to Defendants' and third parties' servers in real time or near-real time.

85. Defendants did not obtain the consent of **all parties** to these communications before intercepting, recording, and learning their contents and meaning. Plaintiffs and Class members did not expressly agree that their communications with the Minecraft Properties would be wiretapped, session-replayed, or duplicated and transmitted to additional analytics and telemetry endpoints, nor did they agree to device fingerprinting designed to persistently track them across sessions.

86. Any purported consent Defendants rely on—such as generic references to "cookies," "analytics," or "personalization" in privacy notices or banners—is legally insufficient. Such disclosures are vague, incomplete, and not provided in a clear and conspicuous manner before interception begins. They do not reasonably inform users that their keystrokes, mouse movements, page content, and other detailed interaction data will be recorded and transmitted in real time to Defendants and third parties.

87. Defendants also failed to obtain valid consent from, or on behalf of, minors who used the Minecraft Properties, including Minecraft: Education Edition and other child-directed or education-facing properties. Children lack the legal capacity to consent to the types of interceptions alleged, and parents and guardians

CLASS ACTION COMPLAINT

were not given a meaningful opportunity to review and authorize Defendants' tracking practices before those practices commenced.

88. Defendants additionally **aided, agreed with, employed, or conspired with** other persons within the meaning of § 631(a)—including third-party analytics, performance, and video-hosting providers—by embedding their code, establishing data flows to their domains, and jointly using the intercepted communications and data for analytics, optimization, and related purposes.

89. Defendants' conduct as alleged herein constitutes multiple, separate, and continuing violations of CIPA § 631(a) with respect to each Plaintiff and each California Class member, and with respect to each communication that Defendants intercepted or attempted to learn.

90. As a direct and proximate result of Defendants' violations of § 631(a), Plaintiffs and California Class members suffered harm, including the invasion of their privacy, the loss of control over the contents of their confidential communications, and the appropriation of their communications and behavioral data for Defendants' commercial benefit.

91. Pursuant to Cal. Penal Code § 637.2, Plaintiffs and California Class members who have been injured by Defendants' violations of § 631(a) are entitled to recover from Defendants the greater of: (a) five thousand dollars ($5,000) for each violation, or (b) three times the amount of any actual damages sustained by them, as well as injunctive relief and any other appropriate relief.

92. Plaintiffs, on behalf of themselves and the California Class, seek all remedies available under CIPA and § 637.2, including statutory damages for each violation, injunctive and declaratory relief to prevent further unlawful interceptions, restitution and disgorgement of ill-gotten gains, and an award of reasonable attorneys' fees and costs to the extent permitted by law.

## SECOND CAUSE OF ACTION

**Violation of California Invasion of Privacy Act (CIPA), Cal. Penal Code § 632**

93. Plaintiffs reallege and incorporate by reference the allegations in the preceding paragraphs as though fully set forth herein.

94. California Penal Code § 632(a) provides, in substance, that any person who, intentionally and without the consent of all parties to a **confidential communication**, uses any electronic amplifying or recording device to eavesdrop upon or record the confidential communication is guilty of a crime.

95. Section 632 defines a "confidential communication" broadly to include any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto, but excludes communications made in public gatherings or in circumstances in which the parties may reasonably expect that the communication may be overheard or recorded.

96. At all relevant times, Plaintiffs' and California Class members' interactions with the Minecraft Properties—including but not limited to their visits to Minecraft websites and applications, navigation of pages, entries of text into forms or fields, search queries, and other on-site communications—were carried out in circumstances that reasonably indicated a desire and expectation that those communications would be confined to the parties to the exchange: the user and the Minecraft Property.

97. Reasonable users of the Minecraft Properties, including minor children and their parents, do not expect that every keystroke, mouse movement, pageview, field entry, and other on-site interaction will be captured through specialized recording technologies, stored in replayable form, and transmitted to additional analytics and telemetry endpoints beyond what is necessary to provide the requested content or service.

98. Plaintiffs and California Class members reasonably believed that their communications with the Minecraft Properties—including what they searched for, what pages they viewed, what content they chose to click or watch, and in some

CLASS ACTION COMPLAINT

instances what text they entered into fields—would remain between themselves and Defendants for the limited purpose of operating the site or application. They did not reasonably expect that these communications would be silently recorded in full detail and repurposed for remote replay, extensive analytics, and profiling.

99. The Minecraft Properties were not public forums in which users should expect that their detailed on-site behavior would be overheard or recorded by strangers. The communications at issue occurred within Defendants' controlled web and app environments, behind user interfaces that give no indication that specialized recording tools are running or that additional entities are "sitting in" on the exchange.

100.   At all relevant times, Defendants were "persons" within the meaning of CIPA who used **electronic amplifying or recording devices**—including, without limitation, session-replay technologies such as Microsoft Clarity, Adobe Helix RUM, and related telemetry and analytics tools—to eavesdrop upon and record Plaintiffs' and Class members' confidential communications with the Minecraft Properties.

101.   Defendants' session-replay tools and related tracking scripts function as electronic recording devices: they capture and reconstruct, in a replayable format, the contents of users' interactions on the Minecraft Properties, including mouse movements, clicks, scrolls, typed text, and other on-site behavior, and transmit that information to Defendants' servers for later viewing and analysis.

102.   By configuring and deploying these tools on the Minecraft Properties, Defendants intentionally caused Plaintiffs' and Class members' confidential communications to be recorded in detail and stored so that Defendants and their personnel could later "replay" sessions and examine what users saw and did. This constitutes both eavesdropping and recording within the meaning of § 632.

