Morgan D. Ross, Esq. (SBN 270650)
Robert B. Salgado, Esq. (SBN 297391)
**COUNTERPOINT LEGAL**
600 B Street, Ste 1550
San Diego, CA 92101
Tel: (619) 780-3303
Fax: (619) 344-0332
morgan@counterpointfirm.com
rsalgado@counterpointfirm.com

*Attorneys for Plaintiffs and Putative Class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

GAVIN HAYS; ALYCE ITSUYE DART, individually and as parent and guardian of A.D., a minor; A.D., a minor by and through her guardian Alyce Itsuye Dart; and R.G., a minor by and through her guardians Michael Garcia and Salena Garcia, on behalf of themselves and all others similarly situated,

Plaintiffs,

vs.

MICROSOFT CORPORATION and MOJANG AB, and DOES 1-10,

Defendants.

Case No.: 3:25-cv-11078-JSC

**FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR VIOLATIONS OF:**

1. Violation of California Invasion of Privacy Act (CIPA), Cal. Penal Code § 631 (Wiretapping)
2. Violation of California Invasion of Privacy Act (CIPA), Cal. Penal Code § 632
3. Violation of California Invasion of Privacy Act (CIPA), Cal. Penal Code § 635
4. Violation of Intrusion Upon Seclusion (Common Law Invasion of Privacy)
5. Violation of California Constitutional Right to Privacy (Cal. Const. art. I, § 1)
6. Violation of California's Unfair Competition Law (UCL), Bus. & Prof. Code § 17200 et seq.

**JURY TRIAL DEMANDED**

## INTRODUCTION

Plaintiffs GAVIN HAYS, ALYCE ITSUYE DART, A.D., a minor by and through her guardian Alyce Itsuye Dart, and R.G., a minor by and through her guardians Michael Garcia and Salena Garcia (collectively "Plaintiffs"), individually and on behalf of all others similarly situated, by and through Plaintiffs' undersigned counsel, bring this class action lawsuit against MICROSOFT CORPORATION, MOJANG AB (collectively "Defendants" or "Minecraft"), and allege, based upon information and belief and the investigation of Plaintiffs' counsel, as follows:

## NATURE OF THE ACTION

1. This is a privacy class action brought on behalf of California residents who used Defendants' Minecraft websites, applications, and related online services, including the child-directed "Minecraft: Education Edition," from within the State of California.

2. Plaintiffs allege that Defendants Microsoft Corporation and Mojang AB secretly instrumented Minecraft-branded properties with tracking technologies—including session-replay, keystroke and mouse-movement logging, device fingerprinting, telemetry collection, and embedded analytics and video integrations—that intercept, record, and transmit the contents of users' communications and detailed behavioral data in real time.

3. When California users—including adults, children using Minecraft for entertainment, and children using Minecraft in school settings—interact with Defendants' websites and applications, Defendants' code captures what users do and communicate on those properties, including page and form content, search terms, clicks, scrolls, and other interaction data, along with device identifiers, persistent identifiers, and network information. Defendants then transmit this information to their own servers and to third-party analytics, advertising, fraud-prevention, telemetry, and video-hosting providers for profiling, analytics, personalization, and product-development purposes.

4. Defendants do not obtain valid, informed, prior consent from all parties to these communications before intercepting and duplicating them, and they do not clearly or prominently

disclose that Minecraft-related properties are wired with technologies that function as modern eavesdropping devices. Any references to “cookies,” “analytics,” “personalization,” or similar concepts in Defendants’ disclosures are generic, incomplete, and insufficient to inform ordinary consumers, parents, students, and children that their interactions are being recorded, analyzed, replayed, fingerprinted, and shared in this way.

5. Defendants’ conduct violates the California Invasion of Privacy Act (“CIPA”), including by, among other things, willfully intercepting and attempting to learn the contents of communications in transit by means of machines, instruments, or contrivances, and by manufacturing, assembling, furnishing, and possessing devices primarily designed for eavesdropping. Defendants’ practices also constitute an intentional intrusion upon Plaintiffs’ and Class members’ privacy that would be highly offensive to a reasonable person, violate Californians’ constitutional right to privacy, and amount to unlawful and unfair business practices under California’s Unfair Competition Law.

6. Plaintiffs bring this action on behalf of themselves and a class of similarly situated California users, including minors and education users, to seek statutory damages, restitution and disgorgement, declaratory relief, and preliminary and permanent injunctive relief, together with all other remedies available at law or in equity, including orders requiring Defendants to cease their unlawful interception and recording practices, delete unlawfully collected data, provide legally sufficient disclosures, and implement privacy-protective safeguards for adults, children, parents, and students who use Minecraft-related services in California.

## PARTIES

7. Plaintiff Gavin Hays is an adult individual and a resident of California. Gavin Hays has directly interacted with Defendants’ “Minecraft” websites, applications, and related online services (“Minecraft Properties”) from within California, including by creating a Minecraft account in approximately 2010 and using Minecraft for personal, recreational purposes, including to play with friends and play the game. Gavin Hays has used the Minecraft Properties from within California for consumer purposes and last logged into Minecraft in approximately January 2026. Gavin Hays never used Minecraft for school purposes. In doing so, Gavin Hays’s own electronic

communications, browsing activity, interaction data, device-related information, and persistent identifiers were subjected to the tracking, interception, and recording practices alleged in this Complaint. Gavin Hays brings this action on his own behalf as a consumer. He did not know Defendants were allegedly collecting his persistent identifiers and related data through the practices described in this Complaint until informed of the claims at issue here.

8. Plaintiff Alyce Itsuye Dart is an adult individual and a resident of California. She is the mother and legal guardian of Plaintiff A.D., a minor child. Alyce Itsuye Dart has directly interacted with the Minecraft Properties from within California, including by personally creating A.D.'s Minecraft account using Alyce's own personal email address, downloading Minecraft for A.D., and paying for Minecraft. In connection with account creation, purchase, setup, and related use, Alyce directly interacted with the Minecraft Properties from within California. In doing so, Alyce Itsuye Dart's own communications, personal information, payment-related information, device data, and persistent identifiers were subjected to the undisclosed interception, recording, and tracking practices alleged in this Complaint. Alyce Itsuye Dart brings this action on her own behalf and as guardian on behalf of A.D. Had Alyce known of the hidden surveillance and tracking now at issue, she would not have created or paid for the account on the same terms, if at all.

9. Plaintiff A.D. is a minor child residing in California. A.D. has used the Minecraft Properties during the relevant period, including for fun and creativity and other personal recreational purposes from within the State of California. A.D.'s account was created in approximately August 2024, and A.D. last logged in to play in approximately February 2026. A.D. accessed these services through Minecraft-related applications and services for personal recreational use. A.D. does not remember seeing or agreeing to any terms of use. By and through her parent and guardian, Alyce Itsuye Dart, A.D. brings this action because the electronic communications generated by her use of the Minecraft Properties—including page and form content, interactions, device identifiers, behavioral telemetry, and other online activity—were intercepted, recorded, transmitted, and exploited by Defendants without valid consent and without verifiable parental consent when required.

10. Plaintiff R.G. is a minor child residing in California. R.G. has used the Minecraft Properties during the relevant period in connection with school-related educational use, including Minecraft: Education Edition and school-provided Minecraft access from within the State of California. R.G. accessed these services via web browsers, launchers, and other applications through school-provided credentials and a school-associated account while attending Bostonia Global Elementary School in El Cajon, California. R.G. used Minecraft during the 2018–2019, 2019–2020, 2020–2021, and 2021–2022 school years, corresponding to first through fourth grade. During significant portions of the Class Period, R.G. was under the age of eighteen, and at times under the age of thirteen. By and through her parents and legal guardians, Michael Garcia and Salena Garcia, R.G. brings this action because the electronic communications generated by her use of the Minecraft Properties—including page and form content, educational interactions, device identifiers, behavioral telemetry, and other online activity—were intercepted, recorded, transmitted, and exploited by Defendants without valid consent and without verifiable parental consent when required.

11. Plaintiff Michael Garcia is an adult individual and a resident of California. He is named herein solely in his representative capacity as parent and legal guardian of Plaintiff R.G., a minor child.

12. Plaintiff Salena Garcia is an adult individual and a resident of California. She is named herein solely in her representative capacity as parent and legal guardian of Plaintiff R.G., a minor child.

13. Defendant Microsoft Corporation ("Microsoft") is a corporation organized under the laws of the State of Washington with its principal place of business in Redmond, Washington. Microsoft develops, owns, operates, and controls the Minecraft Properties, including minecraft.net, education.minecraft.net, Minecraft launchers and account portals, and associated online services. Microsoft markets and distributes Minecraft-branded games and services throughout the United States, including extensively within California and this District, and derives substantial revenue from those activities. At all relevant times, Microsoft acted through its officers, employees, software engineers, and agents, and is responsible for the acts and

omissions alleged in this Complaint that were undertaken within the course and scope of their agency and employment.

14. Defendant Mojang AB ("Mojang") is a Swedish corporation with its principal place of business in Stockholm, Sweden. Mojang originally developed Minecraft and, at all relevant times, has been a subsidiary of Microsoft that collaborates in the development, operation, and maintenance of the Minecraft Properties. Mojang participates with Microsoft in designing, implementing, and managing the code, infrastructure, and business practices at issue in this Complaint, including the tracking and data-collection technologies embedded in Minecraft-related websites and applications. At all relevant times, Mojang acted as Microsoft's agent and partner with respect to the Minecraft Properties, and the knowledge and conduct of each is imputed to the other.

15. The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants sued herein as DOES 1–10 are currently unknown to Plaintiffs. These Doe Defendants include, without limitation, analytics, telemetry, tag-management, advertising, and video-hosting entities that participated in, facilitated, received, or profited from the interception, recording, or exploitation of Plaintiffs' and Class members' communications with the Minecraft Properties, as well as any parent companies, subsidiaries, or affiliates that directed or benefitted from the challenged practices. Plaintiffs will amend this Complaint to allege the true names and capacities of these DOE Defendants when their identities and roles have been ascertained.

