Joshua H. Lerner (SBN 220755)
WILMER CUTLER PICKERING
HALE AND DORR LLP
50 California Street, Suite 3600
San Francisco, CA 94111
Telephone: (628) 235-1000
Facsimile: (628) 235-1001
joshua.lerner@wilmerhale.com

Siddharth Velamoor (*pro hac vice*)
WILMER CUTLER PICKERING
HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
Telephone: (202) 663-6000
Facsimile: (202) 663-6363
siddharth.velamoor@wilmerhale.com

Emily Barnet (*pro hac vice*)
WILMER CUTLER PICKERING
HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Telephone: (212) 230-8800
Facsimile: (212) 230-8888
emily.barnet@wilmerhale.com

*Attorneys for Defendants Microsoft Corporation and Mojang AB*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

GAVIN HAYS, ALYCE ITSUYE DART, individually and as parent and guardian of A.D., a minor, A.D., a minor by and through her guardian Alyce Itsuye Dart, and R.G., a minor by and through her guardians Michael Garcia and Salena Garcia, on behalf of themselves and all others similarly situated,

Plaintiffs,

vs.

MICROSOFT CORPORATION, and MOJANG AB, and DOES 1-10,

Defendants.

Case No. 3:25-cv-11078-JSC

**MICROSOFT CORPORATION AND MOJANG AB'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND STAY LITIGATION**

Date: June 17, 2026
Time: 10:00 a.m.
Judge: Jacqueline Scott Corley

Action Filed: December 30, 2025

[Declarations of Michael Scari and Emily Barnet Under Seal and Proposed Order Filed Concurrently]

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on June 17, 2026, at 10:00 a.m., or as soon thereafter as this matter may be heard before Judge Jacqueline Scott Corley in Courtroom 8 of the above-entitled court located at 450 Golden Gate Avenue, 19th Floor, San Francisco, California 94102, Defendants Microsoft Corporation and Mojang AB will move under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, for an order compelling arbitration of claims asserted by Plaintiffs Gavin Hays, Alyce Itsuye Dart, and A.D. in the First Amended Complaint filed on March 18, 2026. Microsoft and Mojang will also move for a stay of proceedings pending determination of the motion and completion of the arbitration. *See* 9 U.S.C. § 3.

Plaintiffs assert various privacy claims against Microsoft and Mojang related to their alleged use of Minecraft games. But Mr. Hays and Ms. Dart agreed to the Microsoft Services Agreement ("MSA"), and under the MSA, Mr. Hays and Ms. Dart agreed to arbitrate any disputes with Microsoft concerning Minecraft games. Under the MSA's express terms, Ms. Dart's consent binds her daughter A.D., on whose behalf Ms. Dart created the account. A.D. is also bound to arbitrate under third-party-beneficiary and estoppel principles. As a result, Mr. Hays, Ms. Dart, and A.D. must arbitrate their claims against Microsoft and its affiliate Mojang. Microsoft and Mojang are not presently moving to compel R.G. to arbitrate her claims, which allegedly arise from playing Minecraft Education at school, but those claims should be stayed as a matter of judicial economy.

This motion is based on this notice and motion; the attached memorandum; the concurrently filed declarations of Michael Scari and Emily Barnet; all pleadings, records, and files in this action; and such evidence and argument as may be presented at or before the hearing on this motion.

DATED: April 17, 2026

Respectfully submitted,

/s/ *Joshua H. Lerner*

Joshua H. Lerner (SBN 220755)
WILMER CUTLER PICKERING
HALE AND DORR LLP

*Attorney for Defendants Microsoft Corporation and Mojang AB*

## TABLE OF CONTENTS


Page

INTRODUCTION ..... 1

BACKGROUND ..... 2

A. The MSA Contains An Arbitration Agreement ..... 2

B. Mr. Hays's, Ms. Dart's, and A.D.'s Alleged Use Of Minecraft Products ..... 5

ARGUMENT ..... 7

I. Mr. Hays And Ms. Dart Agreed To Arbitrate Under The MSA ..... 8

II. A.D. Is Bound To Arbitrate Under The MSA ..... 11

A. Ms. Dart's Assent Binds A.D. ..... 11

B. A.D. Is Also Bound As A Third-Party Beneficiary Of The MSA ..... 12

C. Estoppel Binds A.D. To The MSA's Arbitration Agreement ..... 13

III. The MSA's Arbitration Agreement Covers Mr. Hays's, Ms. Dart's, And A.D.'s Claims ..... 14

IV. The MSA's Arbitration Agreement Is Not Unconscionable ..... 15

V. The Court Should Stay The Entire Case Pending Arbitration ..... 16

CONCLUSION ..... 18

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*ACE Capital Re Overseas Limited v. Central United Life Insurance Company*,
307 F.3d 24 (2d Cir. 2002)....15

*Alkutkar v. Bumble Inc.*,
2022 WL 4112360 (N.D. Cal. Sept. 8, 2022)....16

*J.A. ex rel. Allen v. Microsoft Corporation*,
2021 WL 1723454 (W.D. Wash. Apr. 2, 2021)....1

*Ambercroft Trading Limited v. Biddy*,
2020 WL 1820599 (N.D. Cal. Apr. 10, 2020)....18

*Angelilli v. Activision Blizzard, Inc.*,
2025 WL 524276 (N.D. Ill. Feb. 18, 2025)....13

*AT&T Technologies, Inc. v. Communications Workers of America*,
475 U.S. 643 (1986)....14

*Austin v. Experian Information Solutions, Inc.*,
148 F.4th 194 (4th Cir. 2025)....10, 11

*B.D. v. Blizzard Entertainment, Inc.*,
292 Cal. Rptr. 3d 47 (Ct. App. 2022)....10, 11, 12

*Battle v. Microsoft Corporation*,
2024 WL 4555687 (D. Md. Oct. 23, 2024)....1

*Berman v. Freedom Financial Network, LLC*,
30 F.4th 849 (9th Cir. 2022)....10

*Buckeye Check Cashing, Inc. v. Cardegna*,
546 U.S. 440 (2006)....12

*Campos v. JPMorgan Chase Bank, N.A.*,
2019 WL 827634 (N.D. Cal. Feb. 21, 2019)....16

*Chamber of Commerce of the United States of America v. Bonta*,
62 F.4th 473 (9th Cir. 2023)....12

*Charles v. Portfolio Recovery Associates, LLC*,
2024 WL 1672350 (9th Cir. Apr. 18, 2024)....14, 15

*Chin v. Thumbtack Inc.*,
2026 WL 807276 (N.D. Cal. Mar. 24, 2026)....9

*Coast Plaza Doctors Hospital v. Blue Cross of California*,
99 Cal. Rptr. 2d 809 (Ct. App. 2000) ....................15

*Connell v. ByteDance, Inc.*,
2025 WL 1828472 (N.D. Cal. July 1, 2025)....................2, 17, 18

