Morgan D. Ross, Esq. (SBN 270650)
Robert B. Salgado, Esq. (SBN 297391)
**COUNTERPOINT LEGAL**
600 B Street, Ste 1550
San Diego, CA 92101
Tel: (619) 780-3303
Fax: (619) 344-0332
morgan@counterpointfirm.com
rsalgado@counterpointfirm.com

*Attorneys for Plaintiffs and Putative Class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| GAVIN HAYS; ALYCE ITSUYE DART, individually and as parent and guardian of A.D., a minor; A.D., a minor by and through her guardian Alyce Itsuye Dart; and R.G., a minor by and through her guardians Michael Garcia and Salena Garcia, on behalf of themselves and all others similarly situated,<br>Plaintiffs,<br><br>vs.<br><br>MICROSOFT CORPORATION and MOJANG AB, and DOES 1-10,<br>Defendants | Case No.: 3:25-cv-11078-JSC<br><br>**PLAINTIFFS' OPPOSITION TO MICROSOFT CORPORATION AND MOJANG AB'S MOTION TO COMPEL ARBITRATION AND STAY LITIGATION**<br><br>Date: June 17, 2026<br>Time: 10:00 a.m.<br>Judge: Jacqueline Scott Corley<br>Action Filed: January 2, 2026 |

///

///

///

///

///

///

///

## TABLE OF CONTENTS

I. INTRODUCTION ..... 1

II. FACTUAL AND PROCEDURAL BACKGROUND ..... 2

III. LEGAL STANDARD ..... 3

IV. ARGUMENT ..... 4

A. Defendants Must Prove a Valid Agreement to Arbitrate as to Each Plaintiff They Seek to Compel ..... 4

B. Defendants Have Not Carried Their Burden as to Mr. Hays, or at Minimum the Record Requires Targeted Arbitrability Discovery or a Section 4 Trial ..... 4

C. Defendants Have Not Carried Their Burden as to Ms. Dart's Individual Claims ..... 6

D. A.D. Disaffirmed Any Alleged Agreement, Including Any Arbitration Agreement And Delegation Clause ..... 7

1. Family Code section 6710 allows a minor to disaffirm contracts before majority or within a reasonable time thereafter ..... 7

2. The State has a Compelling Interest in Protecting the Safety and Rights of Minors ..... **Error! Bookmark not defined.**

3. J.R. v. Electronic Arts Controls Because A.D.'s Disaffirmance Reaches the Delegation Clause 9

4. The FAA does not preempt section 6710. ..... 10

E. Defendants' Parent-Assent, Third-Party-Beneficiary, And Estoppel Theories Do Not Defeat A.D.'S Disaffirmance ..... 11

F. The MSA's Public-Injunction Waiver Is Unenforceable Under McGill ..... 13

G. R.G.'S Claims Should Not Be Stayed ..... 14

V. CONCLUSION ..... 15

**Cases**


Berg v. Traylor, 148 Cal.App.4th 809, (2007)........ 7

Berg, 148 Cal.App.4th at 817-820........ 10

Berg, 148 Cal.App.4th at 818........ 9

Berman v. Freedom Financial Network, LLC, 30 F.4th 849, (9th Cir. 2022)........ 4

Blair v. Rent-A-Center, Inc., 928 F.3d 819, (9th Cir. 2019)........ 14

Britton v. Co-op Banking Group, 916 F.2d 1405, (9th Cir. 1990)........ 16

Celli v. Sports Car Club of America, Inc., 29 Cal.App.3d 511, (1972)........ 8

Chiron Corp. v. Ortho Diagnostic Systems, Inc., 207 F.3d 1126, (9th Cir. 2000)........ 3

Coughenour v. Del Taco, LLC, 57 Cal.App.5th 740, (2020)........ 7

Coughenour, 57 Cal.App.5th at 746-747........ 9

Coughenour, 57 Cal.App.5th at 748-750........ 7

First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938 (1995)........ 3

J.R. v. Electronic Arts Inc., 98 Cal.App.5th 1107 (2024)........ 1, 10

McGill v. Citibank, N.A., 2 Cal.5th 945 (2017)........ 14

Michael Garcia et al. v. Roblox Corporation, Case no. 25STCV11498, Los Angeles Superior Court (May 1, 2026)........ 13

Michael Garcia et al. v. Roblox Corporation, Document 50, US Dist. Ct. Central Dist., Case No. 2:25-cv-03476-WLH-AJR........ 13

Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 20, (1983)........ 16

Nguyen v. Barnes & Noble Inc., 763 F.3d 1171, (9th Cir. 2014)........ 4

Reichert v. Rapid Investments, Inc., 56 F.4th 1220, (9th Cir. 2022)........ 3

Smith v. Spizzirri, 601 U.S. 472 (2024)........ 15

Three Valleys Municipal Water District v. E.F. Hutton & Co., 925 F.2d 1136, 1140-1141 (9th Cir. 1991)........ 3