103.   Defendants' eavesdropping and recording of confidential communications were done **without the consent of all parties** to those communications. Plaintiffs and Class members did not provide express, informed

CLASS ACTION COMPLAINT

consent to having their confidential communications with the Minecraft Properties recorded and replayed via session-replay and similar technologies, nor did they consent to the use of device fingerprinting and telemetry beacons for persistent tracking and analysis.

104.   Any purported consent Defendants rely upon—such as generic references to "cookies," "analytics," and "personalization" in privacy policies, terms of use, or banners—was not valid consent under § 632. Those disclosures are vague, incomplete, and not presented in a manner that would reasonably apprise users that their interactions would be recorded in session-replay form and scrutinized in detail by Defendants and, in some instances, by additional third parties.

105.   Moreover, any banner or notice presented **after** tracking scripts begin to run does not constitute prior consent to the eavesdropping or recording that has already occurred. Defendants' tools typically begin recording immediately upon page load, before users have any meaningful chance to review or respond to such notices.

106.   With respect to minors who used Minecraft Properties—including Minecraft: Education Edition and other child-directed or education-facing sites—Defendants never obtained valid consent from all parties to the confidential communications. Children generally lack legal capacity to consent to this level of surveillance, and parents and guardians were not given clear, timely notice or a genuine opportunity to authorize or refuse Defendants' recording and eavesdropping before it began.

107.   Defendants knew or reasonably should have known that the Minecraft Properties were used heavily by children and families, and that minors were engaging with Minecraft content in school and child-directed contexts. Despite this knowledge, Defendants designed and operated their tracking architecture in a manner that recorded the confidential communications of minors without verifiable parental consent.

CLASS ACTION COMPLAINT

108. Defendants' conduct was intentional. Defendants purposefully deployed session-replay, telemetry, and fingerprinting technologies because they wanted to capture, analyze, and profit from detailed records of how users interacted with the Minecraft Properties. These tools did not operate by accident; they were designed, configured, and maintained by Defendants as part of their analytics and product-optimization efforts.

109. Defendants' use of session-replay and related technologies invaded Plaintiffs' and Class members' private affairs in a manner and degree that a reasonable person would find highly offensive. Among other things, Defendants: recorded every movement and interaction on key Minecraft Properties; did so secretly and continuously over an extended period; targeted children and educational users; and then used the resulting recordings for their own commercial purposes rather than for any narrowly tailored security or functional necessity.

110. As a direct and proximate result of Defendants' violations of § 632, Plaintiffs and California Class members suffered harm, including the invasion of their privacy, the loss of control over their confidential communications, the distress and indignity associated with having their private interactions recorded and reviewed without their knowledge, and the appropriation of their data and behavior for Defendants' benefit.

111. Defendants' violations of § 632 were committed repeatedly and systematically as part of Defendants' regular business practices. Each recorded session, each replayable recording, and each instance in which a user's confidential communication was captured and stored constitutes a separate violation of § 632 with respect to that user.

112. Pursuant to Cal. Penal Code § 637.2, any person who has been injured by a violation of § 632 may bring an action to recover from the person who committed the violation the greater of: (a) five thousand dollars ($5,000) per violation, or (b) three times the amount of actual damages sustained, and may also

seek injunctive relief and any other appropriate relief.

113. Plaintiffs, on behalf of themselves and the California Class, seek all remedies available under CIPA and § 637.2 for Defendants' violations of § 632, including statutory damages of at least $5,000 per violation per Class member, injunctive and declaratory relief to prevent further unlawful recording and eavesdropping, restitution and disgorgement of ill-gotten gains, and an award of reasonable attorneys' fees and costs to the extent permitted by law.

## THIRD CAUSE OF ACTION

**Violation of California Invasion of Privacy Act (CIPA), Cal. Penal Code § 635**

114. Plaintiffs reallege and incorporate by reference the allegations in the preceding paragraphs as though fully set forth herein.

115. California Penal Code § 635 makes it unlawful, among other things, for any person to manufacture, assemble, sell, offer for sale, advertise for sale, possess, transport, import, or furnish to another any device that is primarily or exclusively designed or intended for eavesdropping upon the communication of another, knowing or having reason to know that the device is to be used for such purpose.

116. At all relevant times, Defendants Microsoft and Mojang were "persons" within the meaning of CIPA who designed, developed, configured, assembled, deployed, and possessed software and tracking technologies that function as "devices" primarily designed for eavesdropping upon users' communications with the Minecraft Properties.

117. The tracking technologies at issue—including, without limitation, Microsoft Clarity session-replay code, Adobe Helix RUM, device-fingerprinting scripts, telemetry and analytics libraries, and related tag-management and tracking infrastructure—are specialized tools engineered to capture, record, and transmit the contents of users' communications and detailed behavioral data, often in real time, for later review and analysis.

118. Defendants manufactured, assembled, and configured these tracking

CLASS ACTION COMPLAINT

devices by writing, integrating, and deploying the underlying code; selecting and enabling specific recording and fingerprinting features; and connecting that code to telemetry and analytics endpoints under Defendants' control and, in some instances, under the control of third parties.

119.   Defendants possessed and controlled these devices by hosting the code and configuration on servers and content-delivery systems they operated, and by causing users' browsers and applications to automatically download and execute the code whenever a Minecraft Property was accessed.