16. Unless otherwise indicated, references in this Complaint to "Defendants" or "Minecraft" refer collectively to Microsoft Corporation, Mojang AB, and DOES 1–10, each of whom acted in concert with, aided and abetted, or ratified the conduct of the others in implementing and maintaining the unlawful tracking and data-collection scheme described herein.

## JURISDICTION AND VENUE

17. This Court has subject-matter jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because this is a class action in which: (a) the proposed class contains at least one hundred (100) members; (b) the aggregate amount in

controversy exceeds $5,000,000, exclusive of interest and costs; and (c) at least one class member is a citizen of a state different from at least one defendant. Plaintiffs and the putative Class are citizens of California, while Defendant Microsoft Corporation is a citizen of Washington, and Defendant Mojang AB is a citizen of a foreign state.

18. This Court has personal jurisdiction over Defendants because they have purposefully availed themselves of the privilege of conducting business activities within California and this District, and because Plaintiffs' claims arise out of and relate to Defendants' contacts with California and this District. Defendants own, operate, control, and/or maintain the Minecraft websites, applications, and related online services that are at issue in this case; collect and process data from users in California and this District; and derive substantial revenue from their activities directed at California residents.

19. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (b)(2) because Defendants are subject to the Court's personal jurisdiction in this District and reside in this District for venue purposes, and because a substantial part of the events or omissions giving rise to the claims occurred in this District. Among other things, Defendants designed, deployed, and administered the tracking technologies and data-collection practices challenged in this Complaint so as to collect data from users located in this District; transmitted and received the intercepted communications and data to and from servers and infrastructure serving this District; and caused injury to Plaintiffs and Class members while they used Minecraft-related websites and services from within this District.

20. Assignment to the San Francisco or Oakland Division of this Court is proper because many of the acts and practices complained of herein occurred in those counties, and Defendants' challenged data-collection and online-service practices were directed into and carried out in this District.

## FACTUAL ALLEGATIONS

21. Defendants own, operate, develop, maintain, and control the "Minecraft" family of websites, applications, and related online services, including but not limited to minecraft.net, education.minecraft.net, associated launchers, account portals, support pages, and connected

services (collectively, the "Minecraft Properties").

22. When users access or use the Minecraft Properties, their devices engage in continuous electronic communications with Defendants' systems and embedded code in order to load pages, authenticate users, display content, process account activity, and enable related website and application functions.

23. Those communications include, without limitation, HTTP and HTTPS requests and responses, page and form content, account-creation and login activity, search terms, typed text, clicks, scroll behavior, navigation paths, video requests and interactions, device and browser data, telemetry events, and other information exchanged between users' devices and Defendants' systems while users interact with the Minecraft Properties.

24. In addition to what is technically necessary to provide the requested service, Defendants have implemented a covert tracking and surveillance architecture on the Minecraft Properties. This tracking stack includes, among other tools, Microsoft's "Clarity" session-replay code, Adobe "Helix RUM" (Real User Monitoring), Microsoft "OneCollector" telemetry endpoints, Adobe Launch, Akamai mPulse, browser and device fingerprinting code, and other analytics, performance, tag-management, and video or content integrations.

25. When a user—adult or child—loads a Minecraft Property in a browser or app, Defendants' code automatically fetches and executes these tracking scripts. This occurs immediately upon page load, often before any cookie banner or privacy notice is rendered, and regardless of whether the user has created an account, logged in, or affirmatively agreed to any terms.

26. The session-replay components, including Microsoft Clarity, capture and reconstruct users' interactions on Minecraft web pages essentially click-by-click. These tools record mouse movements, clicks, scrolls, keystrokes, typed text, focus changes, and other granular interaction signals, then transmit that data in real time to Microsoft-controlled servers or related endpoints for analysis.

27. Defendants' tracking stack also performs device fingerprinting and related persistent identification. Defendants' code invokes browser and device functions to gather attributes such

as graphics-rendering data, memory, language, browser characteristics, and other information that can be used to recognize users or devices across sessions and contexts.

28. In both the consumer and education environments, Defendants' tracking architecture also transmits telemetry, analytics, and behavioral data to Microsoft and third-party endpoints, including information concerning pageviews, clicks, navigation behavior, environment information, persistent identifiers, and other interaction data.

29. The tracking architecture on the Minecraft Properties is not limited to simple routing or technical delivery information. It captures and communicates information concerning the substance, purport, and meaning of users' interactions with the Minecraft Properties, including what pages they visit, what content they select, what forms or login interfaces they use, what videos they request or view, what text they type, and what choices they make while interacting with the service.

30. Defendants' conduct is particularly egregious in child-focused and education contexts. Minecraft: Education Edition and related education-facing Minecraft services are used by students and teachers in classroom settings by children in California, including children under the age of 13, yet those properties are instrumented with the same or similar session replay, fingerprinting, telemetry, analytics, and monitoring tools as Defendants' consumer-facing properties.

31. Through these mechanisms, Defendants intercept and duplicate the contents of users' electronic communications with the Minecraft Properties in real time, including the specific URLs and pages visited, text entered into forms or fields, the sequence and timing of clicks, scrolls, and interactions, account and login activity, content requests, and other communications that reflect what users are viewing, requesting, and doing online.

32. Defendants' public-facing terms, cookie notices, and privacy policies do not clearly, prominently, or accurately disclose that Defendants deploy session replay, device fingerprinting, telemetry, and similar technologies that capture users' keystrokes, mouse movements, page content, persistent identifiers, and other detailed interaction data in real time and transmit that data to Defendants and third parties. Instead, Defendants use generic references to "cookies,"

"analytics," "personalization," "performance," or similar terms that would not alert a reasonable user that his or her communications were being wiretapped, recorded, replayed, fingerprinted, and shared.

33. Defendants also failed to provide meaningful, advance notice to parents, guardians, or schools that children using Minecraft Properties—including Minecraft in school settings and Minecraft: Education Edition—would be subjected to the pervasive tracking, interception, and monitoring alleged herein. Nor did Defendants obtain legally sufficient parental consent before beginning to intercept, record, or exploit minors' communications, persistent identifiers, and interactions. Parents and guardians reasonably believed that their children were simply using a game or educational platform, not participating in an undisclosed surveillance and data-extraction program.

34. Plaintiffs' allegations are illustrated by the experiences of the named Plaintiffs.

35. Plaintiff Gavin Hays created his Minecraft account in approximately 2010 for personal, recreational use, including to play with friends and play the game. He has used Minecraft in California for consumer purposes, did not use it for school purposes, and last logged in in approximately January 2026. Gavin Hays did not know that Defendants were allegedly collecting his persistent identifiers, interaction data, and related information through the concealed tracking architecture described herein until informed of the claims at issue in this action.

36. In the course of Gavin Hays's use of the Minecraft Properties, Defendants caused his browser and device to communicate not only with the systems necessary to deliver Minecraft content and account functionality, but also with the tracking and telemetry stack described above, including session replay, fingerprinting, and analytics infrastructure. As a result, Gavin's page interactions, browsing behavior, device signals, and persistent identifiers were intercepted, recorded, transmitted, and used without his informed consent.

37. Plaintiff Alyce Itsuye Dart personally created A.D.'s Minecraft account using Alyce's own personal email address, downloaded Minecraft for A.D., and paid for the game or associated access. In connection with account creation, purchase, setup, and related activity, Alyce directly

interacted with Defendants' account flows, purchase flows, and Minecraft or Microsoft properties from within California.

38. As a result of Alyce's direct interactions with those properties, Defendants collected, intercepted, recorded, transmitted, and exploited Alyce's own communications, account-related information, personal information, payment-related information, device data, and persistent identifiers through the tracking architecture described herein. Had Alyce known of these undisclosed practices, she would not have created or paid for the account on the same terms, if at all.

39. Plaintiff A.D. is a minor child residing in California. A.D. used Minecraft for personal recreational purposes, including fun and creativity. A.D.'s account was created in approximately August 2024, and A.D. last logged in to play in approximately February 2026. A.D. does not remember seeing or agreeing to any terms of use and did not know that Defendants were allegedly taking, using, sharing, or monetizing her persistent identifiers or related activity data.

40. Through A.D.'s use of Minecraft on her device, Defendants intercepted, recorded, duplicated, transmitted, and exploited A.D.'s communications and interaction data, including page and content requests, clicks, scrolls, behavioral signals, device-related data, and persistent identifiers, without valid consent and, where required, without verifiable parental consent.

41. Plaintiff R.G. is a minor child who used the Minecraft platform, including school-provided educational access, in connection with the curriculum at Bostonia Global Elementary School in El Cajon, California, within the Cajon Valley Union School District. R.G. used Minecraft during the 2018–2019, 2019–2020, 2020–2021, and 2021–2022 school years, corresponding to first through fourth grade.

42. R.G.'s Minecraft-related access in that setting was school-provided. Her credentials, school-associated email account, and related Minecraft access were assigned or managed through the school rather than created and maintained by R.G. personally. R.G. used Minecraft in that educational context both at school and at home through school-associated access, but no longer attends Bostonia Global and no longer has access to those school-issued credentials.

43. Through R.G.'s educational use of the Minecraft Properties, Defendants intercepted,

recorded, duplicated, transmitted, and exploited R.G.'s educational interactions, page requests, clicks, behavioral telemetry, device-related information, persistent identifiers, and related communications through the tracking architecture described herein, without valid consent and, where required, without verifiable parental consent.

44. Defendants intentionally designed, selected, integrated, enabled, and maintained the code and tracking infrastructure at issue. Defendants knew or should have known that the technologies deployed on the Minecraft Properties would intercept, record, duplicate, transmit, retain, and exploit users' communications, persistent identifiers, behavioral data, and device-related information in the manner alleged herein.