*Cure & Associates, P.C. v. LPL Financial LLC*,
118 F.4th 663 (5th Cir. 2024) ....................13

*Dahdah v. Rocket Mortgage, LLC*,
166 F.4th 556 (6th Cir. 2026) ....................10

*Day v. Microsoft Corporation*,
2014 WL 243159 (W.D. Wash. Jan. 22, 2014)....................1

*E.A.R.R. v. Roku, Inc.*,
2026 WL 369238 (C.D. Cal. Feb. 6, 2026)....................14

*Epic Systems Corporation v. Lewis*,
584 U.S. 497 (2018)....................7

*Forsyth v. HP Inc.*,
2018 WL 732722 (N.D. Cal. Feb. 6, 2018) ....................18

*Frontier Oil Corporation v. RLI Insurance Company*,
63 Cal. Rptr. 3d 816 (Ct. App. 2007) ....................9

*Garcia v. Roblox Corporation*,
2026 WL 413636 (C.D. Cal. Feb. 11, 2026)....................14

*Geier v. m-Qube Inc.*,
824 F.3d 797 (9th Cir. 2016) (per curiam)....................8, 14

*Ghazizadeh v. Coursera, Inc.*,
737 F. Supp. 3d 911 (N.D. Cal. 2024) ....................9

*Hofer v. Emley*,
2019 WL 4575389 (N.D. Cal. Sept. 20, 2019) ....................13

*Hohe v. San Diego Unified School District*,
274 Cal. Rptr. 647 (Ct. App. 1990)....................12

*Kam-Ko Bio-Pharm Trading Company Limited-Australasia v. Mayne Pharma (USA) Inc.*, 560 F.3d 935 (9th Cir. 2009) ....................8

*Keebaugh v. Warner Brothers Entertainment Inc.*,
100 F.4th 1005 (9th Cir. 2024) ....................8, 9, 10, 11, 15

*KPMG LLP v. Cocchi*,
565 U.S. 18 (2011) (per curiam)....................7

*Lag Shot LLC v. Facebook, Inc.*,
545 F. Supp. 3d 770 (N.D. Cal. 2021) .....15

*Lamar, Archer & Cofrin, LLP v. Appling*,
584 U.S. 709 (2018).....15

*Luong v. Super Micro Computer, Inc.*,
2024 WL 4681605 (N.D. Cal. Nov. 4, 2024) .....17

*Maher v. Microsoft Corporation*,
2018 WL 1535043 (N.D. Ill. Mar. 29, 2018).....1, 16

*Mahram v. Kroger Company*,
324 Cal. Rptr. 3d 575 (Ct. App. 2024) .....11

*Martin v. United Rentals (North America), Inc.*,
2025 WL 1554333 (N.D. Cal. June 2, 2025) .....7

*Massel v. Successfulmatch.com*,
2025 WL 2452371 (9th Cir. Aug. 26, 2025).....10

*McCray v. Microsoft Corporation*,
2026 WL 83990 (W.D. Wash. Jan. 12, 2026).....1

*Mendoza v. Microsoft Inc.*,
2014 WL 4540225 (W.D. Wash. Sept. 11, 2014).....1

*Mitsubishi Motors Corporation v. Soler Chrysler-Plymouth, Inc.*,
473 U.S. 614 (1985).....14

*Monschke v. Timber Ridge Assisted Living, LLC*,
197 Cal. Rptr. 3d 921 (Ct. App. 2016) .....12

*Morrison v. Yippee Entertainment, Inc.*,
2025 WL 2389424 (9th Cir. Aug. 18, 2025).....10

*Moses H. Cone Memorial Hospital v. Mercury Construction Corporation*,
460 U.S. 1 (1983).....2, 17

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) .....13, 14

*Oberstein v. Live Nation Entertainment, Inc.*,
60 F.4th 505 (9th Cir. 2023) .....9, 10, 11

*Open Book Theatre Company v. Brown Paper Tickets, LLC*,
749 F. Supp. 3d 1076 (S.D. Cal. 2024).....8

*Patrick v. Running Warehouse, LLC*,
93 F.4th 468 (9th Cir. 2024) .....9

*Peloquin v. Tesla, Inc.*,
2026 WL 497169 (N.D. Cal. Feb. 23, 2026) ....................8, 16

*Philadelphia Indemnity Insurance Company v. SMG Holdings, Inc.*,
257 Cal. Rptr. 3d 775 (Ct. App. 2019) ....................12, 13

*Pillar Project A.G. v. Payward Ventures, Inc.*,
279 Cal. Rptr. 3d 117 (Ct. App. 2021) ....................13

*Pokorny v. Quixtar, Inc.*,
601 F.3d 987 (9th Cir. 2010) ....................8

*Romanov v. Microsoft Corporation*,
2021 WL 3486938 (D.N.J. Aug. 9, 2021) ....................1

*Rosales v. Vitas Healthcare Corporation of California*,
2025 WL 2954975 (N.D. Cal. Sept. 16, 2025) ....................16

*Rubio-Leon v. Fresh Harvest, Inc.*,
812 F. Supp. 3d 944 (N.D. Cal. 2025) ....................17, 18

*S.G. v. Epic Games, Inc.*,
796 F. Supp. 3d 614 (N.D. Cal. 2025) ....................12, 13, 14

*Serpa v. California Surety Investigations, Inc.*,
155 Cal. Rptr. 3d 506 (Ct. App. 2013) ....................16

*Singh v. Adobe Inc.*,
797 F. Supp. 3d 1038 (N.D. Cal. 2025) ....................9

*Smith v. Spizzirri*,
601 U.S. 472 (2024) ....................2, 17

*SolarPark Korea Company v. Solaria Corporation*,
2023 WL 4983159 (N.D. Cal. Aug. 2, 2023) ....................17

*Tompkins v. 23andMe, Inc.*,
840 F.3d 1016 (9th Cir. 2016) ....................14, 15, 16

*Walsh v. Microsoft Corporation*,
2014 WL 4168479 (W.D. Wash. Aug. 20, 2014) ....................1

*Winkler v. McCloskey*,
83 F.4th 720 (9th Cir. 2023) ....................8

## STATUTES AND RULES

9 U.S.C.

§ 2 .......... 1, 7

§ 3 .......... 1, 2

§ 4 .......... 1

Fed. R. Civ. P. 12 .......... 7

**INTRODUCTION**

Gavin Hays, Alyce Itsuye Dart, A.D., and R.G. assert various privacy claims against Microsoft Corporation and Mojang AB related to their alleged use of Minecraft games. First Amended Complaint, ECF No. 20 ("FAC"). But Mr. Hays's, Ms. Dart's, and A.D.'s claims do not belong in court because they agreed to "binding individual arbitration before the American Arbitration Association ('AAA') under the Federal Arbitration Act ('FAA'), and not to sue in court in front of a judge or jury." Ex. A § 15.[1] Their claims—as well as R.G.'s claims—should be stayed pending the completion of arbitral proceedings.