**Statutes**


9 U.S.C. § 3........ 15

9 U.S.C. § 4........ 3, 7, 17

California Age-Appropriate Design Code Act ........ 9
California Consumer Privacy Act, Civil Code § 1798.100 ........ 9, 10
California Family Code section 6710 ........ passim
Civ. Code, § 1798.99.35(d) ........ 10

## I. INTRODUCTION

Defendants' motion should be denied. Defendants have not carried their burden to prove a valid, enforceable arbitration agreement as to each Plaintiff they seek to compel. At minimum, the motion should be denied as to A.D. because she has disaffirmed any alleged agreement, including any arbitration agreement and delegation clause, and denied insofar as Defendants seek to stay the claims of R.G., a minor whom Defendants admittedly do not seek to compel to arbitration.

Defendants' motion turns on an overbroad premise: that a parent's alleged click-through assent to the Microsoft Services Agreement ("MSA") can eliminate a minor's statutory right under California Family Code section 6710 to disaffirm any alleged contract, including any arbitration agreement and delegation clause. California law does not permit that result.

The California Court of Appeal's published decision in J.R. v. Electronic Arts Inc., 98 Cal.App.5th 1107 (2024), is directly on point. There, the minor disaffirmed "any" user agreement, contract, or agreement accepted through his video-game account. The Court of Appeal held that the disaffirmance reached the user agreement, the arbitration agreement, and the delegation provision, even though those agreements were severable under federal arbitration law. Because the minor disaffirmed all three, there was "no arbitration agreement to enforce." That is this case.

A.D., a minor acting through her parent and guardian Alyce Itsuye Dart, has disaffirmed any and all Microsoft, Mojang, Minecraft, Xbox, MSA, arbitration, class-waiver, representative-waiver, public-injunction-waiver, delegation, update, modification, and related terms that Defendants contend apply to her. Defendants cannot avoid section 6710 by labeling A.D. a third-party beneficiary, invoking equitable estoppel, or relying on MSA drafting language that purports to bind a parent and child together. A.D.'s claims are not contract claims seeking to enforce the MSA. They are statutory privacy claims based on alleged interception, recording, tracking, and transmission of children's and consumers' communications and data.

The motion also exposes a separate enforceability defect. The MSA provisions Defendants seek to enforce do not merely require individual arbitration; they expressly forbid class actions, class-wide arbitration, private attorney-general actions, requests for public injunctions, representative relief, and combining individual proceedings without consent. That language directly conflicts with California's

McGill rule because Plaintiffs seek forward-looking public injunctive relief to stop alleged privacy practices affecting the public, including children.

Finally, Defendants do not move to compel R.G. to arbitration. R.G.'s claims arise from school-based Minecraft Education use through school-provided credentials and a school-associated account. Defendants ask the Court to freeze those claims anyway. The FAA does not require that result. At most, a stay of non-arbitrating parties' claims is discretionary, and the Court should deny a stay that would prejudice a minor's education-privacy claims while private arbitrations proceed elsewhere.

For these reasons, the motion should be denied. Alternatively, if the Court compels any claims, it should compel only the claims of any Plaintiff as to whom the Court finds a valid and enforceable arbitration agreement, preserve Plaintiffs' public-injunctive claims in court, and allow R.G.'s non-arbitrable claims to proceed.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Defendants Microsoft Corporation and Mojang AB move to compel arbitration only as to Plaintiffs Gavin Hays, Alyce Itsuye Dart, and A.D. They do not presently move to compel R.G. to arbitrate her claims. Mot. at 2. Instead, Defendants ask the Court to stay R.G.'s claims, which arise from her alleged use of Minecraft Education and school-provided Minecraft access through school-provided credentials and a school-associated account while attending Bostonia Global Elementary School. FAC ¶¶ 10, 41-43. Defendants seek that stay as a matter of "judicial economy." Mot. at 2.

Defendants' arbitration theory rests on the Microsoft Services Agreement ("MSA"). Defendants contend that Mr. Hays and Ms. Dart accepted the MSA through Microsoft account creation, update notices, continued account use, and alleged "interrupt" notices. Mot. at 5-7; Scari Decl. ¶¶ 3-10. Defendants further contend that Ms. Dart's alleged acceptance binds A.D. because Ms. Dart is A.D.'s parent, because A.D. allegedly benefited from the MSA, and because A.D. is allegedly equitably estopped from avoiding arbitration. Mot. at 11-14.