120.   Defendants also **furnished** these eavesdropping devices to others, including third-party analytics, performance, and video-hosting providers with whom Defendants integrated the tracking stack. By embedding third-party scripts, setting up data flows to third-party domains, and sharing configuration and event data, Defendants supplied or facilitated the use of devices whose purpose was to assist in eavesdropping on user communications for shared analytic, optimization, or commercial benefit.

121.   The primary design and intended use of these devices was to capture and examine what users saw and did on the Minecraft Properties—not merely to transmit data necessary to provide content or services. For example, the session-replay components record mouse movements, clicks, scrolls, keystrokes, and other interactions so that Defendants can later "replay" a user's session as if watching over the user's shoulder. Device-fingerprinting code is designed to generate persistent identifiers that allow Defendants to recognize and track devices across sessions and contexts.

122.   These devices therefore are not generic or incidental tools; they are specialized eavesdropping instruments whose core function is to intercept and record communications and behavior that users reasonably believe are private to their interactions with the Minecraft Properties.

123.   Defendants knew, or at minimum had reason to know, that these

CLASS ACTION COMPLAINT

devices were designed and being used for eavesdropping purposes. Defendants selected, implemented, and configured the devices precisely because they provided the ability to record and analyze users' communications and behavior in great detail. Defendants' own documentation and internal practices confirm that these tools were deployed to collect rich behavioral telemetry and content data for analytics, product optimization, and related uses.

124. Defendants' deployment of these devices was not limited to narrow security or diagnostic functions. Instead, Defendants used them broadly and continuously across Minecraft Properties—including child-directed and education-facing properties—to capture far more information than was necessary to operate or secure the services, and to support business objectives such as engagement optimization, personalization, and monetization.

125. Defendants' manufacture, assembly, possession, and furnishing of these eavesdropping devices facilitated and enabled the unlawful interception, recording, and use of Plaintiffs' and Class members' communications described in this Complaint. Without these devices, Defendants could not have wiretapped, session-replayed, fingerprinted, and profiled users at the level of detail and scale that they did.

126. Each instance in which Defendants caused a Minecraft Property to load and execute these tracking devices for a user in California, each configuration or update of these devices to continue or expand their eavesdropping functions, and each furnishing of these devices or their outputs to third parties constitutes a separate violation of CIPA § 635.

127. As a direct and proximate result of Defendants' violations of § 635, Plaintiffs and California Class members suffered harm, including the invasion of their privacy, the loss of control over their confidential communications and personal information, and the appropriation of their communications and behavioral data through the use of devices designed and deployed for eavesdropping.

128.    Defendants' conduct under § 635 was knowing, willful, and systematic. Defendants intentionally engineered, rolled out, and maintained these devices over an extended period of time, and continued to use them even as public concern and legal scrutiny over session-replay, fingerprinting, and similar surveillance technologies increased.

129.    Pursuant to Cal. Penal Code § 637.2, any person who has been injured by a violation of CIPA, including § 635, may bring an action to recover from the person who committed the violation the greater of: (a) five thousand dollars ($5,000) per violation, or (b) three times the amount of actual damages sustained, and may also seek injunctive relief and any other appropriate relief.

130.    Plaintiffs, on behalf of themselves and the California Class, seek all remedies available under CIPA and § 637.2 for Defendants' violations of § 635, including statutory damages of at least $5,000 per violation per Class member, injunctive and declaratory relief prohibiting Defendants from continuing to manufacture, assemble, possess, or furnish devices primarily designed or intended for eavesdropping in connection with the Minecraft Properties, restitution and disgorgement of ill-gotten gains, and an award of reasonable attorneys' fees and costs to the extent permitted by law.

## FOURTH CAUSE OF ACTION

## Violation of Intrusion Upon Seclusion (Common Law Invasion of Privacy)

131.    Plaintiffs reallege and incorporate by reference the allegations in the preceding paragraphs as though fully set forth herein.

132.    Under California common law, it is an actionable invasion of privacy to intentionally intrude, physically or otherwise, upon the solitude or seclusion of another, or into that person's private affairs or concerns, in a manner that would be highly offensive to a reasonable person.

133.    Plaintiffs and California Class members had, and have, a reasonable expectation of privacy in their electronic interactions with the Minecraft Properties,

CLASS ACTION COMPLAINT

including but not limited to:

    a.  The specific pages they visit, content they view, and features they use;

    b.  The text they enter into search boxes, forms, and fields;

    c.  Their click paths, scroll behavior, mouse movements, focus changes, and other on-site interactions;

    d.  The configuration and use of their devices, browsers, and networks; and

    e.  The timing, frequency, and context of their use of Minecraft Properties, including child-directed and education-facing properties.

134.  Plaintiffs and Class members reasonably expected that these activities and communications would be used solely as necessary to provide them with Minecraft content and services, and that they would not be subject to continuous, detailed, and replayable surveillance by Defendants or unseen third parties. This expectation of privacy is especially strong for minors and families using Minecraft in home and school settings.

135.  Defendants intentionally intruded into Plaintiffs' and Class members' private affairs by designing, configuring, and deploying on the Minecraft Properties a pervasive surveillance architecture that includes, among other things, session-replay tools, device-fingerprinting scripts, telemetry and analytics beacons, and embedded third-party tracking components.

136.  Through this architecture, Defendants secretly and systematically captured the full extent of Plaintiffs' and Class members' interactions with the Minecraft Properties—including keystrokes, mouse movements, clicks, scrolls, page content, and other detailed behavioral data—and transmitted that information to Defendants' servers and to additional analytics and tracking endpoints for later review, analysis, and exploitation.