45. Defendants acted in concert with, aided, agreed with, employed, or otherwise participated with one another and with third-party analytics, performance, advertising, and video-hosting providers by embedding their code, authorizing their participation, establishing data flows to their domains, and jointly receiving, analyzing, storing, and exploiting the communications and data intercepted from Plaintiffs and Class members.

46. Plaintiffs and Class members did not expressly authorize Defendants to session-replay, wiretap, fingerprint, duplicate, or transmit their communications and interaction data to Defendants and third parties in the manner alleged. Any purported consent Defendants may claim to rely upon is legally insufficient because it was not clear, specific, informed, prior, or meaningfully obtained before interception began.

47. As a direct and proximate result of Defendants' conduct, Plaintiffs and Class members suffered harm, including invasion of privacy, loss of control over their communications and persistent identifiers, unauthorized exploitation of their personal and behavioral data for Defendants' benefit, and, for paying users or parents who paid for access, economic injury in the form of money paid for a service that was materially different from what was represented or reasonably understood.

48. Defendants' conduct is ongoing. Unless enjoined, Defendants will continue to intercept, record, duplicate, transmit, retain, analyze, disclose, and exploit Plaintiffs' and Class members' communications, persistent identifiers, and related data through the tracking

technologies deployed on the Minecraft Properties.

**STANDING**

49. Plaintiffs are California residents who used, accessed, purchased, created accounts for, or otherwise directly interacted with the Minecraft Properties from within the State of California during the relevant period. Each Plaintiff accessed one or more Minecraft websites and/or applications identified above, and at least some Plaintiffs, including minor Plaintiffs A.D. and R.G., used child-directed and education-facing properties, and their electronic communications with those services were intercepted, recorded, and transmitted by Defendants' tracking technologies without valid consent.

50. Plaintiff Gavin Hays has standing because he personally used the Minecraft Properties for consumer purposes, including through his own account, and his communications, browsing activity, interaction data, device data, and persistent identifiers were intercepted, recorded, and transmitted by Defendants' tracking technologies without valid consent.

51. Plaintiff Alyce Itsuye Dart has standing in her individual capacity and in her representative capacity on behalf of A.D. Alyce personally created A.D.'s Minecraft account using Alyce's own personal email address, downloaded Minecraft, paid for Minecraft, and directly interacted with Defendants' account-creation, purchase, and setup flows. In doing so, Alyce's own communications, personal information, payment-related information, device data, and persistent identifiers were intercepted, recorded, and transmitted by Defendants without valid consent.

52. Plaintiff A.D., a minor by and through Alyce Itsuye Dart, has standing because A.D. personally used the Minecraft Properties for personal and recreational purposes, and Defendants intercepted, recorded, and transmitted A.D.'s communications, behavioral data, device-related information, and persistent identifiers without valid consent and, where required, without verifiable parental consent.

53. Plaintiff R.G., a minor by and through her parents and legal guardians Michael Garcia and Salena Garcia, has standing because R.G. personally used the Minecraft Properties, including Minecraft in the educational setting through school-provided access and credentials, and

Defendants intercepted, recorded, and transmitted R.G.'s educational interactions, device data, behavioral telemetry, and persistent identifiers without valid consent and, where required, without verifiable parental consent.

54. As a direct and proximate result of Defendants' conduct, Plaintiffs suffered concrete privacy harms, including: (a) the loss of the right to control the contents of their confidential communications with the Minecraft Properties; (b) the invasion of their seclusion by unseen observers who recorded and scrutinized their online behavior; and (c) the exposure and exploitation of their detailed browsing and interaction patterns for Defendants' commercial benefit. These are precisely the types of harms that privacy laws such as CIPA and California's constitutional privacy protections are designed to prevent.

55. Plaintiffs and Class members also suffered economic injury. They conferred value on Defendants when they used the Minecraft Properties, including by providing Defendants with highly valuable behavioral and device data that Defendants captured and used for analytics, profiling, product optimization, and other revenue-related purposes. Alyce also paid money to create and obtain Minecraft-related access for A.D. Plaintiffs were deprived of the ability to control, withhold, or monetize this data themselves and were not compensated for its use, while Defendants unjustly enriched themselves by appropriating that value without adequate disclosure or consent.

56. In addition, Plaintiffs and Class members paid money, or incurred obligations, to access and use Minecraft-related services and content and the devices and connectivity necessary to do so. Alyce paid money for Minecraft or related access for A.D. Had Plaintiffs known that Defendants would secretly deploy session replay, device fingerprinting, telemetry, and third-party tracking tools on the Minecraft Properties, they would not have used those services at all, would not have used them on the same terms, would not have paid for them on the same terms, or would have taken additional steps to protect their privacy. Plaintiffs thus suffered economic loss in the form of overpayment and loss of the benefit of their bargain.

57. Minor Plaintiffs suffered additional privacy harms by virtue of their age and the contexts in which they used Minecraft, including child-directed and school settings. Defendants'

collection and exploitation of minors' communications, persistent identifiers, and behavioral data without valid consent and, where required, without verifiable parental consent caused distinct injury to those minors' privacy interests. Alyce also suffered injury in fact by having A.D.'s data collected and exploited without verifiable parental consent and by being denied a meaningful opportunity to review and authorize or withhold consent for Defendants' tracking practices before those practices began.

58. Plaintiffs have statutory standing to bring claims under the California Invasion of Privacy Act because they are persons whose communications were intercepted, recorded, and used by Defendants in violation of CIPA's provisions.

59. Plaintiffs have statutory standing under the Unfair Competition Law because they have suffered injury in fact and lost money or property as a result of Defendants' unlawful and unfair business practices, including the economic and privacy injuries described above.

60. Plaintiffs' injuries are fairly traceable to Defendants' challenged conduct because they arise directly from Defendants' decisions to design, deploy, and operate the tracking architecture on the Minecraft Properties, and from Defendants' resulting interception, recording, and use of Plaintiffs' communications and data.

61. Plaintiffs' injuries are likely to be redressed by a favorable decision in this action.

62. Plaintiffs also have standing to seek prospective declaratory and injunctive relief because Defendants' challenged practices are ongoing, Defendants continue to operate the Minecraft Properties and to retain and use data collected through those practices, and at least one Plaintiff, Gavin Hays, remains interested in using Minecraft-related services in the future only if those services are operated lawfully and without covert interception and surveillance.

**TOLLING, DISCOVERY RULE, AND FRAUDULENT CONCEALMENT**

63. The applicable statutes of limitations for Plaintiffs' and Class members' claims are tolled under the discovery rule. Plaintiffs and Class members did not and could not reasonably have discovered the facts underlying their claims, including Defendants' interception, recording, and transmission of their communications and detailed behavioral data, until shortly before the filing of this action.

64. Defendants' tracking and interception practices are by design invisible to ordinary users. The conduct at issue occurs in the background of web pages and applications, through hidden code, remote scripts, telemetry beacons, and server-side processing that are not accessible to, or understandable by, reasonable consumers, parents, students, or children. Plaintiffs and Class members had no way to detect these practices simply by using the Minecraft Properties.

65. Defendants further concealed their unlawful conduct through vague, incomplete, and misleading privacy disclosures. Defendants' public-facing terms, cookie notices, and privacy policies do not clearly, prominently, or accurately disclose that Defendants deploy session replay, device fingerprinting, telemetry, and similar technologies that capture users' keystrokes, mouse movements, page content, persistent identifiers, and other detailed interaction data in real time and transmit that data to Defendants and third parties. Instead, Defendants use generic references to "cookies," "analytics," "personalization," "performance," or similar terms that would not alert a reasonable user that his or her communications were being wiretapped, recorded, replayed, fingerprinted, and shared.

66. Defendants also failed to provide any meaningful, advance notice to parents, guardians, or schools that children using Minecraft Properties—including Minecraft in school settings and Minecraft: Education Edition—would be subject to this type of pervasive tracking, and failed to obtain legally sufficient parental consent before beginning to intercept, record, or exploit minors' communications, persistent identifiers, and interactions. Parents and guardians reasonably believed their children were using a game or educational platform, not participating in an undisclosed surveillance and data-extraction program.

67. Because of Defendants' concealment and the technical, server-side nature of the interception, Plaintiffs and Class members could not have discovered the essential facts of Defendants' misconduct through reasonable diligence until, at the earliest, specialized investigation and analysis of the Minecraft Properties and associated network traffic began to reveal the presence and behavior of Defendants' tracking stack.

68. The statutes of limitations are further tolled by the doctrine of fraudulent concealment. Defendants knew or should have known that their practices violated California

privacy and consumer-protection laws, yet failed to disclose those practices, affirmatively misrepresented or obscured the nature and extent of their tracking, and continued to operate the Minecraft Properties in a manner calculated to prevent Plaintiffs and Class members from learning of the violations. Plaintiffs and Class members justifiably relied on Defendants' omissions and misleading disclosures.

69. Limitations periods applicable to the claims of minor Plaintiffs and minor Class members are independently tolled under California law during their minority. Many users of the Minecraft Properties during the relevant period were children, including users of child-directed and school-related Minecraft Properties, whose claims did not begin to accrue, or whose limitations periods did not begin to run, until they reached the age of majority, except to the extent otherwise tolled or extended by law.

70. In addition, Defendants' wrongful acts and omissions are of a continuing nature. Defendants have continuously intercepted, recorded, and transmitted users' communications and data through the tracking technologies deployed on the Minecraft Properties throughout the relevant time period, and continue to do so. Each visit to a tracked Minecraft Property and each intercepted communication constitutes a new and separate violation, further tolling or extending any applicable limitations periods.

## CLASS ACTION ALLEGATIONS

71. Plaintiffs bring this action as a class action pursuant to Rules 23(a), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of themselves and the Class and Subclasses defined below (collectively, the "Class" unless otherwise indicated).