Mr. Hays and Ms. Dart agreed to the Microsoft Services Agreement ("MSA") through an easy-to-understand, routinely enforced method of assent when they created Microsoft accounts, a prerequisite to playing Minecraft. Under the MSA, Mr. Hays and Ms. Dart agreed that they would arbitrate any disputes with Microsoft and Mojang concerning Minecraft games. Ms. Dart's assent binds her daughter A.D. under the MSA's express terms because Ms. Dart created an account for A.D. to use. A.D. is also bound to arbitrate under third-party-beneficiary and estoppel principles.

The FAA requires enforcing the MSA's arbitration provision. 9 U.S.C. §§ 2-4. Indeed, courts have repeatedly compelled arbitration under the MSA, including claims by adults and minors. *See, e.g.*, *McCray v. Microsoft Corp.*, 2026 WL 83990, at *6 (W.D. Wash. Jan. 12, 2026); *Battle v. Microsoft Corp.*, 2024 WL 4555687, at *5-8 (D. Md. Oct. 23, 2024); *Romanov v. Microsoft Corp.*, 2021 WL 3486938, at *3-4 (D.N.J. Aug. 9, 2021); *J.A. ex rel. Allen v. Microsoft Corp.*, 2021 WL 1723454, at *3-4, *7-9 (W.D. Wash. Apr. 2, 2021), *R&R adopted*, 2021 WL 1720961 (W.D. Wash. Apr. 30, 2021); *Maher v. Microsoft Corp.*, 2018 WL 1535043, at *4-6 (N.D. Ill. Mar. 29, 2018); *Mendoza v. Microsoft Inc.*, 2014 WL 4540225, at *3-5 (W.D. Wash. Sept. 11, 2014); *Walsh v. Microsoft Corp.*, 2014 WL 4168479, at *3-5 (W.D. Wash. Aug. 20, 2014); *Day v. Microsoft Corp.*, 2014 WL 243159, at *2, *5 (W.D. Wash. Jan. 22, 2014). There is no reason to reach a different conclusion here. All of Mr. Hays's, Ms. Dart's, and A.D.'s claims are arbitrable, and this

---

[1] Citations to "Ex." are to exhibits attached to the Declaration of Michael Scari ("Scari Decl.") filed herewith.

Court should stay proceedings for their claims pending the completion of arbitral proceedings. *See Smith v. Spizzirri*, 601 U.S. 472, 478 (2024).

Although Microsoft and Mojang are not presently moving to compel R.G.'s claims, which allegedly arise from playing Minecraft Education, her claims should also be stayed as a matter of judicial economy. A stay is warranted because of the substantial legal and factual overlap between R.G.'s and the other plaintiffs' claims. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 n.23 (1983); *Connell v. ByteDance, Inc.*, 2025 WL 1828472, at *28 (N.D. Cal. July 1, 2025).

## BACKGROUND

### A. The MSA Contains An Arbitration Agreement

Microsoft offers a broad range of online consumer services, including Minecraft. FAC ¶ 13; Scari Decl. ¶ 2; Ex. A at 1, 28-31. Minecraft is a popular video game developed by Mojang, a wholly owned Microsoft subsidiary. FAC ¶¶ 14, 78.

The MSA is an agreement between consumers and Microsoft and its affiliates; it governs the covered "Services," which expressly include "Minecraft games." Ex. A at 1, 30. For the entire putative class period (and for some time before that), a user has been able to play Minecraft only after creating a Microsoft account. *See* Scari Decl. ¶ 2. Mr. Hays and Ms. Dart allege that they created accounts that Mr. Hays and A.D. use to play Minecraft. *See* FAC ¶¶ 7-8. Plaintiffs' counsel provided the email addresses [redacted] and [redacted] for the Microsoft accounts from which Mr. Hays's, Ms. Dart's, and A.D.'s claims arise. Barnet Decl. ¶ 2. The Microsoft accounts created by Mr. Hays and Ms. Dart required each of them to accept the MSA—and, in Ms. Dart's case, to accept it both on her own behalf and on behalf of A.D., her minor child. Scari Decl. ¶ 10. Microsoft's records confirm that Mr. Hays and Ms. Dart have indeed accepted the MSA multiple times.

**Users agree to arbitrate during account creation**

During the Microsoft account-creation process, Microsoft presents users with the following screen (or one substantially similar to it):




Scari Decl. ¶ 3. The screen informs users that "By selecting Next, I agree to the Microsoft Services Agreement and Privacy Statement." *Id.* ¶ 4. The term "Microsoft Services Agreement" appears in blue font, signaling it is a hyperlink that—when clicked—shows the MSA's full text. *Id.* This hyperlink provides the user the opportunity to review the MSA before deciding whether to click "Next" to proceed and thereby accept the terms. *Id.* If a user does not click "Next," the user cannot create a Microsoft account. *Id.*

Under the MSA's title, in bold capital letters, the MSA announces that it contains an arbitration clause:

> **IF YOU LIVE IN (OR YOUR PRINCIPAL PLACE OF BUSINESS IS IN) THE UNITED STATES, PLEASE READ THE BINDING ARBITRATION**

> **CLAUSE AND CLASS ACTION WAIVER IN SECTION 15. IT AFFECTS HOW DISPUTES ARE RESOLVED.**

Ex. A at 1. The top of the MSA provides a "Summary of Arbitration Provisions" and a blue, underlined hyperlink to Section 15, which states:

> **Binding Arbitration and Class Action Waiver If You Live In (or, If a Business, Your Principal Place of Business Is In) the United States.** We hope we never have a dispute, but if we do, you and we agree to try for 60 days, upon receipt of a Notice of Dispute, to resolve it informally. If we can't, you and we agree to **binding individual arbitration before the American Arbitration Association ("AAA") under the Federal Arbitration Act ("FAA"), and not to sue in court in front of a judge or jury**. Instead, a neutral arbitrator will decide and the arbitrator's decision will be final except for a limited right of review under the FAA. **Class action lawsuits, class-wide arbitrations, private attorney-general actions, requests for public injunctions, and any other proceeding or request for relief where someone acts in a representative capacity aren't allowed. Nor is combining individual proceedings without the consent of all parties.** "We," "our," and "us" includes Microsoft and Microsoft's affiliates.

*Id.* § 15. Section 15(a) elaborates:

> **Disputes Covered—Everything Except IP.** The term "dispute" is as broad as it can be. It includes any claim or controversy between you and us concerning the Services, the software related to the Services, the Services' or software's price, your Microsoft account, marketing, communications, your purchase transaction, billing, or these Terms, under any legal theory including contract, warranty, tort, statute, or regulation, **except disputes relating to the enforcement or validity of your, your licensors', our, or our licensors' intellectual property rights**.

*Id.* § 15(a).