Plaintiffs oppose the motion. Mr. Hays used Minecraft for personal, recreational purposes, and his claims arise from alleged interception, recording, tracking, and transmission of his communications, browsing activity, device-related information, and persistent identifiers. FAC ¶¶ 7, 35-36; Hays Decl. ¶¶ 4-10, 17-19. Ms. Dart's individual claims arise from her own direct interactions with Minecraft-related

account, purchase, setup, and related flows, through which her own communications, account-related information, payment-related information, device data, and persistent identifiers were allegedly intercepted, recorded, transmitted, and exploited. FAC ¶¶ 8, 37-38; Dart Decl. ¶¶ 5, 10-19, 27. A.D., through her parent and guardian Ms. Dart, disaffirms any and all alleged Microsoft, Mojang, Minecraft, Xbox, MSA, arbitration, class-waiver, representative-waiver, public-injunction-waiver, delegation, update, modification, or related terms Defendants contend apply to her. Dart Decl. ¶¶ 29-32. R.G. is not subject to any motion to compel arbitration at all, and her school-based education claims should proceed in court. FAC ¶¶ 10, 41-43, 53, 74, 85.

## III. LEGAL STANDARD

The FAA does not permit arbitration unless the Court is satisfied that an agreement to arbitrate was made. 9 U.S.C. § 4. The party seeking to compel arbitration bears the burden to prove by a preponderance of the evidence that a valid arbitration agreement exists and that the agreement covers the dispute. Reichert v. Rapid Investments, Inc., 56 F.4th 1220, 1227 (9th Cir. 2022); Chiron Corp. v. Ortho Diagnostic Systems, Inc., 207 F.3d 1126, 1130 (9th Cir. 2000).

The federal policy favoring arbitration does not arise until a valid agreement to arbitrate has been established. Courts apply ordinary state-law contract principles to decide whether the parties formed an agreement. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995). Where the making of the arbitration agreement is genuinely in issue, the Court must resolve that threshold issue before compelling arbitration. 9 U.S.C. § 4; Three Valleys Municipal Water District v. E.F. Hutton & Co., 925 F.2d 1136, 1140-1141 (9th Cir. 1991).

Online assent is not automatic. Defendants must show reasonably conspicuous notice and unambiguous manifestation of assent as to each Plaintiff they seek to compel. Berman v. Freedom Financial Network, LLC, 30 F.4th 849, 856-857 (9th Cir. 2022); Nguyen v. Barnes & Noble Inc., 763 F.3d 1171, 1175-1179 (9th Cir. 2014). The Court should therefore analyze each Plaintiff separately.

The MSA provisions Defendants invoke confirm that these threshold issues are for the Court. The MSA provides that "a court has exclusive authority" to decide arbitrability, formation, existence, scope, validity, and enforceability of the arbitration agreement, and to enforce the prohibition on class, representative, private attorney-general, combined actions, or public injunctive relief. Scari Decl., Ex. A

§ 15(d). Thus, the Court—not an arbitrator—should decide Plaintiffs' formation, disaffirmance, and McGill challenges.

## IV. ARGUMENT

### A. Defendants Must Prove a Valid Agreement to Arbitrate as to Each Plaintiff They Seek to Compel

Arbitration is a matter of contract. Defendants therefore bear the burden to prove by a preponderance of the evidence that each Plaintiff they seek to compel agreed to arbitrate the claims at issue. The federal policy favoring arbitration does not apply until a valid arbitration agreement has been established. Nor may the Court presume assent merely because Defendants use online terms or a broadly worded services agreement.

This matters because Defendants do not move against all Plaintiffs. They seek to compel only Gavin Hays, Alyce Dart, and A.D. They expressly do not seek to compel R.G., whose claims arise from Minecraft Education use through school-provided credentials and a school-associated account. FAC ¶ 10. The Court should therefore analyze each Plaintiff separately.

### B. Defendants Have Not Carried Their Burden as to Mr. Hays, or at Minimum the Record Requires Targeted Arbitrability Discovery or a Section 4 Trial

Defendants' showing as to Mr. Hays is not as straightforward as Defendants suggest. Scari's declaration attaches only an example account-creation screen, not a screenshot or record of the actual screen displayed to this Plaintiff at the time of the alleged assent. Scari Decl. ¶¶ 3-5. Defendants rely on business records stating that a Microsoft account associated with Mr. Hays was created on March 26, 2019, that update emails were sent in 2024 and 2025, and that a user allegedly clicked an "interrupt" notice on October 16, 2023. But Defendants do not submit Plaintiff-specific evidence showing what Mr. Hays actually saw, whether the relevant interface was displayed on his device in the same manner as Defendants' example screenshots, whether he opened or read the update emails, or whether any interrupt notice clearly advised him that clicking through would waive the right to proceed in court, proceed by class action, or seek public injunctive relief.

That matters because Defendants' evidence proves, at most, that Microsoft located a Microsoft account associated with Mr. Hays and certain later system events. It does not prove the screen or terms

Mr. Hays saw when he first created a Minecraft-related account around 2010, nor does it prove that any later update email or interrupt notice gave reasonably conspicuous notice that continued gameplay, continued account access, or clicking "Next" would bind him to arbitrate statutory privacy claims against Microsoft and Mojang. Hays Decl. ¶ 4.