137.  Defendants' intrusion was not limited to high-level or anonymized metrics. It allowed Defendants to reconstruct and "replay" users' sessions on the Minecraft Properties as though standing over their shoulders; to recognize and track

CLASS ACTION COMPLAINT

devices through fingerprints; and to build detailed profiles of individual users' behavior over time.

138. Defendants' intrusion was conducted without the knowledge or informed consent of Plaintiffs and Class members. Defendants did not clearly or conspicuously disclose that they would deploy session replay, fingerprinting, and similar technologies to record and study users' every movement on the Minecraft Properties. Instead, Defendants used vague references to "cookies," "analytics," and "personalization" that did not reasonably apprise users of the true nature, scope, and purpose of the surveillance.

139. Defendants' conduct was particularly intrusive and offensive in the context of children's and educational use. Defendants knew or should have known that large numbers of minors, including children under the age of 13, used Minecraft Properties—particularly Minecraft: Education Edition—through schools and in other child-directed contexts. Parents and guardians reasonably believed that their children were engaging with a game or educational tool, not participating in detailed behavioral monitoring and profiling.

140. Defendants did not obtain verifiable parental consent or provide parents with a meaningful opportunity to review and authorize the tracking of their children's detailed behavior and device data before the surveillance began. Instead, Defendants wired child-focused and education-facing properties with the same or greater level of tracking as consumer-facing sites, and collected persistent identifiers and telemetry from children for purposes that went well beyond narrow internal operations.

141. Defendants' intrusion into Plaintiffs' and Class members' private affairs would be highly offensive to a reasonable person. Among other factors, the intrusion:

    a. Was secretive and non-obvious, occurring through hidden code and
       server-side processes;

b. Captured and recorded far more information than was necessary to provide or secure the services;

c. Took place over an extended period and on a large scale, affecting many thousands of California users;

d. Targeted or included minors and students in educational settings; and

e. Was motivated, at least in significant part, by Defendants' own commercial interests in analytics, product optimization, engagement, and monetization.

142.  Defendants' intrusive conduct was not justified by any countervailing legitimate interest sufficient to outweigh the substantial privacy invasion described herein. Any claimed benefits of Defendants' tracking (such as performance monitoring or generalized analytics) could have been achieved through far less invasive means that did not require full session replay, fingerprinting, and pervasive telemetry, particularly for child and education users.

143.  As a direct and proximate result of Defendants' intentional intrusion upon their seclusion, Plaintiffs and Class members suffered harm, including but not limited to:

a. The invasion of their legally protected privacy interests;

b. The loss of control over sensitive information about their online communications, behavior, and device usage;

c. Emotional distress and mental anguish associated with learning that their activities were secretly recorded and scrutinized; and

d. The appropriation of the value of their data and behavior for Defendants' benefit.

144.  Defendants' intrusion was willful and in conscious disregard of Plaintiffs' and Class members' privacy rights. Defendants made deliberate choices to engineer, implement, and maintain the surveillance architecture on the Minecraft Properties, despite the foreseeability that users would be unaware of and offended

CLASS ACTION COMPLAINT

by such practices, and despite growing public and regulatory concern over similar forms of web and app surveillance.

145.    Plaintiffs, on behalf of themselves and the California Class, seek all damages and relief available under California law for intrusion upon seclusion, including compensatory damages, nominal damages, punitive or exemplary damages to the extent permitted by law, restitution and disgorgement of profits traceable to Defendants' wrongful conduct, and injunctive and declaratory relief necessary to prevent further invasions of privacy.

**FIFTH CAUSE OF ACTION**

**Violation of California Constitutional Right to Privacy (Cal. Const. art. I, § 1)**

(On Behalf of Plaintiffs and the California Class)

146.    Plaintiffs reallege and incorporate by reference the allegations in the preceding paragraphs as though fully set forth herein.

147.    Article I, section 1 of the California Constitution expressly guarantees every person the inalienable right to privacy. This constitutional privacy right protects against serious and unjustified invasions of privacy by both governmental and private actors, including corporations such as Defendants, when they engage in conduct that intrudes upon legally protected privacy interests in a manner that is serious in nature, scope, or potential impact.

148.    To state a claim for violation of the California constitutional right to privacy, a plaintiff must allege: (a) a legally protected privacy interest; (b) a reasonable expectation of privacy under the circumstances; and (c) a serious invasion of that privacy interest. All three elements are present here.

149.    Plaintiffs and California Class members have legally protected privacy interests in, among other things, (a) the confidentiality of their electronic communications; (b) the privacy of their online activities and behavioral data; and (c) the protection of sensitive information associated with minors and educational contexts. These interests are recognized by California statutes, regulations, and

37

CLASS ACTION COMPLAINT

public policy, including California's strong policy in favor of safeguarding children's privacy and informational privacy more broadly.

150. Plaintiffs and Class members also have a reasonable expectation of privacy in their interactions with the Minecraft Properties. They reasonably expected that:

a. Their visits to Minecraft websites and applications, including the specific pages they viewed and features they used, would not be subject to continuous, detailed surveillance and recording beyond what was necessary to provide the requested content or service;

b. The text they entered into search boxes, forms, or fields; their click and scroll behavior; and other fine-grained interaction data would remain private to their interaction with the service and would not be recorded in replayable form or shared with additional analytics and tracking endpoints without clear, prior disclosure and consent; and

c. Children's use of Minecraft Properties—especially Minecraft: Education Edition and other child-directed or education-facing services—would be subject to heightened privacy protections, not pervasive, covert tracking and profiling.