### Class Definitions

72. **California Class**: All natural persons who, while residing in California, accessed or used one or more Minecraft Properties from within the State of California during the Class Period, and whose electronic communications, interactions, persistent identifiers, or device-generated data were intercepted, recorded, transmitted, disclosed, or otherwise captured in connection with their use of the Minecraft Properties.

73. **Minor Subclass**: All members of the California Class who were **under** eighteen (18)

years of age at the time they accessed or used one or more Minecraft Properties during the Class Period.

74. **Education Subclass**: All members of the Minor Subclass who accessed or used Minecraft: Education Edition, education.minecraft.net, or any other Minecraft Property offered, provisioned, assigned, managed, promoted, or deployed for classroom, school, or curriculum-related use in California during the Class Period, including through school-issued or school-managed credentials or accounts.

75. The "Class Period" means the four years preceding the filing of the original Complaint in this action through the date of class certification.

76. Excluded from the Class and Subclasses are: (a) Defendants, their parents, subsidiaries, affiliates, officers, directors, employees, and agents; (b) any entity in which Defendants have a controlling interest; (c) any judge assigned to this case and his or her immediate family; and (d) any persons who timely and validly request exclusion from the Class or Subclasses in accordance with the Court's orders.

77. Plaintiffs reserve the right to modify, expand, or amend the foregoing class definitions, and to propose additional subclasses, based on discovery and further investigation, including subclasses for specific tracking technologies, specific Minecraft Properties, or particular time periods if appropriate.

**Numerosity**

78. The members of the Class and Subclasses are so numerous that joinder of all members is impracticable. Minecraft is one of the most popular video game franchises in the world, with a substantial and well-known user base in California. During the Class Period, large numbers of California residents—including many children—accessed and used the Minecraft Properties, and Defendants' tracking architecture operated uniformly on those Properties.

79. The precise number of Class and Subclass members is known only to Defendants and can be ascertained from Defendants' records, including server logs, telemetry databases, analytics records, and account information reflecting use of the Minecraft Properties from California IP addresses and devices. On information and belief, the Class consists of at least tens of thousands,

and likely hundreds of thousands or more, of individuals.

**Commonality and Predominance**

80. Numerous questions of law and fact are common to Plaintiffs and the Class and Subclasses, and those questions predominate over any questions affecting only individual members. Common questions include, without limitation:

a. Whether Defendants configured and deployed tracking, session-replay, device-fingerprinting, telemetry, analytics, or similar technologies on the Minecraft Properties in the manner alleged in this Complaint;

b. Whether those technologies intercepted, recorded, or transmitted the contents of users' communications with the Minecraft Properties in real time;

c. Whether the communications and data intercepted included "contents" within the meaning of CIPA and California privacy law;

d. Whether the Minecraft Properties, together with the tracking code and infrastructure Defendants deployed, constitute "machines, instruments, or contrivances" within the meaning of CIPA;

e. Whether Defendants' interception and recording of users' communications was done without the consent of all parties to the communications;

f. Whether any consent Defendants contend they obtained was informed, voluntary, and legally valid, particularly with respect to minors and users of Education Edition;

g. Whether Defendants manufactured, assembled, furnished, or possessed devices primarily designed or intended for eavesdropping, within the meaning of CIPA § 635;

h. Whether Defendants' conduct constitutes an intentional intrusion upon Plaintiffs' and Class members' privacy in a manner that would be highly offensive to a reasonable person;

i. Whether Defendants' practices violate Californians' constitutional right to privacy;

j. Whether Defendants' conduct constitutes "unlawful" business acts or practices under the UCL;

k. Whether Defendants' conduct constitutes "unfair" business acts or practices under

the UCL, including in light of California's strong public policy protecting children's privacy;

l. Whether Defendants were unjustly enriched by their interception, recording, and exploitation of Plaintiffs' and Class members' data;

m. Whether Defendants' conduct caused injury to Plaintiffs and Class members, including privacy harms, loss of control over personal information, and economic injury; and

n. The nature and scope of appropriate relief, including statutory damages, restitution and disgorgement, and injunctive and declaratory relief.

**Typicality**

81. Plaintiffs' claims are typical of the claims of the Class and Subclasses. Like other Class members, Plaintiffs are California residents who used the Minecraft Properties from within California during the Class Period and whose electronic communications and behavior on those Properties were intercepted, recorded, and transmitted by Defendants' tracking technologies without valid consent.

82. Plaintiffs' claims arise from the same course of conduct and are based on the same legal theories as the claims of other Class members, including violations of CIPA, intrusion upon seclusion, California's constitutional right to privacy, and the UCL's unlawful and unfair prongs. The injuries Plaintiffs suffered are of the same nature as those suffered by the Class: invasions of privacy, loss of control over personal information, and economic injury resulting from Defendants' surreptitious data-collection practices.

83. Plaintiff Gavin Hays is typical of members of the California Class because he is an adult California user who used Minecraft for personal, non-educational purposes and whose communications and behavior on the Minecraft Properties were allegedly intercepted, recorded, and transmitted by the same tracking technologies challenged herein.

84. Plaintiffs Alyce Itsuye Dart and A.D., by and through Alyce Itsuye Dart, are typical of members of the Minor Subclass because Alyce created and paid for a minor child's Minecraft access, and A.D. used Minecraft as a minor for personal and recreational purposes. Their claims arise from the same alleged tracking, interception, recording, disclosure, consent failures, and resulting injuries affecting other minor users and their parents or guardians.

85. Plaintiff R.G., by and through her parents and legal guardians Michael Garcia and Salena Garcia, is typical of members of the Education Subclass because she used Minecraft through school-related educational access, including Minecraft: Education Edition or related school-managed Minecraft Properties, and her communications and behavior on those Properties were allegedly intercepted, recorded, and transmitted by the same or similar tracking technologies challenged on behalf of other education users.

**Adequacy**

86. Plaintiffs will fairly and adequately protect the interests of the Class and Subclasses. Plaintiffs have no interests that are antagonistic to or in conflict with the interests of other Class members. Plaintiffs understand the nature of the claims and are committed to vigorously prosecuting this action on behalf of the Class.

87. Plaintiffs have retained counsel experienced in complex litigation, privacy and consumer class actions, and California statutory and common-law privacy claims. Plaintiffs' counsel have the resources, knowledge, and commitment to prosecute this case to judgment and, if necessary, through appeal.

**Superiority and Manageability**

88. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The harm suffered by individual Class members, while significant, is unlikely to be large enough to justify the burden and expense of individual litigation against Defendants. It would be impracticable for most Class members to seek redress individually for Defendants' wrongful conduct.

89. Class treatment will permit the adjudication of many claims that, if brought individually, would involve repetitive litigation of the same facts and legal issues, at substantial cost to the parties and the judicial system. Class litigation will also avoid the risk of inconsistent or conflicting judgments that could arise if individual actions were pursued separately.

90. The proposed Class and Subclasses are readily ascertainable from Defendants' records and from objective criteria, such as residence in California, access to or use of Minecraft Properties during the Class Period, and the operation of tracking technologies on those Properties.

The issues to be resolved in this case are capable of classwide proof through common evidence, including Defendants' own source code, configuration files, server logs, telemetry databases, policies, and disclosures.

91. This case does not present any unusual difficulties that would impede its management as a class action. To the contrary, because Defendants' tracking architecture was implemented and operated in a standardized way across Minecraft Properties, and because Defendants' legal obligations under California privacy and consumer-protection law apply uniformly, the central liability questions can and should be resolved on a classwide basis.

**Rule 23(b)(2) - Injunctive and Declaratory Relief**

92. Defendants have acted or refused to act on grounds generally applicable to the Class and Subclasses, thereby making final injunctive relief and corresponding declaratory relief appropriate respecting the Class and Subclasses as a whole.

93. Plaintiffs seek injunctive and declaratory relief requiring Defendants to cease the unlawful interception, recording, and transmission practices alleged herein; to delete unlawfully collected data; and to implement lawful disclosures and privacy-protective safeguards for California users of the Minecraft Properties, including minors and users of Education Edition.

94. Certification under Rule 23(b)(2) is therefore appropriate because the injunctive and declaratory relief sought would benefit all Class and Subclass members at once and would resolve the legality of Defendants' uniform practices on a classwide basis.

**Rule 23(b)(3) - Predominance**

95. The common questions of law and fact identified above predominate over any questions that may affect only individual Class members. Defendants' liability for deploying and operating the tracking technologies at issue, and for intercepting and recording Plaintiffs' and Class members' communications without valid consent, turns on evidence and legal questions that are common to the Class as a whole.

96. Individual issues, if any, will be confined largely to the allocation and computation of damages or restitution for individual Class members, which can be determined through common methodologies and formulae, and do not predominate over the common issues relating

to Defendants' conduct, knowledge, and intent.

**FIRST CAUSE OF ACTION**

**Violation of California Invasion of Privacy Act (CIPA), Cal. Penal Code § 631**

**(Wiretapping)**

**(On Behalf of Plaintiffs and the California Class, including the Minor Subclass and Education Subclass)**

97. Plaintiffs reallege and incorporate by reference all preceding paragraphs of this First Amended Complaint as though fully set forth herein.

98. California Penal Code section 631(a) prohibits, among other things, any person, by means of any machine, instrument, or contrivance, from willfully and without the consent of all parties to a communication: (1) tapping or making any unauthorized connection with any wire, line, cable, instrument, or communication system; (2) reading, attempting to read, or learning the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from or received at any place within this state; (3) using, or attempting to use, in any manner, or for any purpose, or communicating in any way, any information so obtained; or (4) aiding, agreeing with, employing, or conspiring with any person to do or permit any of the foregoing acts.

99. At all relevant times, Plaintiffs and California Class members were "persons" within the meaning of CIPA whose communications with the Minecraft Properties were sent from, received at, and/or passed through places within the State of California.

100. At all relevant times, Defendants Microsoft and Mojang were "persons" within the meaning of CIPA and acted willfully and intentionally. Defendants knew that their tracking technologies intercepted communications between users' devices and the Minecraft Properties, and they designed, selected, configured, deployed, and maintained those technologies precisely for that purpose.