**Microsoft identifies changes to the MSA**

The MSA explains that Microsoft can update the MSA's terms, and that using covered services after any such updates constitutes user agreement to the new terms. Section 7(a) states:

> We may change these Terms at any time, and we'll tell you when we do. Using the Services after the changes become effective means you agree to the new terms. If you don't agree to the new terms, you must stop using the Services, close your Microsoft account and, if you are a parent or guardian, help your minor child close his or her Microsoft account.

*Id.* § 7(a). Each time Microsoft updates the MSA, it notifies users through (a) emails to their registered email addresses (known as "email notices"), and (b) pop-up notices (known as "interrupt notices"). Scari Decl. ¶ 7. Microsoft sends the email notice before the update's effective date to

ensure that users have time to review the terms and stop using and close their accounts if they do not agree to the updated MSA. *Id.* ¶ 8. The interrupt notices appear when a user logs into a Microsoft account using a browser; the notices require the user to click a button to acknowledge notice of the update before they can proceed to use their Microsoft account to access Microsoft services, including Minecraft. *Id.* ¶ 9.

Microsoft also gives users the opportunity to reject changes to Section 15 of the MSA:

> You may reject any change we make to section 15 (except address changes) by personally signing and sending us notice within 30 days of the change by U.S. Mail to the address in section 15.b. If you do, the most recent version of section 15 before the change you rejected will apply.

Ex. A § 15(f). Microsoft has no record of Mr. Hays, Ms. Dart, or A.D. rejecting changes to Section 15 of the MSA. Scari Decl. ¶ 11.

**Parents agree to the MSA on behalf of children**

Section 4(a)(iii) of the MSA provides that parents or legal guardians agree to the MSA on behalf of minors. Specifically, it states:

> **Kids and Accounts.** By creating a Microsoft account or using the Services, you accept and agree to be bound by these Terms and represent that you have either reached the age of "majority" where you live or your parent or legal guardian agrees to be bound by these Terms on your behalf. If you do not know whether you have reached the age of majority where you live, or do not understand this section, please ask your parent or legal guardian for help. If you are the parent or legal guardian of a minor, you and the minor accept and agree to be bound by these Terms and are responsible for all use of the Microsoft account or Services, including purchases, whether the minor's account is now open or created later.

Ex. A § 4(a)(iii).

As noted, the MSA expressly contemplates updates to its terms and provides that users agree to updated terms by continued use following notice. Ex. A § 7(a).

### B. Mr. Hays's, Ms. Dart's, and A.D.'s Alleged Use Of Minecraft Products

Mr. Hays is an adult resident of California. FAC ¶ 7. He alleges that he has "us[ed] Minecraft for personal, recreational purposes, including to play with friends and play the game" as recently as January 2026. *Id.* ¶¶ 7, 35. Plaintiffs' counsel has provided an email address used to create the Microsoft account that Mr. Hays has allegedly used and on which Mr. Hays's claims

rely. Barnet Decl. ¶ 2. Microsoft's business records confirm that Mr. Hays used this email address [redacted] to create a Microsoft account on March 26, 2019. Scari Decl. ¶ 10(b). Mr. Hays could not have created his Microsoft account without clicking "Next" to agree to the MSA. *See id.* ¶ 4; *supra* § A. Mr. Hays also accepted more recent versions of the MSA. Microsoft sent notices of the 2024 and 2025 MSA updates to Mr. Hays's email address. Scari Decl. ¶ 10(b). By keeping his Microsoft account open and by continuing to use this account after Microsoft sent notices of the 2024 and 2025 MSA updates, Mr. Hays agreed to the 2024 and 2025 MSA. Ex. A § 7(a) ("If you don't agree to the new terms, you must stop using the Services"); Ex. B § 7(a) (same). In addition, Microsoft's business records confirm that Mr. Hays clicked on an interrupt notice to accept the MSA on October 16, 2023, agreeing again to the MSA and its arbitration agreement. Scari Decl. ¶ 10(b). Microsoft's business records further confirm that Mr. Hays has used his Microsoft account to play Minecraft, and that he accessed his Microsoft account as recently as March 2026. *Id.*

Ms. Dart is A.D.'s mother and legal guardian; they reside in California. FAC ¶¶ 8-9. According to the amended complaint, Ms. Dart created A.D.'s Minecraft account using Ms. Dart's personal email address. *Id.* ¶¶ 8-9, 37, 39. Ms. Dart also paid for and downloaded Minecraft for A.D. *Id.* ¶¶ 8, 37. Plaintiffs' counsel has provided an email address that Ms. Dart and A.D. have allegedly used and from which Ms. Dart's and A.D.'s claims arise. Barnet Decl. ¶ 2. Microsoft's business records confirm that Ms. Dart used this email address [redacted] to create a Microsoft account on September 13, 2018. Scari Decl. ¶ 10(a). Ms. Dart could not have created the Microsoft account without clicking "Next" to agree to the MSA. *See id.* ¶ 4; *supra* § A. A.D. allegedly has used this Microsoft account to play Minecraft. FAC ¶¶ 9, 39. Ms. Dart also accepted a more recent version of the MSA. Microsoft sent notice of the 2025 MSA update to Ms. Dart's email address. Scari Decl. ¶ 10(a). By keeping this Microsoft account open and by continuing to allow A.D. to use this account after Microsoft sent notice of the 2025 MSA update, Ms. Dart agreed to the 2025 MSA. Ex. A § 7(a); Ex. B § 7(a). In addition, Microsoft's business records confirm that someone using the account Ms. Dart created clicked on an interrupt notice to accept the MSA

on September 13, 2018, agreeing again to the MSA and its arbitration agreement. Scari Decl. ¶ 10(a). Microsoft's business records further confirm that the Microsoft account that Ms. Dart says she created for A.D.'s use was accessed as recently as March 2026.

Despite having agreed to the MSA's arbitration provision, Mr. Hays, Ms. Dart, and A.D. brought this lawsuit in federal court, accusing Microsoft and Mojang of "instrument[ing] Minecraft-branded properties with tracking technologies—including session-replay, keystroke and mouse-movement logging, device fingerprinting, telemetry collection, and embedded analytics and video integrations—that intercept, record, and transmit the contents of users' communications and detailed behavioral data in real time." FAC ¶ 2. Mr. Hays, Ms. Dart, and A.D. assert causes of action under the California Invasion of Privacy Act, the common law of privacy, Article I, Section 1 of the California Constitution, California's Unfair Competition Law, and the federal Declaratory Judgment Act. *Id.* ¶¶ 97-211.[2]

**ARGUMENT**

The FAA "reflects an 'emphatic federal policy in favor of arbitral dispute resolution,'" *KPMG LLP v. Cocchi*, 565 U.S. 18, 21 (2011) (per curiam), and requires courts to "enforce arbitration agreements according to their terms," *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 506 (2018). The FAA applies here because the MSA is "a contract evidencing a transaction involving commerce," 9 U.S.C. § 2, and because the MSA expressly provides that "the Federal Arbitration Act governs all provisions relating to arbitration," Ex. A § 11; *see Martin v. United Rentals (N. Am.), Inc.*, 2025 WL 1554333, at *5 (N.D. Cal. June 2, 2025) ("When an arbitration agreement expressly adopts the FAA as governing the agreement, and the contract involves interstate commerce, the FAA governs the parties' arbitration agreement.").