Mr. Hays does not recall being shown any arbitration agreement when creating or using any Minecraft-related account. He does not recall being told that he was giving up his right to proceed in court, his right to a jury trial, his right to participate in a class action, or his right to seek public injunctive relief. He does not recall seeing any notice during account creation or later use clearly stating that privacy claims involving Minecraft would have to be brought in individual arbitration rather than in court. He does not recall reading or agreeing to any provision titled "Binding Arbitration and Class Action Waiver." Hays Decl. ¶¶ 5-8.

Nor does Mr. Hays recall receiving, opening, reviewing, or understanding any Microsoft email stating that continued use of Minecraft or a Microsoft account would cause him to agree to an arbitration clause, class-action waiver, jury-trial waiver, or public-injunction waiver. He also does not recall seeing, reading, or understanding any "interrupt notice" or pop-up stating that he was agreeing to arbitrate privacy claims against Microsoft or Mojang or giving up the right to proceed in court. Hays Decl. ¶¶ 9-10.

Mr. Hays did not intend to agree to individual arbitration or to waive his right to proceed in court, participate in a class action, or seek public injunctive relief. Hays Decl. ¶¶ 11-14. His claims are based on Defendants' alleged privacy practices, including alleged interception, recording, tracking, and transmission of user communications, browsing activity, device-related information, and persistent identifiers; he is not suing to enforce any promise, benefit, or right under the MSA. FAC ¶¶ 7, 35-36, 50; Hays Decl. ¶ 17. Mr. Hays does not agree that he knowingly consented to arbitrate the privacy claims asserted in this lawsuit, and he wants his claims to proceed in court. Hays Decl. ¶¶ 18-19.

At minimum, the record places the making of the alleged arbitration agreement in issue. If the Court is inclined to credit Defendants' business records notwithstanding Mr. Hays's declaration, Plaintiffs request targeted arbitrability discovery and, if necessary, a summary trial under 9 U.S.C. § 4 before any order compelling Mr. Hays to arbitrate.

**C. Defendants Have Not Carried Their Burden as to Ms. Dart's Individual Claims**

Defendants also seek to compel Ms. Dart's individual claims, but they again rely on generalized account-creation and update-notice evidence rather than Plaintiff-specific proof that Ms. Dart knowingly agreed to arbitrate the statutory privacy claims asserted here. Scari's declaration attaches only an example account-creation screen, not a screenshot or record of the actual screen displayed to Ms. Dart at the time of the alleged assent. Scari Decl. ¶¶ 3-5. Ms. Dart used her personal email address in connection with a Microsoft or Minecraft-related account, and understands that Microsoft contends this account was created in September 2018. Because that date was many years ago, she does not remember the exact screen, words, buttons, hyperlinks, or process presented during that account creation. Dart Decl. ¶ 5.

Ms. Dart does not recall being shown any arbitration agreement when she created or used any Microsoft or Minecraft-related account. She does not recall being told that by creating, using, purchasing, downloading, or allowing Minecraft for A.D., either she or A.D. would give up the right to proceed in court, the right to a jury trial, the right to participate in a class action, or the right to seek public injunctive relief. Dart Decl. ¶¶ 10-11.

Ms. Dart also does not recall seeing any notice during account creation, purchase, download, setup, or use that clearly stated that any privacy claims involving Minecraft would have to be brought in individual arbitration rather than in court. She does not recall reading or agreeing to any provision titled "Binding Arbitration and Class Action Waiver." Dart Decl. ¶¶ 12-13.

Nor does Ms. Dart recall receiving, opening, reviewing, or understanding any email from Microsoft stating that continued use of Minecraft or a Microsoft account would cause her or A.D. to agree to an arbitration clause, class-action waiver, jury-trial waiver, or public-injunction waiver. She also does not recall seeing, reading, or understanding any "interrupt notice" or pop-up stating that she was agreeing for herself or for A.D. to arbitrate privacy claims against Microsoft or Mojang, or that she or A.D. would be giving up the right to proceed in court. Dart Decl. ¶¶ 14-15.

Ms. Dart did not intend to agree to individual arbitration of her claims or waive her right to proceed in court, participate in a class action, or seek public injunctive relief. Dart Decl. ¶¶ 16-19. Her individual claims are not claims for breach of the MSA or for enforcement of any contractual benefit.

They arise from her own direct interactions with Minecraft-related account, purchase, setup, and related flows, and from Defendants' alleged interception, recording, transmission, and exploitation of her own communications, account-related information, personal information, payment-related information, device data, and persistent identifiers. FAC ¶¶ 8, 37-38, 51; Dart Decl. ¶ 27.

At minimum, if the Court is inclined to credit Defendants' business records notwithstanding Ms. Dart's declaration, Plaintiffs request targeted arbitrability discovery and, if necessary, a summary trial under 9 U.S.C. § 4 before any order compelling Ms. Dart to arbitrate.