151. Defendants' conduct, as alleged herein, constitutes a serious invasion of these privacy interests. Defendants designed, deployed, and maintained a sophisticated tracking architecture on the Minecraft Properties that:

a. Secretly recorded virtually every movement and interaction users made on key pages through session-replay technologies;

b. Generated and leveraged device fingerprints and persistent identifiers to track users and devices across sessions and contexts;

c. Transmitted the contents of users' communications and detailed behavioral telemetry to Defendants' servers and to additional analytics,

CLASS ACTION COMPLAINT

performance, and video-hosting endpoints; and

      d.  Did so on a continuous basis and at large scale, including on properties aimed at children and used in classroom settings.

152.  Defendants carried out this surveillance without clear, conspicuous, or timely disclosure, and without obtaining valid, informed, prior consent from Plaintiffs and Class members. Any references to "cookies," "analytics," or similar concepts in Defendants' public-facing disclosures were generic and incomplete and did not reasonably inform users that their keystrokes, mouse movements, page content, and other detailed interaction data would be recorded and replayed, or that persistent device fingerprints would be used to recognize and track them over time.

153.  With respect to minors and families, Defendants' conduct was especially intrusive and contrary to reasonable expectations. Defendants knew or should have known that children, including children under the age of 13, were substantial users of the Minecraft Properties and that Minecraft: Education Edition was deployed in schools and other educational settings in California. Yet Defendants wired these child-directed and education-facing properties with the same or greater tracking stack as other properties, capturing persistent identifiers and detailed telemetry from children without verifiable parental consent and for purposes well beyond narrow internal operations.

154.  Defendants' conduct lacked sufficient justification to outweigh the substantial privacy invasion it caused. Any legitimate interests in performance monitoring, debugging, or basic analytics could have been achieved through far less invasive and less granular means that did not require full session replay, device fingerprinting, and pervasive telemetry—particularly for minors and educational users.

155.  Defendants' collection and exploitation of Plaintiffs' and Class members' data for analytics, product optimization, engagement, and monetization purposes underscores that the primary beneficiaries of the surveillance were

Defendants themselves, not users. The imbalance between the powerful, opaque surveillance tools Defendants employed and the limited, generic disclosures they made to users further demonstrates that the intrusion was unjustified.

156. Defendants' practices, individually and collectively, constitute a serious invasion of Plaintiffs' and Class members' privacy that is egregious, offensive, and contrary to California's constitutional commitment to protecting informational privacy, particularly for children and students. A reasonable person in Plaintiffs' position would find Defendants' secret, continuous tracking and replay of their online behavior on the Minecraft Properties to be highly offensive.

157. As a direct and proximate result of Defendants' violation of their constitutional privacy rights, Plaintiffs and Class members suffered harm, including but not limited to: the loss of control over their personal information and communications; the invasion of their seclusion; emotional distress, anxiety, and indignity upon learning that their interactions with the Minecraft Properties were secretly monitored and recorded; and the appropriation of their data for Defendants' commercial benefit.

158. Defendants acted willfully and in conscious disregard of Plaintiffs' and Class members' constitutional privacy rights. Defendants made deliberate choices to engineer and maintain the surveillance architecture at issue, despite the foreseeability that such practices would infringe Californians' privacy expectations and conflict with California's strong public policy protecting personal and children's privacy.

159. Plaintiffs, on behalf of themselves and the California Class, seek all available relief for Defendants' violation of the California Constitution, including compensatory damages, nominal damages, and punitive or exemplary damages to the extent permitted by law, as well as injunctive and declaratory relief requiring Defendants to cease their unconstitutional privacy practices, delete unlawfully collected data, implement robust privacy protections and disclosures, and submit to

appropriate monitoring to ensure ongoing compliance.

## SIXTH CAUSE OF ACTION

## Violation of California's Unfair Competition Law (UCL), Bus. & Prof. Code § 17200 et seq.

(On Behalf of Plaintiffs and the California Class)

160.    Plaintiffs reallege and incorporate by reference the allegations in the preceding paragraphs as though fully set forth herein.

161.    California's Unfair Competition Law, Business and Professions Code section 17200 et seq., broadly prohibits any unlawful, unfair, or fraudulent business act or practice. Defendants' conduct, as alleged herein, violates the UCL under its unlawful and unfair prongs, and also constitutes a fraudulent business practice to the extent Defendants' omissions and half-truths were likely to mislead reasonable consumers.

162.    At all relevant times, Plaintiffs and California Class members were "persons" within the meaning of Cal. Bus. & Prof. Code § 17201, and Defendants were "persons" and "corporations" within the meaning of that statute.

163.    Plaintiffs and California Class members have suffered "injury in fact" and have "lost money or property" as a result of Defendants' unfair and unlawful business practices within the meaning of Cal. Bus. & Prof. Code § 17204, including but not limited to: (a) paying money and/or incurring obligations to access, license, or use Minecraft-related services and the devices and connectivity necessary to do so without receiving the full benefit of their bargain; (b) conferring valuable data and behavioral information on Defendants without informed consent or compensation; and (c) suffering diminishment of the value and utility of their personal information and privacy.