101. The electronic communications at issue include, but are not limited to, HTTP and HTTPS requests and responses, page and form content, account-creation and login activity, search queries, text entered into fields, navigation and click paths, scroll behavior, video interactions,

device and browser data transmitted during page loads and interactions, telemetry events, and other communications that users' devices transmitted to and from the Minecraft Properties in order to request, receive, and view content and services.

102. Those communications were transmitted over the internet and through browser, app, and network connections constituting wires, lines, cables, instruments, and communication systems within the meaning of section 631.

103. Defendants used machines, instruments, and contrivances within the meaning of section 631(a)—including, without limitation, Microsoft Clarity session-replay code, Adobe Helix RUM, telemetry and analytics scripts, device-fingerprinting code, and related tracking, replay, and tag-management infrastructure—to tap into, intercept, duplicate, and make unauthorized connections with Plaintiffs' and Class members' communications with the Minecraft Properties.

104. By embedding and executing these tracking technologies on the Minecraft Properties, Defendants caused users' communications to be duplicated and transmitted, in real time or near-real time, to Defendants' own telemetry, analytics, profiling, and replay endpoints and, in many instances, to additional domains associated with third-party analytics, performance monitoring, advertising, and video-hosting services, before the communications had reached their intended destination or while they were still in transit.

105. Defendants thereby made unauthorized connections to Plaintiffs' and Class members' communications and willfully learned, attempted to learn, and succeeded in learning the contents and meaning of those communications while they were in transit.

106. These interceptions were not limited to mere routing or address information. Rather, Defendants intercepted and learned substantive communication content, including what pages users requested, what content they viewed, what text or search terms they entered or began to enter, what login and account flows they used, what videos they selected or watched, what clicks, scrolls, and navigation choices they made, and what device and environment information accompanied those actions.

107. In addition to directly intercepting and learning the contents and meaning of

Plaintiffs' and Class members' communications, Defendants used and communicated the information so obtained for their own purposes, including analytics, telemetry, profiling, personalization, experimentation, optimization, product development, and related operational and commercial purposes.

108. Defendants additionally aided, agreed with, employed, or conspired with other persons within the meaning of section 631(a)—including third-party analytics, performance, advertising, tag-management, and video-hosting providers—by embedding their code, establishing data flows to their domains, and jointly using the intercepted communications and data for analytics, optimization, profiling, and related purposes.

109. Plaintiffs and Class members did not consent to these interceptions, unauthorized connections, attempts to learn, or uses of their communications. Defendants did not obtain valid, informed, prior consent from all parties to the communications before the interceptions occurred. Any purported consent was ineffective because, among other things, the challenged tracking and telemetry tools loaded and operated automatically, any disclosures were generic and incomplete, and the challenged conduct was concealed within background scripts, code, and server-side processes not visible to ordinary users. As to minor users, any purported consent by the minor alone was not legally sufficient, and parents and guardians were not provided clear, advance, meaningful notice before interception began.

110. Defendants' conduct as alleged herein constitutes multiple, separate, and continuing violations of CIPA section 631(a) with respect to each Plaintiff and each California Class member, including members of the Minor Subclass and Education Subclass, and with respect to each communication that Defendants intercepted or attempted to learn.

111. As a direct and proximate result of Defendants' violations of section 631(a), Plaintiffs and California Class members suffered harm, including invasion of privacy, loss of control over the contents of their communications, loss of control over their persistent identifiers and behavioral data, and the appropriation of their communications and behavioral data for Defendants' benefit.

112. Pursuant to California Penal Code section 637.2, Plaintiffs and California Class

members who have been injured by Defendants' violations of section 631(a) are entitled to recover from Defendants the greater of: (a) five thousand dollars ($5,000) for each violation, or (b) three times the amount of any actual damages sustained by them, together with injunctive relief and any other appropriate relief.

113. Plaintiffs, on behalf of themselves and the California Class, including the Minor Subclass and Education Subclass, seek all remedies available under CIPA and section 637.2 for Defendants' violations of section 631(a), including statutory damages for each violation, declaratory relief, preliminary and permanent injunctive relief to prevent further unlawful interceptions and require deletion of unlawfully collected data, restitution and disgorgement to the extent permitted by law, costs of suit, and such other relief as the Court deems just and proper.

**SECOND CAUSE OF ACTION**

**Violation of California Invasion of Privacy Act (CIPA), Cal. Penal Code § 632**

**(On Behalf of Plaintiffs and the California Class, including the Minor Subclass and Education Subclass)**

114. Plaintiffs reallege and incorporate by reference all preceding paragraphs of this First Amended Complaint as though fully set forth herein.

115. California Penal Code section 632(a) prohibits any person, intentionally and without the consent of all parties to a confidential communication, by means of any electronic amplifying or recording device, from eavesdropping upon or recording the confidential communication.

116. Section 632 defines a "confidential communication" broadly to include any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto, excluding communications made in public gatherings or in circumstances in which the parties may reasonably expect that the communication may be overheard or recorded.

117. At all relevant times, Plaintiffs' and California Class members' interactions with the Minecraft Properties—including but not limited to visits to Minecraft websites and applications, navigation of pages, entries of text into forms or fields, search queries, login and account flows, purchase and payment flows, education-related access flows, embedded content interactions, and

other on-site or in-app communications—were carried out in circumstances that reasonably indicated a desire and expectation that those communications would be confined to the parties to the exchange: the user and the Minecraft Property.

118. Plaintiffs and California Class members reasonably believed that their communications with the Minecraft Properties—including what they searched for, what pages they viewed, what content they chose to click or watch, what login or account steps they completed, and in some instances what text they entered into fields—would remain between themselves and Defendants for the limited purpose of operating the site, application, or related service. They did not reasonably expect that these communications would be silently recorded in full detail and repurposed for replay, telemetry, analytics, profiling, or review by Defendants and, in some instances, by additional third parties.

119. The Minecraft Properties were not public forums in which users should expect that their detailed on-site behavior would be overheard or recorded by strangers. The communications at issue occurred within Defendants' controlled web and app environments, behind user interfaces that gave no indication that specialized recording tools were running or that additional entities were "sitting in" on the exchange. That expectation of confidentiality was especially reasonable for minor users, including users of consumer-facing child-directed interfaces and school-related Minecraft services.

120. At all relevant times, Defendants were "persons" within the meaning of CIPA who used electronic amplifying or recording devices—including, without limitation, session-replay technologies such as Microsoft Clarity, Adobe Helix RUM, telemetry and analytics tools, device-fingerprinting code, and related tracking and replay infrastructure—to eavesdrop upon and record Plaintiffs' and Class members' confidential communications with the Minecraft Properties.

121. Defendants' session-replay tools and related tracking scripts functioned as electronic recording devices because they captured and reconstructed, in replayable or reviewable form, the contents of users' interactions on the Minecraft Properties, including mouse movements, clicks, scrolls, typed text, field interactions, navigation behavior, and other on-site communications, and transmitted or stored that information for later viewing, analysis, profiling, or related use.

122. By configuring and deploying these tools on the Minecraft Properties, Defendants intentionally caused Plaintiffs' and Class members' confidential communications to be recorded in detail and preserved so that Defendants and their personnel could later review, replay, analyze, or otherwise exploit what users saw and did. This conduct constitutes both eavesdropping and recording within the meaning of section 632.

123. Defendants' eavesdropping upon and recording of confidential communications were done without the consent of all parties to those communications. Plaintiffs and Class members did not provide express, informed consent to having their confidential communications with the Minecraft Properties recorded and replayed via session-replay and similar technologies, nor did they consent to the use of fingerprinting and telemetry tools for persistent tracking and analysis.

124. Any purported consent Defendants rely upon—such as generic references to "cookies," "analytics," "performance," or "personalization" in privacy policies, terms of use, or banners—was not valid consent under section 632. Those disclosures were vague, incomplete, and not presented in a manner that would reasonably apprise users that their interactions would be recorded in replayable form and scrutinized in detail by Defendants and, in some instances, by additional third parties.

125. Moreover, any banner or notice presented after tracking scripts began to run did not constitute prior consent to the eavesdropping or recording that had already occurred. Defendants' tools typically began recording immediately upon page load or early interaction, before users had any meaningful chance to review or respond to such notices.

126. With respect to minor users of Minecraft Properties—including A.D., R.G., other members of the Minor Subclass, and users of Minecraft: Education Edition and other child-directed or education-facing services—Defendants never obtained valid consent from all parties to the confidential communications. Any purported consent by the child alone was legally insufficient, and parents and guardians were not provided clear, advance, meaningful notice sufficient to authorize the recording of their children's confidential communications.

127. Defendants acted intentionally. Defendants knowingly chose to integrate, configure, enable, and maintain the recording devices and replay and telemetry infrastructure at issue in

order to capture and preserve information about how users interacted with the Minecraft Properties and to derive benefit from those recordings and captured communications.

128. Defendants' conduct as alleged herein constituted multiple, separate, and continuing violations of section 632 with respect to each Plaintiff and each California Class member, including members of the Minor Subclass and Education Subclass. Each recorded session, each replayable recording, and each instance in which a user's confidential communication was captured, stored, transmitted, or reviewed constituted a separate violation of section 632 with respect to that user.

129. As a direct and proximate result of Defendants' violations of section 632, Plaintiffs and California Class members suffered harm, including invasion of privacy, loss of control over their confidential communications, the distress and indignity associated with having their private interactions recorded and reviewed without their knowledge, and the appropriation of their data and behavior for Defendants' benefit.

130. Pursuant to California Penal Code section 637.2, Plaintiffs and California Class members injured by Defendants' violations of section 632 are entitled to recover the greater of: (a) five thousand dollars ($5,000) for each violation, or (b) three times the amount of actual damages, if any, sustained by them, together with injunctive relief and such other relief as the Court deems proper.