[2] Microsoft and Mojang are not moving to compel arbitration of the claims asserted by the remaining plaintiff, R.G., who alleges that she played Minecraft "through school-provided credentials and a school-associated account while attending Bostonia Global Elementary School in El Cajon, California" during the 2018-2019, 2019-2020, 2020-2021, and 2021-2022 school years. FAC ¶ 10. As discussed below, Microsoft and Mojang seek to stay adjudication of R.G.'s claims pending the completion of arbitral proceedings for the other plaintiffs. *See infra* § V. Microsoft and Mojang reserve all rights to raise any defenses under Federal Rule of Civil Procedure 12 at the appropriate time, consistent with the briefing schedule ordered by the Court on March 23, 2026. *See* ECF No. 22.

Under the FAA, a court "compel[s] arbitration if (1) a valid agreement to arbitrate exists and (2) the dispute falls within the scope of that agreement." *Geier v. m-Qube Inc.*, 824 F.3d 797, 799 (9th Cir. 2016) (per curiam). The party seeking to compel arbitration has the initial burden to show these requirements. *See Winkler v. McCloskey*, 83 F.4th 720, 729 (9th Cir. 2023). Once the moving party does so, the burden shifts to the party resisting arbitration to prove that the arbitration agreement is not enforceable. *See Kam-Ko Bio-Pharm Trading Co. Ltd.-Australasia v. Mayne Pharma (USA) Inc.*, 560 F.3d 935, 940 (9th Cir. 2009); *Peloquin v. Tesla, Inc.*, 2026 WL 497169, at *3 (N.D. Cal. Feb. 23, 2026). Applying this standard here, all of Mr. Hays's, Ms. Dart's, and A.D.'s claims must be arbitrated.

## I. Mr. Hays And Ms. Dart Agreed To Arbitrate Under The MSA

Mr. Hays and Ms. Dart are bound by the valid arbitration agreement contained in the MSA because they affirmatively assented to it. Determining whether Mr. Hays and Ms. Dart agreed to arbitrate under the MSA requires "apply[ing] state-law principles of contract formation," *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1013 (9th Cir. 2024), which itself requires first "determin[ing] which state's laws to apply" to matters of contract formation "using the choice-of-law rules of the forum state," *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 994 (9th Cir. 2010). The options here include California (Mr. Hays's and Ms. Dart's alleged state of residence) and Washington (Microsoft's state of incorporation and principal place of business). Because "the 'laws of contract formation' in California and Washington 'are materially the same,'" *Open Book Theatre Co. v. Brown Paper Tickets, LLC*, 749 F. Supp. 3d 1076, 1081 (S.D. Cal. 2024), "the court may apply California law" in determining whether Mr. Hays and Ms. Dart agreed to arbitrate under the MSA, *Frontier Oil Corp. v. RLI Ins. Co.*, 63 Cal. Rptr. 3d 816, 831 (Ct. App. 2007) (describing California's choice-of-law rules when "the applicable rules of law are identical").[3]

---

[3] Section 11 of the MSA provides in part: "If you live in (or, if a business, your principal place of business is in) the United States, the laws of the state where you live (or, if a business, where your principal place of business is located) govern all claims, regardless of conflict of laws principles, except that the Federal Arbitration Act governs all provisions relating to arbitration." Ex. A § 11. All plaintiffs allege that they reside in California. *See* FAC ¶¶ 7-10.

It is well settled under California law that agreements to arbitrate formed via "sign-in wrap"—where an internet user is "notified of the existence of the website's terms of use and advised that by making some type of affirmative act, often by clicking a button, she is agreeing to the terms of service"—form binding contractual agreements. *Ghazizadeh v. Coursera, Inc.*, 737 F. Supp. 3d 911, 923 (N.D. Cal. 2024) (brackets omitted); *accord Chin v. Thumbtack Inc.*, 2026 WL 807276, at *6-7 (N.D. Cal. Mar. 24, 2026). "To form a contract under California law, the parties must manifest their mutual assent to the terms of the agreement." *Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 476 (9th Cir. 2024) (ellipsis omitted). "Parties traditionally manifest assent by written or spoken word, but they can also do so through conduct," so long as the party assenting through conduct "intends to engage in the conduct and knows or has reason to know that the other party may infer from his conduct that he assents." *Id.* Consistent with these principles, an online agreement is valid where "(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 515 (9th Cir. 2023); *accord Singh v. Adobe Inc.*, 797 F. Supp. 3d 1038, 1045 (N.D. Cal. 2025). Both requirements are satisfied here.

***Notice.*** To begin, Mr. Hays and Ms. Dart had "reasonably conspicuous notice" of the MSA. *Oberstein*, 60 F.4th at 515. In determining whether a consumer has sufficient notice, courts consider (a) "the context of the transaction" and (b) "the visual aspects of the notice." *Keebaugh*, 100 F.4th at 1019. Regarding "the context of the transaction," *id.*, courts assess whether "the type of transaction contemplates entering into a continuing, forward-looking relationship that would be governed by terms and conditions," *Singh*, 797 F. Supp. 3d at 1049; *accord Oberstein*, 60 F.4th at 517; *B.D. v. Blizzard Ent., Inc.*, 292 Cal. Rptr. 3d 47, 64 (Ct. App. 2022). Such a transaction plainly is implicated here. As the Ninth Circuit has recognized, "[n]o reasonably prudent internet user … would consider downloading and playing a potentially endless mobile [or video] game to be equivalent to an insular and discrete one-time transaction." *Keebaugh*, 100 F.4th at 1020. Rather, "[t]hese users know that … players can continue to play for a long time" and "understand that their

use … would be governed by some terms of use." *Id.* This reasoning applies to Mr. Hays and Ms. Dart, who signed up for Microsoft accounts to enable themselves or their children to play Minecraft for an indefinite, continuing period of time. FAC ¶¶ 7-8.