### D. A.D. Disaffirmed Any Alleged Agreement, Including Any Arbitration Agreement And Delegation Clause

1. <u>Family Code section 6710 allows a minor to disaffirm contracts before majority or within a reasonable time thereafter</u>

California Family Code section 6710 provides that, except as otherwise provided by statute, "a contract of a minor may be disaffirmed by the minor before majority or within a reasonable time afterwards." No special form, filing, or wording is required. "No specific language is required to communicate an intent to disaffirm." Coughenour v. Del Taco, LLC, 57 Cal.App.5th 740, 748 (2020) (quoting Berg v. Traylor, 148 Cal.App.4th 809, 820 (2007)). Rather, "[a] contract (or conveyance) of a minor may be avoided by any act or declaration disclosing an unequivocal intent to repudiate its binding force and effect." Id. And where a party seeks to force claims into arbitration based on an agreement entered into during minority, the filing of a lawsuit may itself constitute disaffirmance. Id. at 748-750; Celli v. Sports Car Club of America, Inc., 29 Cal.App.3d 511, 517 (1972).

A.D. has done exactly that through her mother and guardian, Alyce Itsuye Dart. Ms. Dart disaffirms, on behalf of A.D., any and all Microsoft Services Agreements, Minecraft terms, Microsoft account terms, Mojang terms, Xbox terms, arbitration agreements, class-action waivers, representative-action waivers, jury-trial waivers, public-injunction waivers, delegation clauses, update provisions, modification provisions, and any other alleged contracts, terms, or agreements allegedly accepted through or in connection with any Microsoft, Mojang, Minecraft, Xbox, or Minecraft-related account used by or for A.D. Dart Decl. ¶ 29. That disaffirmance includes any terms allegedly accepted by Ms. Dart, by A.D., or by any other person using an account associated with A.D.'s Minecraft use; it

expressly includes any arbitration agreement and delegation clause; and it is intended to be complete. Dart Decl. ¶¶ 30-32.

The disaffirmance is not dependent on talismanic wording or a separate declaration personally signed by A.D. This lawsuit seeks to proceed in court rather than arbitration, and Ms. Dart, acting for A.D. in this litigation, has now expressly disaffirmed any alleged Microsoft, Mojang, Minecraft, Xbox, MSA, arbitration, class-waiver, representative-waiver, public-injunction-waiver, delegation, update, modification, or related terms Defendants contend apply to A.D. Dart Decl. ¶¶ 29-32. That is more than enough to communicate an unequivocal intent to repudiate the binding force of the alleged agreements.

Nor can Defendants avoid disaffirmance by pointing to alleged use before the formal disaffirmance. The FAC alleges that A.D. last logged in to play in approximately February 2026. FAC ¶¶ 9, 39. Ms. Dart's later declaration states, to the best of her recollection and knowledge, that A.D. last logged in around April 2026 and has not used the Minecraft account at issue since approximately April 2026. Dart Decl. ¶¶ 9, 36. Either way, the record does not show any use after Ms. Dart's May 11, 2026 disaffirmance on behalf of A.D. Dart Decl. ¶¶ 29-32. Thus, unlike cases involving continued platform use after a clear disaffirmance, the record does not show that A.D. continued using Minecraft after the disaffirmance now before the Court.

2. <u>California's Public Policy Strongly Protects Minors in Online Privacy Contexts.</u>

The policy behind section 6710 is especially important here. Section 6710 was not enacted as a narrow procedural technicality; it preserves California's longstanding judgment that minors require a substantive right to escape contracts that adults and corporations seek to impose on them. The rule exists because "[t]he law shields minors from their lack of judgment and experience" and gives them the right to disaffirm contracts "for [their] protection against [their] own improvidence and the designs of others." Coughenour, 57 Cal.App.5th at 746-747; Berg, 148 Cal.App.4th at 818. That policy would be substantially weakened if corporations could avoid section 6710 simply by drafting online terms to say that a parent and child are both bound, then recasting the child as a third-party beneficiary or invoking equitable estoppel because the child used the service. In the digital-privacy context, the problem is acute. A child cannot reasonably understand, discover, or value the collection of persistent identifiers, behavioral signals, session-replay data, telemetry, communications, or other account-linked information,

and parents typically cannot know without litigation what data was collected, retained, combined, disclosed, or exploited. Allowing the same undisclosed data-collection relationship to supply the "benefit" that defeats disaffirmance would invert section 6710: the more successfully a platform induces a minor to use its service, the easier it becomes to strip away the statutory protection California preserved for that minor. The Court should not allow private adhesion terms or equitable doctrines to do what California law does not permit directly—erase a minor's statutory power to disaffirm.

California's more recent privacy legislation confirms the same public policy, even though Plaintiffs do not assert claims under those statutes here. In enacting the California Age-Appropriate Design Code Act, the Legislature found that children should receive protections not only on online services directed to them, but also on online services they are likely to access; that such services should provide strong privacy protections by design and default; and that robust privacy protections for children are consistent with the CCPA and CPRA, which recognize that children are particularly vulnerable from a negotiating perspective with respect to their privacy rights. Civ. Code, §§ 1798.99.29, 1798.99.31. Those statutes do not create the claims asserted here, and the Age-Appropriate Design Code Act contains no private right of action. Civ. Code, § 1798.99.35(d). But they reinforce the point that California's privacy policy runs in the same direction as Family Code section 6710 and CIPA: courts should not construe private adhesion terms or equitable doctrines to strip minors of statutory protections in hidden, technical, online data-collection settings.