### A. Unlawful Business Acts and Practices

164.    Defendants' acts and practices described herein are "unlawful" within the meaning of the UCL because they violate, among other things, the following

statutes and legal principles (each of which serves as a separate, independent predicate for liability):

a. **California Invasion of Privacy Act (CIPA), Cal. Penal Code §§ 631, 632, and 635**, by willfully and intentionally intercepting, attempting to learn the contents of, and recording Plaintiffs' and Class members' communications without the consent of all parties, and by manufacturing, assembling, possessing, and furnishing devices primarily designed or intended for eavesdropping;

b. **California Constitution, article I, section 1**, by seriously and unjustifiably invading Plaintiffs' and Class members' informational privacy rights through covert, pervasive tracking and recording of their online activities;

c. **Federal and state children's privacy protections**, including duties imposed or reflected in the **Children's Online Privacy Protection Act (COPPA), 15 U.S.C. §§ 6501–6506**, and California children's privacy and design-code requirements, which collectively require heightened protections, transparency, and parental involvement when collecting and using personal information from children;

d. **Privacy duties reflected in the California Consumer Privacy Act / California Privacy Rights Act (CCPA/CPRA), Cal. Civ. Code § 1798.100 et seq.,** including principles of notice, purpose limitation, and heightened protections for children's data, which Defendants disregarded by over-collecting and repurposing detailed behavioral telemetry and persistent identifiers from California users, including minors;

e. **Federal and state prohibitions on unfair or deceptive acts and practices, including Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45(a)**, to the extent Defendants' undisclosed tracking and misrepresentations about their data-collection practices constitute unfair or deceptive practices; and

CLASS ACTION COMPLAINT

f.  Other California and federal privacy and consumer-protection statutes and regulations whose purposes and requirements are contravened by Defendants' conduct, and which may be identified with greater specificity after discovery.

165.   Defendants' violations of these statutes and legal principles render their business practices "unlawful" under Cal. Bus. & Prof. Code § 17200.

166.   Plaintiffs and Class members suffered economic and privacy injuries as a direct and proximate result of these unlawful practices, including the loss of control over their personal information and communications, the diminution of the economic value of their data and privacy, and the expenditure of money and resources to access and use Minecraft Properties without the privacy protections and transparency required by law.

**B. Unfair Business Acts and Practices**

167.   Independently and in addition, Defendants' acts and practices are "unfair" within the meaning of the UCL. The unfairness of Defendants' conduct is reflected in, among other things, the following:

a.  Defendants secretly deployed sophisticated session-replay, fingerprinting, telemetry, and related tracking technologies on the Minecraft Properties to capture, record, and analyze users' detailed behavior and communications, far beyond what is necessary to provide or secure the services;

b.  Defendants targeted, included, or failed to exclude minors—including children using Minecraft: Education Edition and other child-directed or education-facing properties—from this surveillance, despite California's and the nation's strong public policy favoring robust protection of children's privacy, including duties imposed or reflected in COPPA and California's statutory children's-privacy and design-code framework;

c.  Defendants leveraged the resulting data to further their own commercial interests in analytics, product optimization, engagement, and

monetization, while providing users with at most vague, generic references to "cookies," "analytics," or "personalization" that did not meaningfully disclose the true nature, scope, or purposes of the tracking;

d. Defendants' conduct was undertaken in circumstances of significant informational and bargaining asymmetry, where ordinary consumers—and especially children and parents—lacked the technical knowledge and practical ability to detect or avoid the tracking, and reasonably believed that they were merely using a game or educational tool; and

e. Any arguable benefits of Defendants' practices (e.g., incremental performance monitoring or engagement metrics) could have been achieved through less invasive, less granular, and more transparent means that did not require full session replay, fingerprinting, and pervasive telemetry, particularly for child and education users.

168. Under any of the tests applied by California courts to evaluate unfairness—including (a) whether the conduct offends an established public policy; (b) whether it is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers; and/or (c) whether the harm to consumers outweighs any countervailing benefits—Defendants' conduct qualifies as "unfair."

169. Defendants' practices violate California's strong public policy favoring the protection of privacy and children's privacy in particular, as expressed in the California Constitution, CIPA, CCPA/CPRA, California children's privacy and design-code provisions, COPPA, and numerous other statutes and regulations.

170. Defendants' unfair business practices caused substantial injury to Plaintiffs and Class members in the form of privacy invasions, loss of control over personal information and communications, and economic injury, including but not limited to overpayment and the uncompensated appropriation of the value of their data. These injuries are not outweighed by any benefits to consumers or competition and could have been prevented or greatly mitigated by reasonable alternative designs

and disclosures.

**C. Fraudulent Business Acts and Practices**

171.   Defendants' conduct also constitutes "fraudulent" business acts or practices under the UCL to the extent their representations and omissions about data collection and tracking were likely to deceive members of the public.

172.   Defendants represented, expressly or by implication, in their privacy policies, terms of use, cookie notices, and other public-facing materials, that they would collect and use information from users of the Minecraft Properties in limited, disclosed ways, and that users could understand and control how their data was used.

173.   Defendants failed to disclose, and/or obscured, material facts about their deployment of session-replay, device-fingerprinting, telemetry, and third-party tracking technologies on the Minecraft Properties, including: (a) that every movement and interaction on key pages might be recorded and replayed; (b) that persistent device fingerprints would be generated to recognize and track users across sessions; and (c) that detailed behavioral and content data would be transmitted to additional analytics and tracking endpoints.

174.   These omissions and half-truths were material to reasonable consumers, including parents deciding whether to permit their children to use Minecraft Properties and educators deciding whether to deploy Minecraft: Education Edition in classrooms. Had Plaintiffs and Class members known the truth, they would not have used the services at all, would not have used them on the same terms, or would have taken additional measures to protect their privacy.