131. Plaintiffs, on behalf of themselves and the California Class, including the Minor Subclass and Education Subclass, seek all available remedies for Defendants' violations of section 632, including statutory damages for each violation, declaratory relief, preliminary and permanent injunctive relief to prevent further unlawful recording and eavesdropping and to require deletion of unlawfully collected data, restitution and disgorgement to the extent permitted by law, costs of suit, and such other relief as the Court deems just and proper.

**THIRD CAUSE OF ACTION**

**Violation of California Invasion of Privacy Act (CIPA), Cal. Penal Code § 635**

**(On Behalf of Plaintiffs and the California Class, Minor Subclass, and Education Subclass)**

132. Plaintiffs reallege and incorporate by reference all preceding paragraphs of this First Amended Complaint as though fully set forth herein.

133. California Penal Code section 635 makes it unlawful, among other things, for any person to manufacture, assemble, sell, offer for sale, advertise for sale, possess, transport, import, or furnish to another any device that is primarily or exclusively designed or intended for eavesdropping upon the communication of another, knowing or having reason to know that the device is to be used for such purpose.

134. At all relevant times, Defendants Microsoft and Mojang were "persons" within the meaning of CIPA who designed, developed, configured, assembled, deployed, and possessed software and tracking technologies that function as "devices" primarily designed for eavesdropping upon users' communications with the Minecraft Properties.

135. The tracking technologies at issue—including, without limitation, Microsoft Clarity session-replay code, Adobe Helix RUM, device-fingerprinting scripts, telemetry and analytics libraries, and related tag-management and tracking infrastructure—are specialized tools engineered to capture, record, and transmit the contents of users' communications and detailed behavioral data, often in real time, for later review and analysis.

136. Defendants manufactured, assembled, and configured these tracking devices by writing, integrating, and deploying the underlying code; selecting and enabling specific recording, replay, telemetry, and fingerprinting features; and connecting that code to telemetry and analytics endpoints under Defendants' control and, in some instances, under the control of third parties.

137. Defendants possessed and controlled these devices by hosting the code and configuration on servers, content-delivery systems, websites, launchers, and applications they operated, and by causing users' browsers and applications to automatically download and execute the code whenever a Minecraft Property was accessed.

138. Defendants also furnished these eavesdropping devices to others, including third-party analytics, performance, advertising, and video-hosting providers with whom Defendants integrated the tracking stack. By embedding third-party scripts, establishing data flows to third-party domains, and sharing configuration and event data, Defendants supplied or facilitated the

use of devices whose purpose was to assist in eavesdropping on user communications for shared analytic, optimization, profiling, or commercial benefit.

139. The primary design and intended use of these devices was to capture and examine what users saw and did on the Minecraft Properties—not merely to transmit data necessary to provide content or services. For example, session-replay components record mouse movements, clicks, scrolls, keystrokes, and other interactions so that Defendants can later replay or reconstruct a user's session. Device-fingerprinting code is designed to generate persistent identifiers that allow Defendants to recognize and track devices across sessions and contexts.

140. These devices therefore are not generic or incidental tools; they are specialized eavesdropping instruments whose core function is to intercept, record, and facilitate learning the contents of communications and behavior that users reasonably believe are private to their interactions with the Minecraft Properties.

141. Defendants knew, or at minimum had reason to know, that these devices were designed and being used for eavesdropping purposes. Defendants selected, implemented, and configured the devices precisely because they provided the ability to record and analyze users' communications and behavior in great detail.

142. Defendants' deployment of these devices was not limited to narrow security or diagnostic functions. Instead, Defendants used them broadly and continuously across Minecraft Properties, including consumer-facing, child-directed, and education-facing properties, to capture far more information than was necessary to operate or secure the services, and to support business objectives such as analytics, personalization, engagement optimization, experimentation, and monetization.

143. Defendants' manufacture, assembly, possession, and furnishing of these eavesdropping devices facilitated and enabled the unlawful interception, recording, and use of Plaintiffs' and Class members' communications described in this Complaint. Without these devices, Defendants could not have wiretapped, session-replayed, fingerprinted, and profiled users at the level of detail and scale that they did.

144. Each instance in which Defendants caused a Minecraft Property to load and execute

these tracking devices for a user in California, each configuration or update of these devices to continue or expand their eavesdropping functions, and each furnishing of these devices or their outputs to third parties constitutes a separate violation of CIPA section 635.

145. Defendants' conduct under section 635 was knowing, willful, and systematic. Defendants intentionally engineered, rolled out, and maintained these devices over an extended period of time and continued to use them on adult users, minor users, and education users.

146. As a direct and proximate result of Defendants' violations of section 635, Plaintiffs and California Class members, including members of the Minor Subclass and Education Subclass, suffered harm, including invasion of privacy, loss of control over their confidential communications and personal information, unauthorized surveillance of their conduct, and the appropriation of their communications and behavioral data through the use of devices designed and deployed for eavesdropping.

147. Pursuant to California Penal Code section 637.2, any person who has been injured by a violation of CIPA, including section 635, may bring an action to recover from the person who committed the violation the greater of: (a) five thousand dollars ($5,000) per violation, or (b) three times the amount of actual damages sustained, and may also seek injunctive relief and any other appropriate relief.

148. Plaintiffs, on behalf of themselves and the California Class, including the Minor Subclass and Education Subclass, seek all remedies available under CIPA and section 637.2 for Defendants' violations of section 635, including statutory damages of at least $5,000 per violation per Class member, declaratory and injunctive relief prohibiting Defendants from continuing to manufacture, assemble, possess, or furnish devices primarily designed or intended for eavesdropping in connection with the Minecraft Properties, deletion of unlawfully collected data, restitution and disgorgement to the extent permitted by law, costs of suit, and such other relief as the Court deems just and proper.

**FOURTH CAUSE OF ACTION**

**Violation of Intrusion Upon Seclusion (Common Law Invasion of Privacy)**

**(On Behalf of Plaintiffs and the California Class, including the Minor Subclass and**

**Education Subclass)**

149. Plaintiffs reallege and incorporate by reference all preceding paragraphs of this First Amended Complaint as though fully set forth herein.

150. Under California common law, it is an actionable invasion of privacy to intentionally intrude, physically or otherwise, upon the solitude or seclusion of another, or into that person's private affairs or concerns, in a manner that would be highly offensive to a reasonable person.

151. Plaintiffs and California Class members had, and have, a reasonable expectation of privacy in their electronic interactions with the Minecraft Properties, including but not limited to:

a. the specific pages they visit, content they view, and features they use;

b. the text they enter into search boxes, forms, and fields;

c. their click paths, scroll behavior, mouse movements, focus changes, and other on-site interactions;

d. the configuration and use of their devices, browsers, and networks; and

e. the timing, frequency, and context of their use of Minecraft Properties, including child-directed and education-facing properties.

152. Plaintiffs and Class members reasonably expected that these activities and communications would be used solely as necessary to provide them with Minecraft content and services, and that they would not be subject to continuous, detailed, and replayable surveillance by Defendants or unseen third parties. This expectation of privacy is especially strong for minors and families using Minecraft in home and school settings.

153. Defendants intentionally intruded into Plaintiffs' and Class members' private affairs by designing, configuring, and deploying on the Minecraft Properties a pervasive surveillance architecture that includes, among other things, session-replay tools, device-fingerprinting scripts, telemetry and analytics beacons, and embedded third-party tracking components.

154. Through this architecture, Defendants secretly and systematically captured the full extent of Plaintiffs' and Class members' interactions with the Minecraft Properties—including keystrokes, mouse movements, clicks, scrolls, page content, account activity, and other detailed behavioral data—and transmitted that information to Defendants' servers and to additional

analytics and tracking endpoints for later review, analysis, and exploitation.

155. Defendants' intrusion was not limited to high-level or anonymized metrics. It allowed Defendants to reconstruct and replay users' sessions on the Minecraft Properties as though standing over their shoulders; to recognize and track devices through persistent identifiers and fingerprints; and to build detailed profiles of individual users' behavior over time.

156. Defendants' intrusion was conducted without the knowledge or informed consent of Plaintiffs and Class members. Defendants did not clearly or conspicuously disclose that they would deploy session replay, fingerprinting, telemetry, and similar technologies to record and study users' detailed movements and communications on the Minecraft Properties. Instead, Defendants used vague references to "cookies," "analytics," "performance," and "personalization" that did not reasonably apprise users of the true nature, scope, and purpose of the surveillance.

157. Defendants' conduct was particularly intrusive and offensive in the context of children's and educational use. Defendants knew or should have known that large numbers of minors, including children under the age of 13, used Minecraft Properties—particularly Minecraft: Education Edition and related school-access properties—through schools and in other child-directed contexts. Parents and guardians reasonably believed that their children were engaging with a game or educational tool, not participating in detailed behavioral monitoring and profiling.

158. Defendants did not obtain verifiable parental consent or provide parents and guardians with a meaningful opportunity to review and authorize the tracking of their children's detailed behavior, communications, and device data before the surveillance began. Instead, Defendants wired child-focused and education-facing properties with the same or greater level of tracking as consumer-facing properties and collected persistent identifiers and telemetry from children for purposes that went well beyond narrow internal operations.

159. Defendants' intrusion into Plaintiffs' and Class members' private affairs would be highly offensive to a reasonable person. Among other factors, the intrusion:

a. was secretive and non-obvious, occurring through hidden code and server-side

processes;

b. captured and recorded far more information than was necessary to provide or secure the services;

c. took place over an extended period and on a large scale, affecting many thousands of California users;

d. targeted or included minors and students in educational settings; and

e. was motivated, at least in significant part, by Defendants' own commercial and operational interests in analytics, profiling, product optimization, engagement, experimentation, and monetization.