"[T]he visual aspects of the notice" were likewise sufficient here. *Keebaugh*, 100 F.4th at 1019. The "account creation screen was not 'crowded' with extraneous visuals," and the disclosure of the MSA was in "the natural flow of the user's actions." *Massel v. Successfulmatch.com*, 2025 WL 2452371, at *1 (9th Cir. Aug. 26, 2025) (brackets omitted); *see Dahdah v. Rocket Mortg., LLC*, 166 F.4th 556, 569 (6th Cir. 2026) ("[U]nder California law … [c]ourts are more likely to find an offer conspicuous if a page uses a 'simple, streamlined design' to convey it."). The hyperlink was located directly above the "Next" button—"precisely where a user would expect it within the natural visual path of completing the [account-creation] process," *Morrison v. Yippee Ent., Inc.*, 2025 WL 2389424, at *1 (9th Cir. Aug. 18, 2025)—as part of the statement that "By selecting Next, I agree to the Microsoft Services Agreement and Privacy Statement," Scari Decl. ¶ 4. Mr. Hays and Ms. Dart therefore "did not need to 'scroll down' or 'go exploring' to find out there were terms of use." *Austin v. Experian Info. Sols., Inc.*, 148 F.4th 194, 207 (4th Cir. 2025) (brackets omitted). Further, the relevant hyperlink was "conspicuously distinguished from the surrounding text in bright blue font, making its presence readily apparent." *Oberstein*, 60 F.4th at 516; *see* Scari Decl. ¶ 4; *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 857 (9th Cir. 2022) ("the use of a contrasting font color (typically blue)" is a "[c]ustomary design element[] denoting the existence of a hyperlink"). Altogether, notice of the MSA was "displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it." *Oberstein*, 60 F.4th at 515.

***Assent.*** By clicking the "Next" button, Mr. Hays and Ms. Dart unambiguously manifested their assent to the MSA. "A user's click of a button can be construed as an unambiguous manifestation of assent" where, as here, "the user is explicitly advised that the act of clicking will constitute assent to the terms and conditions of an agreement." *Oberstein*, 60 F.4th at 515. "[T]hat does not mean the button must be labeled 'I accept' or 'I agree.'" *Austin*, 148 F.4th at 208.

"Instead, a 'clear and conspicuous notice that a click will be taken as assent can do the trick.'" *Id.* (ellipsis omitted). For example, in *Keebaugh*, the plaintiff assented by clicking a button labeled "Play" with language directly below it stating "By tapping 'Play' I agree to the Terms of Service." 100 F.4th at 1010, 1020-1021. Likewise, in *B.D.*, the plaintiff assented by clicking a button labeled "Continue" with language directly above it stating "By clicking 'Continue,' I acknowledge that I have read and understand the Blizzard License Agreement applicable to my country of residence." 292 Cal. Rptr. 3d at 65 (brackets omitted).[4] The same conclusion is warranted here: In creating Microsoft accounts, Mr. Hays and Ms. Dart necessarily clicked the button labeled "Next" right below the statement "By selecting Next, I agree to the Microsoft Services Agreement and Privacy Statement." Scari Decl. ¶ 4. In doing so, Mr. Hays and Ms. Dart unambiguously manifested their assent to the MSA. Moreover, Mr. Hays and Ms. Dart affirmed their assent to updated versions of the MSA (1) by continuing to use or (in Ms. Dart's case) by continuing to allow their children to use the Microsoft accounts after receiving email notices, and (2) by clicking on interrupt notices.

## II. A.D. Is Bound To Arbitrate Under The MSA

A.D. is bound to arbitrate under the MSA based on Ms. Dart's assent on her behalf, as a third-party beneficiary, and under estoppel principles.

### A. Ms. Dart's Assent Binds A.D.

Ms. Dart created an account on A.D.'s behalf. FAC ¶¶ 8, 37. In doing so, by the MSA's express terms, Ms. Dart agreed on A.D.'s behalf to arbitrate her claims. The MSA states: "If you are the parent or legal guardian of a minor, *you and the minor* accept and agree to be bound by these Terms." Ex. A § 4(a)(iii) (emphasis added). This provision is consistent with California law, under which it is well established that "[a] parent may contract on behalf of his or her children," *Hohe v. San Diego Unified Sch. Dist.*, 274 Cal. Rptr. 647, 649 (Ct. App. 1990), including by "bind[ing] a minor child" to "an arbitration agreement," *Monschke v. Timber Ridge Assisted Living,*

[4] *See also, e.g.*, *Oberstein*, 60 F.4th at 515-516 (plaintiff assented by clicking buttons labeled "Sign in" or "Place Order" with language directly above stating "By continuing past this page, you agree to the Terms of Use"); *Mahram v. Kroger Co.*, 324 Cal. Rptr. 3d 575, 577, 579 (Ct. App. 2024) (plaintiff assented by clicking "Sign up with email" button next to language stating "By signing up, you agree to [defendant's] Terms of Service and Privacy Policy").

*LLC*, 197 Cal. Rptr. 3d 921, 923-924 (Ct. App. 2016); *see also Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 447 (2006) (arbitration agreements must "be treated like all other contracts"). Ms. Dart is A.D.'s "mother and legal guardian" (FAC ¶ 8), so by virtue of Ms. Dart assenting to the MSA, both "[Ms. Dart] and [A.D.] accept[ed] and agree[d] to be bound." Ex. A § 4(a)(iii); *see S.G. v. Epic Games, Inc.*, 796 F. Supp. 3d 614, 620 (N.D. Cal. 2025) ("S.G.'s father assented to the EULA on S.G.'s behalf and for S.G.'s benefit. As a result, S.G. is bound by his father's agreement to arbitrate disputes with Epic.").

A.D.'s allegation that she "does not remember seeing or agreeing to any terms of use," FAC ¶¶ 9, 39, is irrelevant. Ms. Dart agreed to the terms on A.D.'s behalf. And regardless, "[i]f an offeree objectively manifests assent to an agreement, the offeree cannot avoid a specific provision of that agreement on the ground the offeree did not actually read it." *B.D.*, 292 Cal. Rptr. 3d at 58; *accord Chamber of Com. of the U.S. v. Bonta*, 62 F.4th 473, 488 (9th Cir. 2023) ("It has long been established that parties to a contract are generally deemed to have consented to all the terms of a contract they sign, even if they have not read it.").

**B. A.D. Is Also Bound As A Third-Party Beneficiary Of The MSA**

The MSA may independently be enforced against A.D. as a third-party beneficiary. California recognizes that "a nonsignatory may be compelled to arbitrate where the nonsignatory is a third party beneficiary of the contract." *Phila. Indem. Ins. Co. v. SMG Holdings, Inc.*, 257 Cal. Rptr. 3d 775, 781 (Ct. App. 2019). "Whether a nonsignatory is an intended third party beneficiary to the contract is determined from the parties' intent, as gleaned from the contract as a whole and the circumstances under which it arose." *Id.*

As noted, the MSA provides that if a signatory is "the parent or legal guardian of a minor, [the signatory] and the minor accept and agree to be bound by these Terms." Ex. A § 4(a)(iii). The MSA also discusses the benefits minors receive from their parents' assent to the MSA, including the ability of parents to manage their children's Microsoft account activities. *See id.* § 14(c) (discussing "Microsoft Family Features," and recognizing that "kids can use Microsoft family features … to build trust"). The benefits that A.D. received from Ms. Dart's assent to the MSA

were certain and not merely incidental. Indeed, the amended complaint makes clear that Ms. Dart created the account to enable A.D. to play Minecraft. *See* FAC ¶ 8 (Ms. Dart "creat[ed] *A.D.'s* Minecraft account" and "download[ed] Minecraft *for A.D.*" (emphases added)). Moreover, A.D. could not have played Minecraft for "personal recreational purposes" (*id.* ¶ 9) without her mother's assent. *See* Scari Decl. ¶¶ 2-4. On these facts, A.D. is a third-party beneficiary of the MSA. *See, e.g.*, *Angelilli v. Activision Blizzard, Inc.*, 2025 WL 524276, at *12 (N.D. Ill. Feb. 18, 2025) (minor bound to arbitrate as third-party beneficiary of gaming account that parent created for minor's use).