3. <u>J.R. v. Electronic Arts Controls Because A.D.'s Disaffirmance Reaches the Delegation Clause</u>

J.R. v. Electronic Arts Inc., 98 Cal.App.5th 1107 (2024), is directly on point. There, EA argued that even if the minor disaffirmed the user agreement, an arbitrator had to decide disaffirmance because the agreement contained a delegation clause. The Court of Appeal rejected that argument and affirmed denial of EA's motion to compel arbitration.

The critical point in J.R. was that the minor did not merely attack the user agreement in general. He disaffirmed "any" user agreement, contract, or agreement accepted through his EA account. The Court of Appeal held that this disaffirmance reached the user agreement, the arbitration agreement, and the delegation provision because all three were accepted through the same account. The result was that

"there is no arbitration agreement to enforce."

Berg confirms the same principle. There, the Court of Appeal held that a minor could disaffirm both the underlying contract and the resulting arbitration award, even though his mother remained bound by her separate obligations. Berg, 148 Cal.App.4th at 817-820. That distinction matters here: even if Defendants could establish some separate obligation by Ms. Dart, that would not eliminate A.D.'s independent statutory right to disaffirm any alleged agreement Defendants seek to enforce against A.D.

The same is true here. A.D., through her mother and guardian, disaffirms any and all Microsoft Services Agreements, Minecraft terms, Microsoft account terms, Mojang terms, Xbox terms, arbitration agreements, class-action waivers, representative-action waivers, public-injunction waivers, delegation clauses, update provisions, modification provisions, and any other alleged agreements or terms Defendants contend apply to her. Dart Decl. ¶¶ 29-32. That disaffirmance goes to the validity of every agreement Defendants seek to enforce against A.D., including the delegation clause.

Defendants cannot avoid J.R. by arguing that A.D. failed to use the precise words "delegation clause" or by invoking FAA severability. J.R. rejected that exact form-over-substance argument. No magic words are required. If the minor's disaffirmance substantively reaches the delegation clause, the court may decide disaffirmance and deny arbitration.

J.R. is a published California Court of Appeal decision interpreting California Family Code section 6710 and California contract law. In the absence of contrary California Supreme Court authority, this Court should follow J.R.'s interpretation of California law. Nothing in the FAA requires a different result because section 6710 is a generally applicable contract-capacity rule that applies to all contracts, not a rule that disfavors arbitration.

4. <u>The FAA does not preempt section 6710.</u>

Section 6710 is a generally applicable California contract-capacity rule. It does not single out arbitration. It applies equally to arbitration clauses and all other contractual terms. Applying section 6710 here places arbitration agreements on equal footing with other contracts; it does not disfavor arbitration.

The FAA's severability doctrine does not save Defendants. Severability means a delegation clause may survive some challenges to the container contract. It does not mean a minor's disaffirmance

of every alleged agreement somehow leaves the delegation clause untouched. J.R. squarely rejects that argument.

### E. Defendants' Parent-Assent, Third-Party-Beneficiary, And Estoppel Theories Do Not Defeat A.D.'S Disaffirmance

Defendants argue that A.D. is bound because Ms. Dart allegedly assented on her behalf, because A.D. allegedly benefited from the MSA, and because A.D. is supposedly estopped from avoiding arbitration after using Minecraft. Those theories cannot overcome section 6710 on this record.

First, the MSA's own drafting cannot eliminate a minor's statutory disaffirmance right. Microsoft's terms may purport to bind a parent and child, but contractual language cannot waive or repeal section 6710.

The evidence also does not show that Ms. Dart knowingly agreed to bind A.D. to arbitration or waive A.D.'s court, class, or public-injunction rights. Ms. Dart did not intend to waive A.D.'s right to proceed in court, participate in a class action, or seek public injunctive relief. Dart Decl. ¶¶ 20-22. She also did not understand that any account creation, purchase, download, setup, or use of Minecraft would be treated by Microsoft or Mojang as an agreement to bind A.D. to arbitration, a class-action waiver, representative-action waiver, public-injunction waiver, or delegation clause. Dart Decl. ¶¶ 23-24.

Second, A.D. is not suing to enforce the MSA. Her claims arise from independent statutory and privacy duties, including alleged interception, tracking, recording, and transmission of communications and data. She does not seek contractual benefits under the MSA.

The record confirms that point. A.D.'s claims are based on Defendants' alleged privacy practices, including alleged interception, recording, duplication, transmission, and exploitation of A.D.'s communications and interaction data, including page and content requests, clicks, scrolls, behavioral signals, device-related data, and persistent identifiers. FAC ¶¶ 9, 39-40, 52. A.D. is not bringing this lawsuit to enforce any promise, benefit, or right under the Microsoft Services Agreement. Dart Decl. ¶ 28.