175.   Defendants knew, or were reckless in not knowing, that their disclosures were incomplete and misleading, and that consumers would reasonably be deceived into believing that their interactions with the Minecraft Properties were not being recorded and exploited in the manner alleged.

176.   As a direct and proximate result of Defendants' fraudulent, unfair, and unlawful business practices, Plaintiffs and Class members suffered the injuries

CLASS ACTION COMPLAINT

described above.

**D. Entitlement to Relief**

177.    Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiffs seek an order enjoining Defendants from continuing to engage in the unlawful, unfair, and fraudulent business acts and practices alleged herein. Such relief includes, but is not limited to, an order requiring Defendants to:

a.  Cease intercepting, recording, and transmitting users' communications and detailed behavioral data via session-replay, fingerprinting, telemetry, and similar tracking technologies on the Minecraft Properties without valid, informed, prior consent;

b.  Cease deploying such technologies on child-directed and education-facing properties absent robust, verifiable parental consent and strict limitations on data use;

c.  Delete or destroy all data collected from Plaintiffs and Class members through the unlawful practices described herein, unless retention is strictly necessary to comply with a court order;

d.  Implement effective, child-appropriate, and transparent privacy notices, controls, and defaults that genuinely inform users and parents of the nature and extent of tracking; and

e.  Submit to periodic privacy audits or monitoring, at Defendants' expense, to ensure ongoing compliance with California law and the Court's orders.

178.    Plaintiffs also seek restitution and disgorgement under Cal. Bus. & Prof. Code §§ 17203–17204, including restitution of all monies wrongfully obtained from Plaintiffs and Class members and/or all benefits unjustly obtained by Defendants through their unlawful, unfair, and fraudulent conduct, to the extent such amounts are traceable to or reasonably attributable to the challenged practices.

179.    Plaintiffs, on behalf of themselves and the California Class, further seek

CLASS ACTION COMPLAINT

an award of reasonable attorneys' fees and costs to the extent permitted by law, including under Cal. Code Civ. Proc. § 1021.5 and any other applicable fee-shifting or common-fund doctrines, together with pre- and post-judgment interest as allowed by law.

## SEVENTH CAUSE OF ACTION

### Declaratory and Injunctive Relief (28 U.S.C. §§ 2201–2202)

180.    Plaintiffs reallege and incorporate by reference the allegations in the preceding paragraphs as though fully set forth herein.

181.    An actual, present, and justiciable controversy exists between Plaintiffs (on behalf of themselves and the California Class) and Defendants concerning the legality of Defendants' past and ongoing conduct with respect to the interception, recording, transmission, and use of Plaintiffs' and Class members' communications and data via the tracking technologies deployed on the Minecraft Properties.

182.    Plaintiffs contend that Defendants' conduct, as described in this Complaint, violates the California Invasion of Privacy Act (Cal. Penal Code §§ 631, 632, and 635), the California constitutional right to privacy (Cal. Const. art. I, § 1), California common-law privacy protections (intrusion upon seclusion), and the Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 et seq.), among other laws. Defendants dispute, or are reasonably expected to dispute, these contentions and have not ceased the challenged practices.

183.    Defendants continue, on information and belief, to operate the Minecraft Properties with the same or substantially similar tracking architecture alleged herein, including session-replay technologies, device-fingerprinting code, telemetry and analytics beacons, and embedded third-party tracking components that intercept and record California users' communications and detailed behavioral data without valid, informed consent.

184.    As a result, Plaintiffs and Class members face a real and immediate threat of continued and future harm from Defendants' unlawful practices, including

CLASS ACTION COMPLAINT

ongoing invasions of their privacy, loss of control over their personal information and communications, and further exploitation of their data for Defendants' commercial benefit. Damages alone cannot fully remedy these ongoing and future harms.

185.    Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, and applicable California law, including Cal. Code Civ. Proc. § 1060 (to the extent it may be applied as a persuasive standard for declaratory relief), Plaintiffs seek a declaration from this Court that Defendants' practices, as alleged herein, are unlawful and violate Plaintiffs' and Class members' rights under California law, including but not limited to:

a.    That Defendants' deployment and operation of session-replay, fingerprinting, telemetry, and related tracking technologies on the Minecraft Properties, in the manner alleged, violate CIPA §§ 631, 632, and 635;

b.    That Defendants' secret and pervasive monitoring and recording of users' interactions with the Minecraft Properties constitute an intrusion upon seclusion and violate Californians' constitutional right to privacy; and

c.    That Defendants' conduct constitutes unlawful, unfair, and/or fraudulent business acts or practices under the UCL.

186.    Plaintiffs further seek, under 28 U.S.C. § 2202 and this Court's inherent equitable powers, a permanent injunction requiring Defendants to cease the unlawful conduct described herein and to take affirmative steps to protect Plaintiffs' and Class members' privacy going forward, including but not limited to an order that Defendants:

a.    Cease intercepting, recording, or transmitting the contents of users' communications and detailed behavioral data via session-replay, fingerprinting, telemetry, or similar tracking technologies on the Minecraft Properties without valid, informed, prior consent from all parties to the communications;

b.    Cease deploying such tracking technologies on child-directed and

education-facing Minecraft Properties—including Minecraft: Education Edition and related sites—unless and until Defendants implement robust, verifiable parental-consent mechanisms and strict limitations on the collection, retention, and use of children's data consistent with California law and public policy;

c. Delete or destroy all data, recordings, identifiers, and profiles that were collected or generated from Plaintiffs' and Class members' communications and interactions through the unlawful practices described herein, unless retention is strictly necessary to comply with a specific court order or legal obligation;

d. Implement clear, accurate, and prominent privacy notices and user interfaces that fully and understandably disclose the nature and extent of any tracking, session replay, fingerprinting, telemetry, and third-party integrations on the Minecraft Properties, in language and formats accessible to both adults and children (as appropriate);

e. Provide users and parents/guardians with effective, easy-to-use controls to opt out of non-essential tracking and to manage the collection, use, and sharing of their data, including separate controls for children's accounts and education-related use; and

f. Submit to periodic, independent privacy and security assessments or audits—at Defendants' expense—addressing the tracking and data-handling practices on the Minecraft Properties, with reports made available to the Court and, in appropriate form, to the public.