160. Defendants' intrusive conduct was not justified by any countervailing legitimate interest sufficient to outweigh the substantial privacy invasion described herein. Any claimed benefits of Defendants' tracking, such as performance monitoring or generalized analytics, could have been achieved through far less invasive means that did not require full session replay, fingerprinting, and pervasive telemetry, particularly for child and education users.

161. As a direct and proximate result of Defendants' intentional intrusion upon their seclusion, Plaintiffs and Class members suffered harm, including but not limited to:

a. the invasion of their legally protected privacy interests;

b. the loss of control over sensitive information about their online communications, behavior, and device usage;

c. dignitary harm, emotional distress, and mental anguish associated with learning that their activities were secretly recorded and scrutinized; and

d. the appropriation of the value of their data and behavior for Defendants' benefit.

162. Plaintiffs and Class members also suffered economic injury as a result of the intrusion, including overpayment, loss of the benefit of the bargain, and loss of the value of their personal information and behavioral data to the extent those data were appropriated, exploited, and monetized by Defendants without adequate disclosure or consent.

163. Defendants' intrusion was willful and in conscious disregard of Plaintiffs' and Class members' privacy rights.

164. Defendants' conduct was a substantial factor in causing Plaintiffs' and Class members' injuries.

165. By reason of the foregoing, Defendants are liable to Plaintiffs and California Class members, including members of the Minor Subclass and Education Subclass, for intrusion upon seclusion.

166. Plaintiffs, on behalf of themselves and the California Class, including the Minor Subclass and Education Subclass, seek all available relief for Defendants' intrusion upon seclusion, including actual damages according to proof, nominal damages where appropriate, restitution and disgorgement to the extent permitted by law, declaratory relief, preliminary and permanent injunctive relief prohibiting the challenged surveillance practices and requiring deletion of unlawfully collected data, costs of suit, and such other and further relief as the Court deems just and proper.

**FIFTH CAUSE OF ACTION**

**Violation of California Constitutional Right to Privacy (Cal. Const. art. I, § 1)**

**(On Behalf of Plaintiffs and the California Class, including the Minor Subclass and Education Subclass)**

167. Plaintiffs reallege and incorporate by reference all preceding paragraphs of this First Amended Complaint as though fully set forth herein.

168. Article I, section 1 of the California Constitution expressly guarantees every person the inalienable right to privacy. This constitutional privacy right protects against serious and unjustified invasions of privacy by both governmental and private actors, including corporations such as Defendants, when they engage in conduct that intrudes upon legally protected privacy interests in a manner that is serious in nature, scope, or potential impact.

169. To state a claim for violation of the California constitutional right to privacy, a plaintiff must allege: (a) a legally protected privacy interest; (b) a reasonable expectation of privacy under the circumstances; and (c) a serious invasion of that privacy interest. All three elements are present here.

170. Plaintiffs and California Class members have legally protected privacy interests in,

among other things: (a) the confidentiality of their electronic communications; (b) the privacy of their online activities and behavioral data; and (c) the protection of sensitive information associated with minors and educational contexts.

171. Plaintiffs and Class members also have legally protected privacy interests in being free from covert electronic surveillance, secret recording, device fingerprinting, unauthorized telemetry collection, and undisclosed disclosure or exploitation of their communications and online conduct while using websites, applications, and online services.

172. Plaintiffs and Class members had reasonable expectations of privacy under the circumstances. They reasonably expected that:

a. their visits to Minecraft websites and applications, including the specific pages they viewed and features they used, would not be subject to continuous, detailed surveillance and recording beyond what was necessary to provide the requested content or service;

b. the text they entered into search boxes, forms, or fields; their click and scroll behavior; and other fine-grained interaction data would remain private to their interaction with the service and would not be recorded in replayable form or shared with additional analytics and tracking endpoints without clear, prior disclosure and consent; and

c. children's use of Minecraft Properties—especially Minecraft: Education Edition and other child-directed or education-facing services—would be subject to heightened privacy protections, not pervasive, covert tracking and profiling.

173. These expectations of privacy were reasonable for adult consumer users such as Gavin Hays, for parents such as Alyce Itsuye Dart using their own personal email and payment-related information to set up a child's account, for minor recreational users such as A.D., and for minor educational users such as R.G., whose use occurred through school-provided access in connection with school coursework.

174. Defendants intentionally, seriously, and egregiously invaded Plaintiffs' and Class members' privacy by designing, selecting, integrating, enabling, maintaining, and operating a layered tracking and surveillance architecture on the Minecraft Properties, including session replay, event logging, telemetry collection, browser and device fingerprinting, analytics

instrumentation, tag-management systems, and related third-party or affiliated data-sharing integrations.

175. Through that architecture, Defendants intentionally observed, intercepted, recorded, duplicated, transmitted, retained, and exploited Plaintiffs' and Class members' communications, interactions, persistent identifiers, device-related information, and other private data for Defendants' own business, operational, analytic, profiling, optimization, experimentation, personalization, and related purposes.

176. Defendants' invasion of privacy was serious in nature, degree, and scope. It was serious in nature because the challenged conduct reached deeply into Plaintiffs' and Class members' online behavior and communications, including pageviews, click paths, account and login activity, typed or partially typed inputs, content selections, video interactions, educational activity, device characteristics, and persistent identifiers.

177. It was serious in degree because the challenged practices occurred automatically, invisibly, continuously, and at scale across consumer-facing, child-directed, and education-facing Minecraft Properties, rather than as isolated or accidental collection events.

178. It was serious in scope because the alleged surveillance did not stop at the immediate delivery of a requested page or service, but instead extended to the recording, duplication, retention, analysis, replay, and exploitation of user interactions and identifiers through telemetry systems, replay tools, analytics endpoints, and associated third-party or affiliated services.

179. Defendants' invasion of privacy is especially serious as to minors and education users because it exposed children's activity, identifiers, and interactions to the same covert surveillance architecture used on other Minecraft Properties, despite the absence of meaningful advance notice and legally sufficient parental authorization.

180. Defendants lacked a countervailing and superior interest sufficient to justify the privacy invasion alleged herein.

181. To the extent Defendants may contend that the challenged conduct was justified by business, operational, diagnostic, security, fraud-prevention, analytics, experimentation, personalization, or product-improvement purposes, any such interests did not require the covert,

overbroad, inadequately disclosed, and nonconsensual interception, recording, fingerprinting, transmission, retention, or exploitation of Plaintiffs' and Class members' communications and personal data in the manner alleged.

182. Less intrusive alternatives were available to Defendants, including providing clear advance disclosures, limiting collection to what was reasonably necessary for requested services, refraining from deploying replay and fingerprinting technologies without valid consent, avoiding third-party or secondary use of user communications and identifiers, and implementing meaningful privacy-protective defaults for minors and education users.

183. Plaintiffs and Class members did not knowingly, voluntarily, or validly consent to this invasion of privacy. Any purported consent was ineffective because, among other things, the challenged tracking and surveillance tools were concealed within background scripts, telemetry libraries, replay infrastructure, and hidden requests; any disclosures were generic, incomplete, and insufficiently specific; the challenged practices began automatically or near-automatically before meaningful user choice could occur; and, as to minors, any purported consent by the child alone was legally insufficient.

184. As a direct and proximate result of Defendants' violation of Plaintiffs' and Class members' constitutional privacy rights, Plaintiffs and Class members suffered concrete injury, including invasion of privacy, loss of control over personal information and communications, dignitary harm, exposure of private conduct and data to hidden observers and systems, and related economic injury, including overpayment and loss of the benefit of the bargain where applicable.

185. Plaintiffs and Class members continue to face irreparable and ongoing harm because Defendants continue to operate the Minecraft Properties, continue to maintain or use data collected through the challenged practices, and continue to threaten users with further covert interception, recording, fingerprinting, telemetry collection, and related exploitation absent judicial intervention.

186. Legal remedies alone are inadequate to fully redress these ongoing privacy injuries because monetary relief cannot by itself restore Plaintiffs' and Class members' lost control over their communications and personal data, require deletion of unlawfully collected information,

mandate adequate disclosures, or prevent future covert surveillance of adults, children, and education users on the Minecraft Properties.

187. Plaintiffs, on behalf of themselves and the California Class, including the Minor Subclass and Education Subclass, therefore seek declaratory and injunctive relief to vindicate and protect their privacy rights under article I, section 1 of the California Constitution, including orders declaring Defendants' challenged practices unlawful; preliminarily and permanently enjoining Defendants from continuing those practices; requiring Defendants to provide constitutionally adequate disclosures; requiring Defendants to obtain legally sufficient consent where required; requiring Defendants to delete, purge, or otherwise cease using unlawfully collected data; and requiring Defendants to implement effective privacy safeguards for adult, minor, and education users.

188. Plaintiffs further seek all other relief available at law or in equity as the Court deems just and proper.

**SIXTH CAUSE OF ACTION**

**Violation of California's Unfair Competition Law (UCL), Bus. & Prof. Code § 17200 et seq.**

**(On Behalf of Plaintiffs and the California Class, including the Minor Subclass and Education Subclass)**

189. Plaintiffs reallege and incorporate by reference all preceding paragraphs of this First Amended Complaint as though fully set forth herein.

190. California's Unfair Competition Law ("UCL"), Business and Professions Code section 17200 et seq., broadly prohibits any unlawful, unfair, or fraudulent business act or practice. Defendants' conduct, as alleged herein, violates the UCL under its unlawful and unfair prongs and also constitutes a fraudulent business practice to the extent Defendants' omissions and half-truths were likely to mislead reasonable consumers.

191. At all relevant times, Plaintiffs and California Class members were "persons" within the meaning of Cal. Bus. & Prof. Code § 17201, and Defendants were "persons" and "corporations" within the meaning of that statute.

192. Plaintiffs and California Class members have suffered injury in fact and have lost money or property as a result of Defendants' unfair, unlawful, and fraudulent business practices within the meaning of Cal. Bus. & Prof. Code § 17204, including but not limited to: (a) paying money and/or incurring obligations to access, license, or use Minecraft-related services without receiving the full benefit of their bargain; (b) conferring valuable data and behavioral information on Defendants without informed consent or compensation; and (c) suffering diminishment of the value and utility of their personal information and privacy. Alyce Itsuye Dart also paid money to create and obtain Minecraft-related access for A.D.