**C. Estoppel Binds A.D. To The MSA's Arbitration Agreement**

Estoppel principles are a third, independent reason that A.D.'s claims are subject to the MSA's arbitration provision. "[A] non-signatory to an arbitration agreement may be compelled to arbitrate where the nonsignatory 'knowingly exploits' the benefits of the agreement and receives benefits flowing directly from the agreement." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1179 (9th Cir. 2014); *accord Hofer v. Emley*, 2019 WL 4575389, at *6-7 (N.D. Cal. Sept. 20, 2019). Phrased differently, "'a nonsignatory is estopped from refusing to comply with an arbitration clause when it receives a direct benefit from a contract containing an arbitration clause.'" *Cure & Assocs., P.C. v. LPL Fin. LLC*, 118 F.4th 663, 670 (5th Cir. 2024) (quoting *Pillar Project AG v. Payward Ventures, Inc.*, 279 Cal. Rptr. 3d 117, 123 (Ct. App. 2021)). Courts have applied this principle to compel arbitration of claims concerning minors' use of online video games: For example, in *S.G.*, where the claims related to a son's use of Fortnite with an account created by his father, the court held it was "'equitable' to impose the duty to arbitrate upon [the son] even if he did not sign the [arbitration agreement] himself," because "otherwise, individuals could avoid contractual obligations governing the use of online accounts 'simply by having third parties create accounts and then using them as [the son] did.'" 796 F. Supp. 3d at 621; *see also Garcia v. Roblox Corp.*, 2026 WL 413636, at *6 (C.D. Cal. Feb. 11, 2026) (similar); *E.A.R.R. v. Roku, Inc.*, 2026 WL 369238, at *4 (C.D. Cal. Feb. 6, 2026) (similar).

This reasoning applies with equal force here. A.D. alleges that she used Ms. Dart's Microsoft account to play Minecraft "for fun and creativity and other personal recreational

purposes." FAC ¶ 9. In doing so, A.D. "'knowingly exploit[ed]' the benefits of the [MSA] and receive[d] benefits flowing directly from the [MSA]," as she could not have used the account or played Minecraft without Ms. Dart's assent to the MSA. *Nguyen*, 763 F.3d at 1179. Thus, A.D. should be estopped from avoiding arbitration under the agreement.

**III. The MSA's Arbitration Agreement Covers Mr. Hays's, Ms. Dart's, And A.D.'s Claims**

Because the MSA contains a valid arbitration agreement, the only remaining question is whether Mr. Hays's, Ms. Dart's, and A.D.'s claims fall within the scope of that agreement. *See Geier*, 824 F.3d at 799. They do. In answering this question, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985); *accord Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1022 (9th Cir. 2016). The presumption in favor of arbitrability is "particularly applicable" where an arbitration clause is "broad." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986); *accord Charles v. Portfolio Recovery Assocs., LLC*, 2024 WL 1672350, at *2 (9th Cir. Apr. 18, 2024).

The MSA's arbitration agreement is unmistakably broad. It encompasses any "dispute," which is defined to be "as broad as it can be" and "includes any claim or controversy between you and us concerning the Services, the software related to the Services, … your Microsoft account, marketing, communications, … or these Terms, under any legal theory including contract, warranty, tort, statute, or regulation," with the sole exception of IP disputes. Ex. A § 15(a). "Services," as used in the MSA, is defined to include "Minecraft games." *Id.* at 30. "Concerning," for its part, "means 'relating to,'" *Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709, 717 (2018), and signals the wide breadth of the arbitration clause, *see, e.g.*, *Coast Plaza Drs. Hosp. v. Blue Cross of Cal.*, 99 Cal. Rptr. 2d 809, 812 n.2, 816 (Ct. App. 2000) (provision encompassing "[a]ny problem or dispute arising under this [a]greement and/or concerning the terms of this [a]greement" was "a broadly worded arbitration clause" (emphasis omitted)); *see also ACE Cap. Re Overseas Ltd. v. Cent. United Life Ins. Co.*, 307 F.3d 24, 32 (2d Cir. 2002) (Sotomayor, J.) (as used in an arbitration clause, "relating to" is "an expansive phrase").

All of Mr. Hays's, Ms. Dart's, and A.D.'s claims in the amended complaint comfortably fall within the scope of the MSA's broad arbitration agreement. Mr. Hays bases his claims on allegations that certain information is tracked when he "us[es] Minecraft for personal, recreational purposes, including to play with friends and play the game." FAC ¶¶ 7, 35-36. Ms. Dart bases her claims on allegations that certain information was tracked when she "downloaded Minecraft for A.D., and paid for the game or associated access." *Id.* ¶¶ 8, 37-38. A.D. bases her claims on allegations that certain information is tracked when she "use[s] Minecraft for personal recreational purposes, including fun and creativity" and "to play." *Id.* ¶¶ 9, 39-40. Thus, each of Mr. Hays's, Ms. Dart's, and A.D.'s causes of action—indeed, this entire lawsuit—"concern[s]" Minecraft games and "the software related to" Minecraft games. Ex. A § 15(a). Accordingly, all of Mr. Hays's, Ms. Dart's, and A.D.'s claims are arbitrable under the MSA.

## IV. The MSA's Arbitration Agreement Is Not Unconscionable

Mr. Hays, Ms. Dart, and A.D. may argue in opposition that the MSA's arbitration agreement is unconscionable; this argument should be rejected. "Under both the FAA and California law, the arbitration clause in [the MSA] is presumed to be enforceable unless shown otherwise," *Lag Shot LLC v. Facebook, Inc.*, 545 F. Supp. 3d 770, 779 (N.D. Cal. 2021), and "[t]he party asserting that a contractual provision is unconscionable bears the burden of proof," *Tompkins*, 840 F.3d at 1023. For a court to refuse to enforce a provision due to unconscionability, "[b]oth procedural and substantive unconscionability must be present." *Id.*; *accord Keebaugh*, 100 F.4th at 1022. Mr. Hays, Ms. Dart, and A.D. cannot meet their burden to establish that the arbitration agreement in the MSA is procedurally *or* substantively unconscionable, let alone both.