The third-party-beneficiary doctrine does not change the result. Under California law, a non-signatory is not bound merely because she incidentally benefited from a contract. Defendants must show that the contract was made for A.D.'s benefit in the relevant sense and that enforcing the arbitration

provision against her is consistent with the contracting parties' objectives and reasonable expectations. The MSA is a set of adhesion terms governing Microsoft's services; it was not a contract made for the purpose of giving A.D. an enforceable benefit or requiring her to arbitrate statutory privacy claims.

Third, equitable estoppel is not a device for nullifying a minor's statutory disaffirmance. At most, Defendants' cited cases address materially different circumstances where a minor sought to retain contractual benefits while avoiding burdens, or where an adult-signed agreement created a distinct parent/child or beneficiary relationship. Here, A.D. has disaffirmed the alleged agreements in full and asserts independent statutory privacy claims.

Defendants' anticipated parent-assent and estoppel authorities do not control. Cases enforcing arbitration against minors based on parent assent or equitable estoppel generally involve materially different facts: an adult-signed contract, a shared parent-child account, a minor seeking to retain contractual benefits while avoiding only arbitration, or claims that depended on the contract containing the arbitration clause. This case is different. A.D. disaffirms the alleged agreements in full. She is not seeking damages for breach of the MSA, enforcement of any MSA promise, or any contractual benefit under Microsoft's terms. Her claims arise from independent statutory privacy duties and alleged interception, recording, tracking, and transmission of communications and data.

Nor can Microsoft contract around Family Code section 6710 by drafting the MSA to say that a parent and minor both accept the terms. If that were enough, every company could nullify section 6710 simply by inserting parent/minor binding language into online terms. California law does not permit a private adhesion contract to erase a minor's statutory power of disaffirmance.

Defendants' contrary authorities are distinguishable. In Garcia v. Roblox, the federal court relied in significant part on evidence that the minor continued using the Roblox platform after the alleged disaffirmance and on repeated parent/account-related assent events, including account creation, gift-card redemption, and purchase flows. Michael Garcia et al. v. Roblox Corporation, Document 50, US Dist. Ct. Central Dist., Case No. 2:25-cv-03476-WLH-AJR. Roblox State likewise involved a record with no plaintiff declarations opposing arbitration and facts showing parent-created accounts, parental supervision or participation, and a family-account use theory. Michael Garcia et al. v. Roblox Corporation, Case no. 25STCV11498, Los Angeles Superior Court (May 1, 2026). Those facts are not

present here. A.D., through her parent and guardian, has completely disaffirmed the alleged agreements, including any arbitration agreement and delegation clause; the record does not show post-disaffirmance use; and A.D. asserts independent statutory privacy claims rather than claims to enforce the MSA. Dart Decl. ¶¶ 28-36.

S.G. and E.A.R.R. are likewise materially different. Those cases turned on guardian-created or household accounts and equitable concerns that a minor should not knowingly use a parent-maintained account or household device to obtain platform benefits while avoiding the account's terms. Here, by contrast, A.D. disaffirms the alleged agreements in full and does not sue for breach of the MSA, enforcement of Microsoft account benefits, or any contractual right under Microsoft's terms. The statutory disaffirmance right would have little force if Microsoft could defeat it simply by pointing to the same parent/minor drafting language contained in the adhesion terms being disaffirmed.

Nor do parent-signed release or third-party-beneficiary cases control. This is not a case involving a negotiated adult contract, a school sports release, a medical-services agreement, or a parent-signed liability waiver. Microsoft's theory rests on online consumer terms drafted by Microsoft itself. Allowing Microsoft to eliminate a minor's section 6710 rights by inserting parent/minor binding language into the MSA would permit private companies to draft around the statute and would leave section 6710 with little practical force in the online-services context.

**F. The MSA's Public-Injunction Waiver Is Unenforceable Under McGill**

The MSA provisions Defendants seek to enforce contain an independent enforceability defect: they purport to waive public injunctive relief in every forum. The arbitration provision does not merely require individual arbitration. It provides that "Class action lawsuits, class-wide arbitrations, private attorney-general actions, requests for public injunctions, and any other proceeding or request for relief where someone acts in a representative capacity aren't allowed," and also bars "combining individual proceedings without the consent of all parties." Scari Decl., Ex. A § 15.

That language violates McGill v. Citibank, N.A., 2 Cal.5th 945 (2017). Under McGill, a contractual provision that waives a plaintiff's right to seek public injunctive relief in any forum is unenforceable under California law. The Ninth Circuit has held that the FAA does not preempt McGill. Blair v. Rent-A-Center, Inc., 928 F.3d 819, 830-831 (9th Cir. 2019).