187. The declaratory and injunctive relief sought herein is necessary and appropriate to protect the rights of Plaintiffs and the California Class, to prevent Defendants from continuing to violate California privacy and consumer-protection laws, and to deter similar misconduct by Defendants and others in the future.

188. Plaintiffs, on behalf of themselves and the California Class, therefore

respectfully request that the Court enter declaratory and injunctive relief as set forth above and as further described in the Prayer for Relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the California Class and Subclasses, respectfully pray that judgment be entered in their favor and against Defendants, and that the Court grant the following relief:

1. **Certification of Classes**
   a. Certify this action as a class action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3);
   b. Appoint Plaintiffs as representatives of the Class and Subclasses; and
   c. Appoint Plaintiffs' counsel as Class Counsel.

2. **Declaratory Relief:** Enter a judgment declaring that Defendants' conduct, as alleged in this Complaint, is unlawful and violates:
   a. The California Invasion of Privacy Act, Cal. Penal Code §§ 631, 632, and 635;
   b. Plaintiffs' and Class members' right to privacy under the California Constitution, art. I, § 1;
   c. California common-law protections against intrusion upon seclusion; and
   d. California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq.

3. **Injunctive Relief:** Issue a permanent injunction, and any appropriate preliminary relief as necessary, requiring Defendants to:
   a. Cease intercepting, recording, or transmitting the contents of users' communications and detailed behavioral data via session-replay, fingerprinting, telemetry, and similar tracking technologies on the

CLASS ACTION COMPLAINT

Minecraft Properties without valid, informed, prior consent from all parties;

b. Cease deploying such tracking technologies on child-directed and education-facing Minecraft Properties, including Minecraft: Education Edition, unless and until Defendants implement robust, verifiable parental-consent mechanisms and strict limitations on the collection, retention, and use of children's data consistent with California law and public policy;

c. Delete, destroy, or sequester (subject to Court order) all data, recordings, identifiers, fingerprints, profiles, or other information derived from Plaintiffs' and Class members' communications and interactions that were collected through the unlawful practices alleged herein;

d. Implement clear, accurate, and prominent disclosures that fully and understandably describe any tracking, session replay, fingerprinting, telemetry, and third-party integrations on the Minecraft Properties, in language and formats accessible to adults, parents/guardians, and children (as appropriate);

e. Provide users and parents/guardians with effective, easy-to-use privacy controls to manage and limit the collection, use, sharing, and retention of their data, including specific protections and defaults for minors and educational use; and

f. Submit to periodic, independent privacy and security assessments or audits, at Defendants' expense, addressing tracking and data-handling on the Minecraft Properties, with appropriate reporting to the Court and, in suitable form, to the public.

4. **Statutory Damages Under CIPA:** Award Plaintiffs and Class members statutory damages under Cal. Penal Code § 637.2 for each violation of

CLASS ACTION COMPLAINT

CIPA, including violations of §§ 631, 632, and 635, in an amount of not less than five thousand dollars ($5,000) per violation per Class member, or three times the amount of actual damages sustained, whichever is greater, together with any other relief authorized by CIPA.

5. **Compensatory, Nominal, and Punitive Damages:**

   a. Award compensatory and/or nominal damages to Plaintiffs and Class members for Defendants' invasion of privacy under California common law and the California Constitution; and

   b. Award punitive or exemplary damages to the extent permitted by law, in an amount sufficient to punish Defendants and deter similar misconduct in the future.

6. **Restitution and Disgorgement:** Award restitution and disgorgement under the UCL and the Court's equitable powers, requiring Defendants to restore all money and benefits wrongfully obtained from Plaintiffs and Class members and to disgorge all profits and unjust enrichment traceable to the unlawful, unfair, and fraudulent practices alleged herein.

7. **Pre- and Post-Judgment Interest:** Award pre-judgment and post-judgment interest at the maximum rate allowed by law on all amounts awarded.

8. **Attorneys' Fees and Costs:** Award Plaintiffs and the Class their reasonable attorneys' fees, expenses, and costs of suit, including under Cal. Code Civ. Proc. § 1021.5, the common-fund/common-benefit doctrine, and any other applicable fee-shifting or cost-recovery provision.

9. **Further Relief:** Grant such other and further legal or equitable relief as the Court may deem just, proper, and appropriate under the circumstances.

**Jury Trial Demand**: Plaintiffs hereby demand a trial by jury on all claims so triable. Plaintiffs request that the issues of their entitlement to damages and the

amounts of statutory and punitive damages be determined by a jury at trial.

 RESPECTFULLY SUBMITTED

 Dated: December 30, 2025

_____
 Robert B. Salgado, Esq.
 Attorney for Plaintiffs

CLASS ACTION COMPLAINT