**A. Unlawful Business Acts and Practices**

193. Defendants' acts and practices described herein are "unlawful" within the meaning of the UCL because they violate, among other things, the following statutes and legal principles, each of which serves as a separate and independent predicate for liability:

194. California Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 631, 632, and 635, by willfully and intentionally intercepting, attempting to learn the contents of, and recording Plaintiffs' and Class members' communications without the consent of all parties, and by manufacturing, assembling, possessing, and furnishing devices primarily designed or intended for eavesdropping.

195. California Constitution, article I, section 1, by seriously and unjustifiably invading Plaintiffs' and Class members' informational privacy rights through covert, pervasive tracking and recording of their online activities.

196. California common law, by intentionally intruding upon Plaintiffs' and Class members' solitude, seclusion, and private affairs through covert surveillance and data extraction.

197. Defendants' violations of these statutes and legal principles render their business practices "unlawful" under Cal. Bus. & Prof. Code § 17200.

**B. Unfair Business Acts and Practices**

198. Independently and in addition, Defendants' acts and practices are "unfair" within the meaning of the UCL.

199. The unfairness of Defendants' conduct is reflected in, among other things, the

following:

a. Defendants secretly deployed sophisticated session-replay, fingerprinting, telemetry, and related tracking technologies on the Minecraft Properties to capture, record, and analyze users' detailed behavior and communications, far beyond what is necessary to provide or secure the services;

b. Defendants targeted, included, or failed to exclude minors—including children using Minecraft: Education Edition and other child-directed or education-facing properties—from this surveillance, despite California's strong public policy favoring robust protection of children's privacy;

c. Defendants leveraged the resulting data to further their own interests in analytics, product optimization, engagement, experimentation, personalization, and related business purposes, while providing users with at most vague, generic references to "cookies," "analytics," or "personalization" that did not meaningfully disclose the true nature, scope, or purposes of the tracking;

d. Defendants' conduct was undertaken in circumstances of significant informational and bargaining asymmetry, where ordinary consumers—and especially children and parents—lacked the technical knowledge and practical ability to detect or avoid the tracking, and reasonably believed that they were merely using a game or educational tool; and

e. Any arguable benefits of Defendants' practices could have been achieved through less invasive, less granular, and more transparent means that did not require full session replay, fingerprinting, and pervasive telemetry, particularly for child and education users.

200. Under any of the tests applied by California courts to evaluate unfairness—including whether the conduct offends an established public policy, whether it is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers, and/or whether the harm to consumers outweighs any countervailing benefits—Defendants' conduct qualifies as "unfair."

**C. Fraudulent Business Acts and Practices**

201. Defendants' conduct also constitutes "fraudulent" business acts or practices under the UCL because Defendants' representations and omissions about data collection and tracking were

likely to deceive members of the public.

202. Defendants represented, expressly or by implication, in their privacy policies, terms of use, cookie notices, and other public-facing materials, that they would collect and use information from users of the Minecraft Properties in limited, disclosed ways, and that users could understand and control how their data was used.

203. Defendants failed to disclose, and/or obscured, material facts about their deployment of session-replay, device-fingerprinting, telemetry, and related tracking technologies on the Minecraft Properties, including that: (a) users' movements and interactions could be recorded and replayed; (b) persistent device identifiers or fingerprints could be generated to recognize and track users across sessions; and (c) detailed behavioral and content data could be transmitted to additional analytics and tracking endpoints.

204. These omissions and half-truths were material to reasonable consumers, including parents deciding whether to permit their children to use Minecraft Properties and schools deciding whether to deploy Minecraft: Education Edition in classrooms. Had Plaintiffs and Class members known the truth, they would not have used the services at all, would not have used them on the same terms, would not have paid for them on the same terms, or would have taken additional measures to protect their privacy.

205. Defendants knew, or were reckless in not knowing, that their disclosures were incomplete and misleading, and that consumers would reasonably be deceived into believing that their interactions with the Minecraft Properties were not being recorded and exploited in the manner alleged.

206. As a direct and proximate result of Defendants' fraudulent, unfair, and unlawful business practices, Plaintiffs and California Class members suffered the injuries described above.

**D. Entitlement to Relief**

207. Defendants' conduct is ongoing, and unless restrained and enjoined by this Court, Defendants will continue to engage in the unlawful, unfair, and fraudulent business acts and practices alleged herein.

208. Plaintiffs lack an adequate remedy at law with respect to their claims for prospective

equitable relief because monetary damages alone cannot fully restore Plaintiffs' and Class members' lost control over their communications and personal data, require deletion of unlawfully collected information, mandate adequate disclosures, or prevent future covert interception, replay, fingerprinting, telemetry collection, or related exploitation of adult, minor, and education users on the Minecraft Properties.

209. Pursuant to Business and Professions Code section 17203, Plaintiffs, on behalf of themselves and the California Class, including the Minor Subclass and Education Subclass, seek equitable relief, including restitution, declaratory relief, and preliminary and permanent injunctive relief prohibiting Defendants from continuing the unlawful, unfair, and fraudulent business acts and practices alleged herein.

210. Plaintiffs further seek orders requiring Defendants to:

a. cease intercepting, recording, replaying, fingerprinting, transmitting, retaining, and exploiting users' communications and detailed behavioral data through session-replay, telemetry, and similar tracking technologies on the Minecraft Properties without valid, informed, prior consent;

b. cease deploying such technologies on child-directed and education-facing properties absent robust, lawful disclosures and legally sufficient parental authorization where required;

c. provide lawful, clear, and conspicuous disclosures concerning the nature, scope, purpose, and recipients of any future data collection and tracking;

d. delete, purge, or otherwise cease retaining and using unlawfully collected data; and

e. implement effective privacy safeguards for adult, minor, and education users of the Minecraft Properties.

211. Plaintiffs also seek such further equitable relief as the Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the California Class and Subclasses, respectfully pray that judgment be entered in their favor and against Defendants, and that the Court grant the following relief:

**1. Certification of Classes**

a. Certify this action as a class action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3);

b. Appoint Plaintiffs as representatives of the California Class and Subclasses; and

c. Appoint Plaintiffs' counsel as Class Counsel.

**2. Declaratory Relief**

Enter a judgment declaring that Defendants' conduct, as alleged in this First Amended Complaint, is unlawful and violates:

a. The California Invasion of Privacy Act, Cal. Penal Code §§ 631, 632, and 635;

b. Plaintiffs' and Class members' right to privacy under the California Constitution, art. I, § 1;

c. California common-law protections against intrusion upon seclusion; and

d. California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq.

**3. Injunctive Relief**

Issue a permanent injunction, and any appropriate preliminary relief as necessary, requiring Defendants to:

a. Cease intercepting, recording, replaying, fingerprinting, transmitting, retaining, disclosing, or exploiting the contents of users' communications and detailed behavioral data via session-replay, fingerprinting, telemetry, and similar tracking technologies on the Minecraft Properties without valid, informed, prior consent from all parties where required by law;

b. Cease deploying such tracking technologies on child-directed and education-facing Minecraft Properties, including Minecraft: Education Edition, unless and until Defendants implement robust, legally sufficient parental-consent mechanisms and strict limitations on the collection, retention, and use of children's data consistent with California law;

c. Delete, destroy, purge, or sequester, as appropriate and subject to Court order, all data, recordings, identifiers, fingerprints, profiles, or other information derived from Plaintiffs' and Class members' communications and interactions that were collected

through the unlawful practices alleged herein;

d. Implement clear, accurate, and prominent privacy notices and user interfaces that fully and understandably disclose the nature and extent of any tracking, session replay, fingerprinting, telemetry, and third-party integrations on the Minecraft Properties, in language and formats accessible to adults, parents or guardians, and children as appropriate;

e. Provide users and parents or guardians with effective, easy-to-use controls to manage and limit the collection, use, sharing, and retention of their data, including specific protections and defaults for minors and educational use; and

f. Implement effective privacy safeguards, compliance measures, monitoring, and remedial practices sufficient to prevent recurrence of the unlawful conduct alleged herein, including periodic independent privacy and security assessments or audits, at Defendants' expense, addressing tracking and data-handling practices on the Minecraft Properties.

**4. Statutory Damages Under CIPA**

Award Plaintiffs and Class members statutory damages under Cal. Penal Code § 637.2, including the greater of five thousand dollars ($5,000) per violation or three times actual damages, where applicable and permitted by law.

**5. Actual, Compensatory, General, and Nominal Damages**

Award actual, compensatory, general, and nominal damages to Plaintiffs and Class members according to proof and to the extent recoverable under applicable law.

**6. Restitution and Other Equitable Monetary Relief**

Award restitution, injunctive, and other equitable monetary relief to the extent permitted by law.

**7. Pre- and Post-Judgment Interest**

Award pre-judgment and post-judgment interest at the maximum rate allowed by law on all amounts awarded.

**8. Attorneys' Fees and Costs**

Award Plaintiffs and the Class their reasonable attorneys' fees, expenses, and costs of suit, including under Cal. Code Civ. Proc. § 1021.5, the common-fund or common-benefit doctrine, and any other applicable fee-shifting or cost-recovery provision, to the extent permitted by law.

**9. Further Relief**

Grant such other and further legal, equitable, declaratory, injunctive, or other relief as the Court may deem just, proper, and appropriate under the circumstances.

**Jury Trial Demand**: Plaintiffs hereby demand a trial by jury on all claims so triable. Plaintiffs request that the issues of their entitlement to damages and the amounts of statutory damages be determined by a jury at trial.

RESPECTFULLY SUBMITTED

Dated: March 18, 2026



________________________
Robert B. Salgado, Esq.
Attorney for Plaintiffs