First, the arbitration agreement in the MSA is not procedurally unconscionable. "Procedural unconscionability exists where there is 'oppression or surprise due to unequal bargaining power.'" *Peloquin*, 2026 WL 497169, at *3. The lack of opportunity to negotiate contractual terms is "not dispositive" absent "other indication of oppression or surprise." *Serpa v. Cal. Sur. Investigations, Inc.*, 155 Cal. Rptr. 3d 506, 512 (Ct. App. 2013). Here, the arbitration agreement in the MSA is not procedurally unconscionable because Microsoft presented the MSA

conspicuously with a single-click, blue hyperlink in the Microsoft account-creation process, and announced and directly linked the arbitration agreement in bold capital letters directly below the MSA's title. *See supra* Background § A.1; *Maher*, 2018 WL 1535043, at *5 (because Microsoft gave plaintiff sufficient notice of MSA's terms, it was "clear that the click transactions in which [plaintiff] assented to the MSA [we]re not procedurally unconscionable").

Second, the arbitration agreement in the MSA is not substantively unconscionable. For a contract term to be substantively unconscionable, the term must be "so 'overly harsh' or 'one-sided' as to 'shock the conscience.'" *Alkutkar v. Bumble Inc.*, 2022 WL 4112360, at *10 (N.D. Cal. Sept. 8, 2022), *aff'd*, 2025 WL 2925296 (9th Cir. Oct. 15, 2025); *accord Rosales v. Vitas Healthcare Corp. of Cal.*, 2025 WL 2954975, at *5 (N.D. Cal. Sept. 16, 2025). The arbitration agreement in the MSA is not substantively unconscionable because (among other reasons) it is mutually binding and includes consumer-friendly terms, including that Microsoft pays fees under certain circumstances. Ex. A § 15(e). Altogether, the MSA contains precisely the sort of arbitration procedures that courts routinely find to not be substantively unconscionable. *See, e.g.*, *Tompkins*, 840 F.3d at 1024-1033; *Campos v. JPMorgan Chase Bank, N.A.*, 2019 WL 827634, at *9-12 (N.D. Cal. Feb. 21, 2019).

**V. The Court Should Stay The Entire Case Pending Arbitration**

While Mr. Hays's, Ms. Dart's, and A.D.'s claims are being arbitrated, the Court should stay the entire action, including R.G.'s claims and any other claims that the Court determines to be non-arbitrable. When a dispute is subject to arbitration, and a party has requested a stay pending arbitration (as Microsoft and Mojang do here), "the FAA compels the court to stay the proceedings." *Smith*, 601 U.S. at 478. Thus, if the Court finds any of Mr. Hays's, Ms. Dart's, and A.D.'s claims to be arbitrable, it is obliged to stay those claims. *See id.*

Given the substantial factual and legal overlap, the Court should also stay R.G.'s claims, as the Supreme Court has approved and as courts in this District routinely do to promote judicial economy and avoid inconsistent results and confusion in parallel proceedings. *See Moses H. Cone*, 460 U.S. at 20 n.23 ("In some cases, of course, it may be advisable to stay litigation among the

non-arbitrating parties pending the outcome of the arbitration. That decision is one left to the district court … as a matter of its discretion to control its docket."); *see, e.g.*, *Rubio-Leon v. Fresh Harvest, Inc.*, 812 F. Supp. 3d 944, 955-957 (N.D. Cal. 2025) (staying non-arbitrable claims); *Connell*, 2025 WL 1828472, at *28 (same); *Luong v. Super Micro Comput., Inc.*, 2024 WL 4681605, at *6 (N.D. Cal. Nov. 4, 2024) (same); *SolarPark Korea Co. v. Solaria Corp.*, 2023 WL 4983159, at *15-17 (N.D. Cal. Aug. 2, 2023) (same). R.G. asserts the same causes of action as the other plaintiffs, premised on virtually the same factual allegations regarding the alleged use of tracking technologies, *see* FAC ¶¶ 97-211, with the only difference being that R.G.'s alleged use of Minecraft was limited to "school-provided … access," *id.* ¶ 10. R.G. also seeks to represent a putative "Education Subclass," which is alleged to be a subset of the broader putative "California Class" represented by the other named plaintiffs whose claims are arbitrable. *See id.* ¶¶ 72, 74, 85. In addition, R.G. alleges that she "was under the age of eighteen, and at times under the age of thirteen" for "significant portions of the Class Period," *id.* ¶ 10, so she is potentially also a member of the putative "Minor Subclass," which A.D. purports to represent, *id.* ¶ 84; *see id.* ¶ 73 ("Minor Subclass: All members of the California Class who were under eighteen (18) years of age at the time they accessed or used one or more Minecraft Properties during the Class Period." (emphases omitted)).

Given the considerable "overlap" between the legal and factual issues for R.G.'s claims and her co-plaintiffs' claims, parallel proceedings would "needlessly complicate the issues and questions of law in this case" and "would also needlessly risk inconsistent decisions." *Ambercroft Trading Ltd. v. Biddy*, 2020 WL 1820599, at *7 (N.D. Cal. Apr. 10, 2020); *see Connell*, 2025 WL 1828472, at *28 ("the interests of efficiency and judicial economy merit[ed] staying the entire case," including for plaintiff with no arbitrable claims, where all plaintiffs brought "the same claim"); *Forsyth v. HP Inc.*, 2018 WL 732722, at *7-8 (N.D. Cal. Feb. 6, 2018) (similar). A stay would also "protect [Microsoft and Mojang] from the hardship and inequity of being required to proceed with litigation and arbitration on substantially the same issues in two forums, which would be inconsistent with the purposes of the FAA." *Rubio-Leon*, 812 F. Supp. 3d at 956. Nor would a

stay “unfairly prejudic[e]” R.G. or cause her “any hardship or damage,” *Connell*, 2025 WL 1828472, at *28, given that she made the strategic choice to bring her claims as a co-plaintiff alongside Mr. Hays, Ms. Dart, and A.D. and to seek to represent an intertwined “subclass.” The Court should therefore stay the whole action pending the outcome of arbitration.

**CONCLUSION**

For the foregoing reasons, Microsoft and Mojang respectfully request that the Court grant their motion to compel arbitration and stay this action in its entirety pending the completion of arbitration of Mr. Hays, Ms. Dart, and A.D.’s claims.

DATED: April 17, 2026

Respectfully submitted,

*<u>/s/ Joshua H. Lerner</u>*
Joshua H. Lerner (SBN 220755)
WILMER CUTLER PICKERING
HALE AND DORR LLP
50 California Street, Suite 3600
San Francisco, CA 94111
Telephone: (628) 235-1000
Facsimile: (628) 235-1001
joshua.lerner@wilmerhale.com

Siddharth Velamoor (*pro hac vice*)
WILMER CUTLER PICKERING
HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
Telephone: (202) 663-6000
Facsimile: (202) 663-6363
siddharth.velamoor@wilmerhale.com

Emily Barnet (*pro hac vice*)
WILMER CUTLER PICKERING
HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Telephone: (212) 230-8800
Facsimile: (212) 230-8888
emily.barnet@wilmerhale.com

*Attorneys for Defendants Microsoft Corporation and Mojang AB*