Plaintiffs seek forward-looking public injunctive relief directed at Defendants' alleged privacy practices. The FAC seeks orders requiring Defendants to cease intercepting, recording, replaying, fingerprinting, transmitting, retaining, disclosing, and exploiting users' communications and detailed behavioral data through session replay, telemetry, fingerprinting, and similar tracking technologies; to cease deploying such technologies on child-directed and education-facing Minecraft Properties absent legally sufficient disclosures and parental authorization where required; to delete unlawfully collected data; to implement clear privacy notices and user controls; and to implement privacy safeguards, monitoring, and compliance measures for adult, minor, and education users. FAC ¶¶ 6, 92-94, 209-210; Prayer for Relief ¶ 3. That relief is designed to protect the public and future users, including children and students, not merely to remedy past injuries to individual Plaintiffs.

This is not a merely private injunction seeking to redress only Plaintiffs' past injuries. The FAC seeks relief directed to Defendants' future conduct on the Minecraft Properties, including child-directed and education-facing properties, and seeks disclosures, deletion, parental-consent mechanisms, privacy controls, and compliance measures that would benefit future users, parents, children, and students. FAC ¶¶ 6, 92-94, 209-210; Prayer for Relief ¶ 3. That is public-facing relief under McGill.

Because the MSA expressly bars requests for public injunctions, the arbitration provision is unenforceable to the extent it eliminates that remedy in all fora. At minimum, the Court should preserve Plaintiffs' public-injunctive claims in court and should not compel those claims to individual arbitration.

If the Court concludes that any individual damages claims must be arbitrated, the Court should still sever or refuse to enforce the unlawful waiver and retain jurisdiction over Plaintiffs' public-injunctive claims. Defendants should not be permitted to use an individual arbitration clause to eliminate a substantive California remedy designed to protect the public.

### G. R.G.'s Claims Should Not Be Stayed

Defendants do not move to compel R.G. to arbitration. That should end the matter as to R.G. The FAA requires a stay only when the Court is satisfied that the issue before it is referable to arbitration under a written arbitration agreement and a party requests a stay. 9 U.S.C. § 3; Smith v. Spizzirri, 601 U.S. 472 (2024). Smith does not require staying claims by a non-arbitrating plaintiff whom Defendants have not shown to be bound by any arbitration agreement.

Any stay of R.G.'s claims would be discretionary, not mandatory. Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 20 n.23 (1983); Britton v. Co-op Banking Group, 916 F.2d 1405, 1412 (9th Cir. 1990). The Court should decline to exercise that discretion here.

R.G.'s claims involve school-provided credentials, a school-associated Minecraft Education account, and alleged tracking of a minor in an educational setting. FAC ¶¶ 10, 41-43, 53. Those facts are distinct from Defendants' consumer-account theory against Hays, Dart, and A.D. The FAC separately defines an Education Subclass for minors who accessed or used Minecraft: Education Edition, education.minecraft.net, or other Minecraft Properties offered, provisioned, assigned, managed, promoted, or deployed for classroom, school, or curriculum-related use in California, including through school-issued or school-managed credentials or accounts. FAC ¶ 74. R.G. is alleged to be typical of that Education Subclass because she used Minecraft through school-related educational access, including Minecraft: Education Edition or related school-managed Minecraft Properties. FAC ¶ 85. A stay would delay discovery and injunctive relief concerning children's educational privacy, while private individual arbitrations proceed on a different record. It would also risk loss of evidence concerning school-based account systems, education-related access, and the tracking practices at issue.

The MSA itself reinforces that R.G.'s school-account facts are distinct. Its "Work or School Accounts" provision states that a user's use of Microsoft services through a work or school email address may be subject to agreements Microsoft has with the user or the user's organization, and that "these Terms may not apply." Scari Decl., Ex. A § 4(c). That language underscores why Defendants have not moved to compel R.G. to arbitration and why her school-based Minecraft Education claims should not be stayed based on consumer-account arbitration issues involving other Plaintiffs.

Alternatively, if the Court stays any claims, the stay should be limited to the individual claims of any Plaintiff the Court actually compels to arbitration. R.G.'s claims, preservation issues, and discovery necessary to prevent loss of evidence concerning Minecraft Education should proceed.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' Motion to Compel Arbitration and Stay Litigation.

In the alternative, if the Court concludes that any Plaintiff's claims are subject to arbitration,

Plaintiffs respectfully request that the Court: (1) compel only the individual claims of the Plaintiff as to whom Defendants have proven a valid and enforceable arbitration agreement; (2) preserve Plaintiffs' public-injunctive claims in court; (3) deny Defendants' request to stay R.G.'s non-arbitrable claims; and (4) order targeted arbitrability discovery and, if necessary, a summary trial under 9 U.S.C. § 4 before compelling any Plaintiff whose assent remains genuinely in dispute.

DATED: May 11, 2026

COUNTERPOINT LEGAL

By: ______________________

Robert B. Salgado, Esq.
Attorneys for Plaintiffs and
Putative Class