Joshua H. Lerner (SBN 220755)
WILMER CUTLER PICKERING
HALE AND DORR LLP
50 California Street, Suite 3600
San Francisco, CA 94111
Telephone: (628) 235-1000
Facsimile: (628) 235-1001
joshua.lerner@wilmerhale.com

Siddharth Velamoor (*pro hac vice*)
WILMER CUTLER PICKERING
HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
Telephone: (202) 663-6000
Facsimile: (202) 663-6363
siddharth.velamoor@wilmerhale.com

Emily Barnet (*pro hac vice*)
WILMER CUTLER PICKERING
HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Telephone: (212) 230-8800
Facsimile: (212) 230-8888
emily.barnet@wilmerhale.com

*Attorneys for Defendants Microsoft Corporation and Mojang AB*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

GAVIN HAYS, ALYCE ITSUYE DART, individually and as parent and guardian of A.D., a minor, A.D., a minor by and through her guardian Alyce Itsuye Dart, and R.G., a minor by and through her guardians Michael Garcia and Salena Garcia, on behalf of themselves and all others similarly situated,

Plaintiffs,

vs.

MICROSOFT CORPORATION, and MOJANG AB, and DOES 1-10,

Defendants.

Case No. 3:25-cv-11078-JSC

**MICROSOFT CORPORATION AND MOJANG AB'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY LITIGATION**

Date: June 18, 2026
Time: 10:00 a.m.
Judge: Jacqueline Scott Corley

Action Filed: December 30, 2025

# TABLE OF CONTENTS


Page

INTRODUCTION ........ 1

ARGUMENT ........ 2

I. Mr. Hays And Ms. Dart Agreed To Arbitrate Under The MSA And Are Bound By That Agreement Even If They Cannot Recall Or Did Not Intend To Agree ........ 2

II. A.D. Cannot Avoid Arbitration By Attempting To Disaffirm The Agreement ........ 6

A. Ms. Dart's Agreement To The MSA And Its Arbitration Provision Binds A.D. ........ 6

B. Ms. Dart's Attempt To Disaffirm On Behalf Of A.D. Fails ........ 7

C. A.D. Has Not Disaffirmed The MSA Because She Has Continued To Use The Microsoft Account ........ 10

D. Equitable Considerations Support Binding A.D. To The MSA ........ 10

III. The MSA's Arbitration Agreement Covers Mr. Hays's, Ms. Dart's, And A.D.'s Claims ........ 12

IV. The MSA's Arbitration Agreement Is Enforceable ........ 12

V. The Court Should Stay The Entire Case Pending Arbitration ........ 14

CONCLUSION ........ 15

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Alkutkar v. Bumble, Inc.*,
2025 WL 2925296 (9th Cir. Oct. 15, 2025)....................2

*American Title Insurance Company v. Lacelaw Corporation*,
861 F.2d 224 (9th Cir. 1988)....................7

*Ateeq v. Najor*,
19 Cal. Rptr. 2d 320 (Ct. App. 1993)....................11

*Babu v. Petersen*,
48 P.2d 689 (Cal. 1935)....................10

*Berg v. Traylor*,
56 Cal. Rptr. 3d 140 (Ct. App. 2007)....................9

*Beverly v. Sabo Eventing LLC*,
2026 WL 366449 (Cal. Ct. App. Feb. 10, 2026)....................8, 9

*Blair v. Rent-A-Center, Inc.*,
928 F.3d 819 (9th Cir. 2019)....................13

*BNSF Railway Company v. Magin*,
2026 WL 828795 (E.D. Mo. Mar. 26, 2026)....................8

*Bodenburg v. Apple Inc.*,
146 F.4th 761 (9th Cir. 2025)....................5

*Boisvert v. Experian Information Solutions, Inc.*,
2026 WL 1079694 (9th Cir. Apr. 21, 2026)....................4

*Brown v. Madison Reed, Inc.*,
2021 WL 3861457 (N.D. Cal. Aug. 30, 2021)....................14

*C.M.D. ex rel. De Young v. Facebook, Inc.*,
621 F. App'x 488 (9th Cir. 2015)....................10

*Casola v. Dexcom, Inc.*,
98 F.4th 947 (9th Cir. 2024)....................8

*Chamber of Commerce of the United States v. Bonta*,
62 F.4th 473 (9th Cir. 2023)....................5

*Charlton v. Yepez*,
2022 WL 2953699 (9th Cir. July 26, 2022)....................15

*Chin v. Thumbtack Inc.*,
2026 WL 807276 (N.D. Cal. Mar. 24, 2026) ... 2

*Christison v. Norm Ross Company (In re Eastview Estates II)*,
713 F.2d 443 (9th Cir. 1983) ... 11

*Cordas v. Uber Technologies, Inc.*,
228 F. Supp. 3d 985 (N.D. Cal. 2017) ... 3

*Coughenour v. Del Taco, LLC*,
271 Cal. Rptr. 3d 602 (Ct. App. 2020) ... 9

*Daniel v. Fairway Independent Mortgage Corporation*,
2026 WL 1076002 (N.D. Cal. Apr. 20, 2026) ... 4

*Day v. Microsoft Corporation*,
2014 WL 243159 (W.D. Wash. Jan. 22, 2014) ... 4

*Doyle v. Giuliucci*,
401 P.2d 1 (Cal. 1965) ... 8, 9

*Driskill v. Experian Information Solutions, Inc.*,
753 F. Supp. 3d 839 (N.D. Cal. 2024) ... 3, 5

*Eriksson v. Nunnink*,
183 Cal. Rptr. 3d 234 (Ct. App. 2015) ... 8

*Feduniak v. California Coastal Commission*,
56 Cal. Rptr. 3d 591 (Ct. App. 2007) ... 11

*Ferguson v. Corinthian Colleges, Inc.*,
733 F.3d 928 (9th Cir. 2013) ... 13

*Garcia v. Roblox Corporation*,
2026 WL 413636 (C.D. Cal. Feb. 11, 2026) ... 7, 10, 11

*Hodges v. Comcast Cable Communications, LLC*,
21 F.4th 535 (9th Cir. 2021) ... 13

*Hofman v. Fidelity Brokerage Services, LLC*,
2023 WL 3872564 (C.D. Cal. May 8, 2023) ... 5

*Hohe v. San Diego Unified School District*,
274 Cal. Rptr. 647 (Ct. App. 1990) ... 8, 9

*J.A. ex rel. Allen v. Microsoft Corporation*,
2021 WL 1723454 (W.D. Wash. Apr. 2, 2021) ... 14

*J.R. v. Electronic Arts Inc.*,
317 Cal. Rptr. 3d 367 (Ct. App. 2024) ... 8, 9

*Jefferson v. California Department of Youth Authority*,
48 P.3d 423 (Cal. 2002) .......... 5

*Jeong v. Nexo Capital Inc.*,
2023 WL 2717255 (N.D. Cal. Mar. 29, 2023) .......... 14

*Keading v. Livingston*,
2026 WL 381639 (N.D. Cal. Feb. 11, 2026) .......... 2

*Keebaugh v. Warner Brothers Entertainment Inc.*,
100 F.4th 1005 (9th Cir. 2024) .......... 2, 3, 12

*Lag Shot LLC v. Facebook, Inc.*,
545 F. Supp. 3d 770 (N.D. Cal. 2021) .......... 14

*Majidi-Ahy v. Classpass, Inc.*,
2026 WL 585465 (C.D. Cal. Feb. 11, 2026) .......... 14

*Marmet Health Care Center, Inc. v. Brown*,
565 U.S. 530 (2012) (per curiam) .......... 12

*Marselian v. Wells Fargo & Co.*,
514 F. Supp. 3d 1166 (N.D. Cal. 2021) .......... 5

*McGill v. Citibank, N.A.*,
393 P.3d 85 (Cal. 2017) .......... 12, 13, 14

*Mendoza v. Microsoft Inc.*,
2014 WL 4540225 (W.D. Wash. Sept. 11, 2014) .......... 4

*Murphy v. DirecTV, Inc.*,
724 F.3d 1218 (9th Cir. 2013) .......... 10

*Nickson v. Shemran, Inc.*,
306 Cal. Rptr. 3d 835 (Ct. App. 2023) .......... 13

*Nguyen v. Tesla, Inc.*,
2020 WL 2114937 (C.D. Cal. Apr. 6, 2020) .......... 14

*Powerine Oil Company v. Superior Court*,
118 P.3d 589 (Cal. 2005) .......... 5

*R.A. v. Epic Games*,
2019 WL 6792801 (C.D. Cal. July 30, 2019) .......... 10

*Ramirez v. Charter Communications, Inc.*,
551 P.3d 520 (Cal. 2024) .......... 13

*Robbins v. Mscripts, LLC*,
2023 WL 5723220 (N.D. Cal. Sept. 5, 2023) .......... 3, 4

*S.G. v. Epic Games, Inc.*,
796 F. Supp. 3d 614 (N.D. Cal. 2025) ....................11

*Serafin v. Balco Properties Limited*,
185 Cal. Rptr. 3d 151 (Ct. App. 2015) ....................14

*Singh v. Adobe Inc.*,
797 F. Supp. 3d 1038 (N.D. Cal. 2025) ....................3, 4

*Tompkins v. 23andMe, Inc.*,
840 F.3d 1016 (9th Cir. 2016) ....................12

*Torres v. Veros Credit LLC*,
2023 WL 5505887 (C.D. Cal. July 13, 2023) ....................13

*Voll v. HCL Technologies Limited*,
2019 WL 144863 (N.D. Cal. Jan. 9, 2019) ....................5

*Walsh v. Microsoft Corporation*,
2014 WL 4168479 (W.D. Wash. Aug. 20, 2014) ....................3

**STATUTES**

Cal. Civ. Code § 35 ....................8

Cal. Fam. Code § 6710 ....................6, 7, 8, 9

## INTRODUCTION

The claims of Gavin Hays, Alyce Itsuye Dart, and A.D. should be compelled to arbitration. These plaintiffs do not dispute that they created the Microsoft accounts identified by their counsel. They also do not dispute that signing up for a Microsoft account requires users to "agree to the Microsoft Services Agreement" ("MSA"), which includes an arbitration provision. Instead, two plaintiffs (Mr. Hays and Ms. Dart) argue that they do not need to arbitrate because Microsoft and Mojang did not produce the exact screens they saw when signing up, because they purportedly do not remember agreeing to arbitrate, and because they purportedly did not intend to agree to arbitrate. Yet courts in the Ninth Circuit consistently have held that exemplar screenshots establish an agreement to arbitrate and that lack of recollection and intent do not defeat the formation of an agreement. A third plaintiff (A.D.) attempted to disaffirm the MSA the same day that plaintiffs filed their opposition. But California's statutory right of disaffirmance for minor contracts does not apply where, as here, a parent entered into a contract on her minor child's behalf. Even if it did apply, A.D. still would have to arbitrate her claims. A.D. has subsequently manifested her intent not to disaffirm by continuing to use the Microsoft account after the supposed disaffirmance, and it would be equitable to require A.D. to arbitrate under the MSA as a nonparty based on her mother's agreement to the arbitration provision when creating an account for A.D.'s benefit.

Plaintiffs fare no better in arguing that the MSA's arbitration provision does not cover their claims and is unenforceable. Plaintiffs' assertion that the arbitration provision does not cover non-contract claims is contrary to the provision's plain language and decades of precedent. And plaintiffs' assertion that the MSA is unenforceable to the extent it waives public injunctive relief likewise fails because (i) plaintiffs do not seek any such relief and (ii) even if they did, their liability claims should still be arbitrated before any such relief is adjudicated in court.

Finally, the fourth plaintiff (R.G.) acknowledges that the Court has the discretion to stay her claims pending arbitration of the other plaintiffs' claims. R.G.'s assertion that her claims are "distinct" from the other plaintiffs' claims are contradicted by the amended complaint's common allegations about R.G. and the other plaintiffs, as well as R.G.'s status as a representative of a

putative "Education Subclass" within the broader "California Class" represented by the other plaintiffs.

The Court should compel arbitration of Ms. Hays's, Mr. Dart's, and A.D.'s claims and stay R.G.'s claims pending resolution of that arbitration.

## ARGUMENT

### I. Mr. Hays And Ms. Dart Agreed To Arbitrate Under The MSA And Are Bound By That Agreement Even If They Cannot Recall Or Did Not Intend To Agree

Mr. Hays and Ms. Dart do not contest that they created the Microsoft accounts identified in the Scari Declaration; that everyone who creates a Microsoft account must press a "Next" button immediately adjacent to the statement "By selecting Next, I agree to the Microsoft Services Agreement and Privacy Statement"; or that this account-creation process "provides reasonably conspicuous notice of the terms to which the consumer will be bound" and solicits an "unambiguous[] manifest[ation]" of a user's "assent to those terms." *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1014 (9th Cir. 2024). They therefore concede that they received reasonably conspicuous notice of the MSA and unambiguously manifested assent to its terms, which include an arbitration provision. *See Keading v. Livingston*, 2026 WL 381639, at *7 (N.D. Cal. Feb. 11, 2026) ("[A] party concedes an argument by failing to respond to it.").

Mr. Hays and Ms. Dart nevertheless argue that the Court should decline to hold them to their agreement because Microsoft and Mojang attached a screenshot of a sign-up flow substantially similar to what they would have seen instead of the screen they "actually saw" and because they do not "recall" agreeing to arbitrate and did not "intend" to agree to arbitrate. Opp. 4-6. The Court should reject these arguments. "When considering whether an arbitration agreement was formed," a court should "apply the summary judgment standard." *Alkutkar v. Bumble, Inc.*, 2025 WL 2925296, at *1 (9th Cir. Oct. 15, 2025). Here, plaintiffs' arguments do not create a "genuine issue as to any material fact regarding formation of the arbitration contract." *Chin v. Thumbtack Inc.*, 2026 WL 807276, at *5 (N.D. Cal. Mar. 24, 2026).

*First*, Microsoft and Mojang have met their burden to establish an agreement to arbitrate. They have "prov[en] the existence of an agreement to arbitrate by a preponderance of the evidence," *Keebaugh*, 100 F.4th at 1013, by showing that: (1) Ms. Dart and Mr. Hays created Microsoft accounts in 2018 and 2019, respectively, Scari Decl. ¶ 10; (2) the Microsoft account-creation process has been "materially the same" since "no later than February 2012," *id.* ¶ 5; (3) the account-creation process provided Mr. Hays and Ms. Dart with "reasonably conspicuous notice" of the MSA; and (4) when creating Microsoft accounts, Mr. Hays and Ms. Dart "unambiguously manifest[ed]" their assent to the MSA, *Keebaugh*, 100 F.4th at 1014; *see* MTC 8-11. Without actually disputing that Microsoft and Mojang's representative screenshots accurately depict the terms displayed to them, Mr. Hays and Ms. Dart fault Microsoft and Mojang for "attach[ing] only an example account-creation screen" rather than the "actual screen displayed to" them. Opp. 4, 6. But they do not cite a single case requiring photographic evidence of the actual screen they saw when they created their accounts.

To the contrary, courts consistently accept declarations with representative screenshots like the ones Microsoft and Mojang submitted—and even declarations without any screenshots at all. For example, in *Singh v. Adobe Inc.*, the defendant's employee "attest[ed that] the screenshots attached to her prior declarations [we]re 'substantially identical' to what [the plaintiffs] would have experienced when they signed up for their respective subscriptions." 797 F. Supp. 3d 1038, 1045 (N.D. Cal. 2025). This Court held that the defendant had "satisfied its burden of demonstrating what [the plaintiffs] would have seen when they signed up." *Id.* at 1046; *see also, e.g.*, *Driskill v. Experian Info. Sols., Inc.*, 753 F. Supp. 3d 839, 842 (N.D. Cal. 2024) (crediting "representation of the webpage as it would have appeared at the time [plaintiff] saw it," without requiring plaintiff-specific evidence of what plaintiff saw); *Cordas v. Uber Techs., Inc.*, 228 F. Supp. 3d 985, 988-989 (N.D. Cal. 2017) (similar). Courts also have compelled arbitration without *any* screenshot evidence when the movant's "declaration is sufficiently detailed" and where there is no "contradicting evidence about what the plaintiff saw." *Robbins v. Mscripts, LLC*, 2023 WL 5723220, at *5 (N.D. Cal. Sept. 5, 2023); *see also Walsh v. Microsoft Corp.*, 2014 WL 4168479,

at *3 (W.D. Wash. Aug. 20, 2014) (finding assent to Microsoft terms based on declarations describing the clickthrough process without screenshots); *Mendoza v. Microsoft Inc.*, 2014 WL 4540225, at *3 (W.D. Wash. Sept. 11, 2014); *Day v. Microsoft Corp.*, 2014 WL 243159, at *2 (W.D. Wash. Jan. 22, 2014). As one court explained, "[a] contrary holding would mean that an obsolete platform is not subject to an arbitration clause merely because illustrative screenshots cannot be generated from a non-existent platform." *Robbins*, 2023 WL 5723220, at *5. Thus, Microsoft and Mojang have met their burden to demonstrate an agreement to arbitrate.[1]

*Second*, Mr. Hays's and Ms. Dart's claims that they do not recall agreeing to the MSA and did not intend to agree to arbitrate, *see* Opp. 5-6, are insufficient to create a material dispute. Courts in the Ninth Circuit have consistently held that the existence of a binding arbitration agreement is not undermined by a party's failure to "recall" various things about the account-formation process. As a panel of the Ninth Circuit recently explained in reversing the denial of a motion to compel arbitration, "because failure to remember an action is 'not mutually exclusive' with that action, failure to remember is not enough to create a genuine dispute of fact." *Boisvert v. Experian Info. Sols., Inc.*, 2026 WL 1079694, at *1 (9th Cir. Apr. 21, 2026). And as this Court recently stated in granting a motion to compel arbitration, a plaintiff's "testimony she does not remember being asked to sign the Arbitration Agreement does not dispute the evidence she signed the Arbitration Agreement." *Daniel v. Fairway Indep. Mortg. Corp.*, 2026 WL 1076002, at *3 (N.D. Cal. Apr. 20, 2026). Where, as here, plaintiffs simply "attest [that] they cannot recall what they saw" and "neither dispute that the screenshots offered [by the defendant] are the same as what they saw nor offer any evidence regarding what they saw," they cannot overcome evidence of assent. *Singh*, 797 F. Supp. 3d at 1046. Moreover, "nothing in the law requires a party to remember having contracted for the agreement to be valid." *Hofman v. Fid. Brokerage Servs., LLC*, 2023

[1] Mr. Hays's declaration focuses on a Minecraft account that he created in 2010, *see* ECF No. 28-1 ¶ 4, but that account is irrelevant to his claims and Microsoft and Mojang's motion. Mr. Hays does not dispute that he created a Microsoft account in 2019, well before this dispute arose. Moreover, the entirety of the "Class Period," as defined in the amended complaint, post-dates the creation of Mr. Hays's Microsoft account. *See* FAC ¶ 75 (defining class period as "four years preceding the filing of the original Complaint in this action," i.e., December 30, 2021, "through the date of class certification").

WL 3872564, at *3 (C.D. Cal. May 8, 2023). "If a party could get out of a contract by arguing that he did not recall making it, contracts would be meaningless." *Marselian v. Wells Fargo & Co.*, 514 F. Supp. 3d 1166, 1173 (N.D. Cal. 2021). Mr. Hays's and Ms. Dart's claimed failures of memory therefore do not relieve them of their agreement to arbitrate.

Binding Ninth Circuit and California precedent also foreclose Mr. Hays's and Ms. Dart's assertions that they should not have to arbitrate their claims because they "did not intend to agree to individual arbitration … or to waive [their] right to proceed in court." Opp. 5-6. "[I]t is the objective intent, as evidenced by the words of the contract, rather than the subjective intent of one of the parties, that controls interpretation." *Bodenburg v. Apple Inc.*, 146 F.4th 761, 767 (9th Cir. 2025); *accord Powerine Oil Co. v. Super. Ct.*, 118 P.3d 589, 601 (Cal. 2005). And as already noted (MTC 12), "parties to a contract are generally deemed to have consented to all the terms of a contract they sign, even if they have not read it." *Chamber of Com. of the U.S. v. Bonta*, 62 F.4th 473, 488 (9th Cir. 2023); *accord Jefferson v. Cal. Dep't of Youth Auth.*, 48 P.3d 423, 425 (Cal. 2002). By agreeing to the MSA during the Microsoft account-creation process and then again through "interrupt" notices and continued use (MTC 10; Scari Decl. ¶ 10), Mr. Hays and Ms. Dart "assented to all of the [MSA's] terms, whether or not [they] actually understood or even read them. These terms included the arbitration agreement." *Marselian*, 514 F. Supp. 3d at 1173.

Because there is no genuine dispute that Mr. Hays and Ms. Dart assented to the MSA's arbitration agreement, discovery is not warranted. *Contra* Opp. 7; *see Driskill*, 753 F. Supp. 3d at 848-849 (denying plaintiff's request for discovery on motion to compel arbitration where requested discovery "would provide no new information helpful to the Court in analyzing [plaintiff's] assent to the arbitration agreement"); *Voll v. HCL Techs. Ltd.*, 2019 WL 144863, at *5 (N.D. Cal. Jan. 9, 2019) (denying plaintiff's request for discovery on motion to compel arbitration where "no material facts [we]re in dispute" regarding "the existence of an agreement to arbitrate"). The Court should conclude that Mr. Hays and Ms. Dart agreed to arbitrate.

**II. A.D. Cannot Avoid Arbitration By Attempting To Disaffirm The Agreement**

A.D. is bound to arbitrate under the MSA for three independent reasons: (1) because Ms. Dart assented to the MSA on her behalf; (2) because she is a third-party beneficiary of the MSA; and (3) under estoppel principles. MTC 11-15. To the extent plaintiffs have argued Ms. Dart did not agree to arbitrate on A.D.'s behalf, their arguments fail. Opp. 11-13. Ms. Dart claims that she did not knowingly or intentionally agree to arbitration claims on A.D.'s behalf but, as discussed above, that does not create a material dispute as to whether Ms. Dart in fact agreed to arbitrate on A.D.'s behalf, as Microsoft and Mojang's evidence shows. And Ms. Dart's assertions that A.D. is not a third-party beneficiary because A.D. only "incidentally" benefited from the contract are inconsistent with Ms. Dart's own statements in this litigation that she created the account for A.D.

Plaintiffs' central argument against enforcing the arbitration agreement against A.D. is that Ms. Dart purported to disaffirm the MSA on A.D.'s behalf under California Family Code Section 6710 on May 11, the same day that plaintiffs filed their opposition. Opp. 7-11. There was no disaffirmance here. *First*, Ms. Dart's attempt to disaffirm on A.D.'s behalf is legally ineffective because Section 6710 applies only to "contract[s] of a minor," not to contracts that adults enter on behalf of their children. As California courts have held, Section 6710 does not allow minors to disaffirm contracts previously entered into by adults on their behalf. *Second*, A.D. has manifested her intent not to disaffirm the MSA by continuing to use the MSA account after Ms. Dart's supposed disaffirmance on her behalf. *Third*, in any event, equitable considerations require A.D. to arbitrate because her mother agreed to the MSA's arbitration provision when creating a Microsoft account for A.D.'s benefit.

**A. Ms. Dart's Agreement To The MSA And Its Arbitration Provision Binds A.D.**

A.D is bound by the MSA because of Ms. Dart's agreement, and plaintiffs' arguments for disaffirmance tacitly acknowledge that this is the case.

*Ms. Dart's Assent Binds A.D.* Ms. Dart's assertions that she did not "knowingly" or "inten[tionally]" agree to bind A.D. to arbitration (Opp. 11) does not create a genuine dispute of material fact in light of Microsoft and Mojang's evidence demonstrating that Ms. Dart received

reasonably conspicuous notice of the MSA and unambiguously manifested assent to its terms, which include a term providing that "[i]f you are the parent or legal guardian of a minor, you and the minor accept and agree to be bound by these Terms." Ex. A § 4(a)(iii); *see supra* pp.4-5 (discussing cases holding that lack of knowledge and intent do not negate an agreement).

*A.D. Is Bound As A Third-Party Beneficiary.* Plaintiffs assert that a non-signatory cannot be bound because she "merely" "incidentally benefited from a contract," Opp. 11, but that is not relevant here since Ms. Dart created the contract for A.D.'s benefit. The amended complaint itself alleges that Ms. Dart "creat[ed] *A.D.'s* Minecraft account" and "download[ed] Minecraft *for A.D.*" FAC ¶ 8 (emphases added). These assertions in plaintiffs' operative pleading are "judicial admissions conclusively binding on" plaintiffs. *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988). Ms. Dart's declaration also confirms that she created the account for A.D.'s benefit, stating that Ms. Dart "set[] up, download[ed], purchas[ed], or allow[ed] Minecraft *for A.D.'s personal recreational use*." ECF No. 28-2 ("Dart Decl.") ¶ 6 (emphasis added). These statements confirm that A.D. is an intended third-party beneficiary of the MSA.

*Estoppel Binds A.D. To The MSA's Arbitration Agreement.* Plaintiffs offer no response to Microsoft and Mojang's argument that estoppel principles are an independent reason that A.D.'s claims are subject to the MSA's arbitration provision. MTC 13-14. Instead, they object only that A.D. cannot be estopped from disaffirming the MSA. But as discussed below, even if Ms. Dart has disaffirmed the contract on A.D.'s behalf (she has not), equitable considerations warrant requiring A.D. to arbitrate her claims.

### B. Ms. Dart's Attempt To Disaffirm On Behalf Of A.D. Fails

Ms. Dart's purported disaffirmance on May 11 "[o]n behalf of A.D., and as A.D.'s parent and guardian," Dart Decl. ¶ 29, is invalid because Section 6710 permits minors to disaffirm only contracts that they themselves entered, and A.D. did not agree to the MSA.[2]

---

[2] Although plaintiffs assert that "the filing of a lawsuit *may* itself constitute disaffirmance," Opp. 7 (emphasis added), they do not argue that A.D. disaffirmed by filing this lawsuit, *see id.* at 8 (referring to "May 11, 2026 disaffirmance"). For good reason. As they acknowledge, a minor cannot both disaffirm a contract and continue to enjoy the benefits of the agreement after purported disaffirmance (here, by playing Minecraft). *See id.* at 12 (discussing *Garcia v. Roblox Corp.*, 2026

Section 6710 provides that "a *contract of a minor* may be disaffirmed *by the minor*." Cal. Fam. Code § 6710 (emphases added). Where, as here, a parent entered into a contract on a child's behalf, Section 6710 does not apply. A contract that is signed by a parent, even if on behalf of a minor, is not the "contract of a minor." Courts therefore have repeatedly recognized that Section 6710 is "not intended to affect contracts entered into by adults on behalf of their children." *Hohe v. San Diego Unified Sch. Dist.*, 274 Cal. Rptr. 647, 649 (Ct. App. 1990); *see also Beverly v. Sabo Eventing LLC*, 2026 WL 366449, at *4 (Cal. Ct. App. Feb. 10, 2026) (minor "may not disaffirm under section 6710 the arbitration provision her mother signed on her behalf");[3] *Eriksson v. Nunnink*, 183 Cal. Rptr. 3d 234, 245 (Ct. App. 2015) (parental signature made release of liability for 17-year-old daughter "irrevocable and binding" and placed it outside the scope of section 6710); *Doyle v. Giuliucci*, 401 P.2d 1, 3 (Cal. 1965) (Traynor, J.) (explaining that Section 6710's predecessor provision "does not apply to contracts between adults and is therefore not controlling on the question of a parent's power to bind his child to arbitrate by entering into a contract."); *accord BNSF Ry. Co. v. Magin*, 2026 WL 828795, at *23 (E.D. Mo. Mar. 26, 2026) ("The Court declines to allow N.N. to disavow Amtrak's Arbitration Agreement, which his mother legally entered on his behalf.").[4] Here, because the MSA is not a "contract of a minor," Section 6710 does not apply and Ms. Dart's attempted disaffirmance fails. Moreover, even if the MSA could be disaffirmed, Ms. Dart could not—as she purports to do (Dart Decl. ¶ 29)—disaffirm on A.D.'s behalf. Section 6710 provides that the disaffirmance must be "by the minor," and Ms. Dart is not "the minor."

Plaintiffs' cases are not to the contrary because in each of those cases, a minor child disaffirmed his own contract. Plaintiffs rely on *J.R. v. Electronic Arts Inc.*, 317 Cal. Rptr. 3d 367

---

WL 413636, at *6 (C.D. Cal. Feb. 11, 2026)). Because Ms. Dart acknowledges that A.D. continued "us[ing] the Minecraft account at issue" in April 2026, Dart Decl. ¶ 36, after Ms. Dart filed this litigation on A.D.'s behalf on March 18, 2026, A.D. did not disaffirm by filing this lawsuit.

[3] A federal court "may consider unpublished California Court of Appeal decisions in determining California law, even though such opinions are not precedent within the state system." *Casola v. Dexcom, Inc.*, 98 F.4th 947, 958 n.12 (9th Cir. 2024).

[4] *Doyle* and *Hohe* discussed former Cal. Civ. Code § 35, but "Section 6710 continues former Civil Code Section 35 without substantive change." Cal. Fam. Code § 6710 law revision commission revised comment.

(Ct. App. 2024), *see* Opp. 9-10, but there the minor child created the videogame account and assented to the arbitration agreement himself, as opposed to a parent doing so on his behalf, and the minor also effected the disaffirmance himself, *see* 317 Cal. Rptr. 3d at 371 (minor child "used his e-mail address to register for an account with [defendant]," and "he was the only person who accessed that account"). Similarly, in *Berg v. Traylor*, the minor child was a principal to the contract, which was a management agreement related to the minor's career as a child actor. 56 Cal. Rptr. 3d 140, 147 (Ct. App. 2007). The court acknowledged that Section 6710 "was not intended to affect contracts entered into by adults on behalf of their children," but found that the management agreement was not such a contract because the agreement "impose[d] significant affirmative responsibilities" on the minor himself, including payment of hundreds of thousands of dollars in commissions. *Id.* That reasoning is inapposite here, where the MSA imposed no obligations on A.D. *See Beverly*, 2026 WL 366449, at *5 (distinguishing *Berg* on these grounds and holding that minor could not disaffirm).

Plaintiffs cannot overcome the plain text of Section 6710 and the case law interpreting it by gesturing to "California's [p]ublic [p]olicy." Opp. 8. Plaintiffs argue that it would be inconsistent with the policy behind Section 6710 to require her to arbitrate—but California courts have held otherwise. As discussed above, they have been clear that Section 6710 does not affect "a parent's power to bind his child to arbitrate by entering into a contract." *Doyle*, 401 P.2d at 3; *accord Hohe*, 274 Cal. Rptr. at 649; *Beverly*, 2026 WL 366449, at *4. Section 6710's purpose "is to protect the minor from his own improvidence" by allowing minors to disaffirm contracts that they signed. *Hohe*, 274 Cal. Rptr. at 649; *see also Berg*, 56 Cal. Rptr. 3d at 146 (similar). As plaintiffs themselves explain, "'[t]he law shields minors from their lack of judgment and experience.'" Opp. 8 (quoting *Coughenour v. Del Taco, LLC*, 271 Cal. Rptr. 3d 602, 607 (Ct. App. 2020)). Section 6710's purpose of protecting minors from their own lack of judgment and experience is not undermined by holding their adult parents to agreements they make on their children's behalf. On the other hand, if both contracts entered into by children and contracts

entered into by parents on their children's behalf could be disaffirmed, as plaintiffs claim, companies would be deterred from providing children with services.

Finally, "California's more recent privacy legislation" also does not "confirm" plaintiffs' view that public policy requires the conclusion that A.D. disaffirmed the MSA. Opp. 9. These statutes say nothing about minors' disaffirmance of contracts. And, as plaintiffs concede (*id.*), they themselves are not even bringing claims under those statutes.

**C. A.D. Has Not Disaffirmed The MSA Because She Has Continued To Use The Microsoft Account**

A.D. did not disaffirm the contract for the independent reason that A.D. has continued to use the Microsoft account. "[I]t is a longstanding general rule of California law that 'a party cannot apply to his own use that part of the transaction which may bring to him a benefit, and repudiate the other, which may not be to his interest to fulfill.'" *C.M.D. ex rel. De Young v. Facebook, Inc.*, 621 F. App'x 488, 489 (9th Cir. 2015) (quoting *Babu v. Petersen*, 48 P.2d 689, 694 (Cal. 1935)). But according to plaintiffs themselves, A.D. continued to use the account after filing the amended complaint, until at least "around approximately April 2026." Dart Decl. ¶ 9. And Microsoft's records reflect that the account was last accessed on May 16, 2026—*after* A.D.'s purported disaffirmance. *See* Second Declaration of Michael Scari ("Second Scari Decl.") ¶ 2. "By continuing to use [the account] after bringing th[is] action, [A.D.] manifested an intention not to disaffirm the [MSA]." *C.M.D.*, 621 F. App'x at 489; *see also R.A. v. Epic Games*, 2019 WL 6792801, at *6 (C.D. Cal. July 30, 2019) (explaining that plaintiff did not "effectively disaffirm" agreement governing use of video game when he continued playing the game).

**D. Equitable Considerations Support Binding A.D. To The MSA**

Even if Ms. Dart could disaffirm the MSA on behalf of A.D., and even if A.D.'s continued use of the account did not undermine that disaffirmance, equitable considerations would weigh in favor of holding A.D. to the MSA's arbitration provision. "Under California law, 'a nonsignatory to an agreement to arbitrate may be required to arbitrate … if a preexisting confidential relationship … makes it equitable to impose the duty to arbitrate upon the nonsignatory.'" *Garcia v. Roblox*

*Corp.*, 2026 WL 413636, at *5 (C.D. Cal. Feb. 11, 2026) (brackets omitted) (quoting *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1232 (9th Cir. 2013)). And "California courts have recognized that the parent-child relationship" in particular may qualify as such a relationship. *Id.* Here, given that A.D.'s mother, Ms. Dart, also agreed to be bound by the MSA—and did so "at least in part for [A.D.'s] benefit" so that she could play Minecraft—their "preexisting relationship" makes it fair for the agreement to be enforced against A.D. *S.G. v. Epic Games, Inc.*, 796 F. Supp. 3d 614, 621 (N.D. Cal. 2025); *accord Garcia*, 2026 WL 413636, at *5.

A.D. asserts that "equitable estoppel is not a device for nullifying a minor's statutory disaffirmance." Opp. 12. Even assuming A.D.'s disaffirmance was effective (and it was not), she would no longer be considered a party to the contract but still would be required to arbitrate as a nonparty. "A nonsignatory to an agreement to arbitrate may be required to arbitrate." *Garcia*, 2026 WL 413636, at *5 (brackets omitted). Moreover, equitable principles can limit a party "from asserting a right which has come into existence by … statute." *Feduniak v. Cal. Coastal Comm'n*, 56 Cal. Rptr. 3d 591, 610 (Ct. App. 2007); *see, e.g.*, *Ateeq v. Najor*, 19 Cal. Rptr. 2d 320, 323 (Ct. App. 1993) ("A person by his conduct may be estopped to rely on the statute [of limitations]."); *Christison v. Norm Ross Co. (In re Eastview Ests. II)*, 713 F.2d 443, 450 (9th Cir. 1983) ("[E]quitable estoppel can, in appropriate circumstances, prevent a party from asserting the Statute of Frauds.").

A.D.'s attempts to distinguish *Garcia* and *S.G.* are not persuasive. She argues that those cases involved "guardian-created … accounts," "repeated parent/account-related assent events," and "evidence that the minor continued using the … platform after the alleged disaffirmance" (Opp. 12-13), but this case also involves parent-created accounts associated with multiple assent events and continued use after the alleged disaffirmance. *See* Scari Decl. ¶ 10; Second Scari Decl. ¶ 3. The amended complaint itself alleges that Ms. Dart "creat[ed] *A.D.'s* Minecraft account" and "download[ed] Minecraft *for A.D.*" (FAC ¶ 8 (emphases added)), and Ms. Dart's declaration reiterates that she "set[] up, download[ed], purchas[ed], or allow[ed] Minecraft *for A.D.'s personal recreational use*." Dart Decl. ¶ 6 (emphasis added).

## III. The MSA's Arbitration Agreement Covers Mr. Hays's, Ms. Dart's, And A.D.'s Claims

To the extent that Mr. Hays, Ms. Dart, and A.D mean to argue that their claims are not covered by the arbitration agreement when they emphasize that they are not bringing claims for breach of contract, they are mistaken. *See* Opp. 5 (Mr. Hays "is not suing to enforce any promise, benefit, or right under the MSA"); *id.* at 6 (Ms. Dart's "individual claims are not claims for breach of the MSA or for enforcement of any contractual benefit"); *id.* at 11 ("A.D. is not suing to enforce the MSA" and "does not seek contractual benefits under the MSA"). Settled precedent makes clear that arbitration agreements can cover non-contractual claims. *See, e.g.*, *Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530, 532 (2012) (per curiam) ("The [FAA's] text includes no exception for personal-injury or wrongful-death claims."); *Keebaugh*, 100 F.4th at 1009, 1012 (reversing denial of motion to compel arbitration of claims for fraud, negligent misrepresentation, declaratory judgment, and violations of several consumer-protection statutes). As Microsoft and Mojang explained (MTC 14-15), the MSA's arbitration agreement covers Mr. Hays, Ms. Dart, and A.D.'s claims. The agreement's scope includes "any claim or controversy … under any legal theory including contract, warranty, tort, statute, or regulation," and Mr. Hays, Ms. Dart, and A.D.'s claims all "concern[]" Minecraft games. Ex. A § 15(a). And to the extent there is any uncertainty, which there is not, "[a]ny doubts about the scope of arbitrable issues … are to be resolved in favor of arbitration." *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1022 (9th Cir. 2016).

## IV. The MSA's Arbitration Agreement Is Enforceable

Plaintiffs are wrong that the MSA's arbitration agreement is unenforceable under the California Supreme Court's decision in *McGill v. Citibank, N.A.*, 393 P.3d 85 (Cal. 2017). Opp. 13. *McGill* held that contracts cannot waive a right to seek "public injunctive relief" in all fora. Plaintiffs cannot rely on *McGill* to avoid their agreement to arbitrate because (i) plaintiffs are not seeking public injunctive relief, and (ii) even if they were, the arbitration agreement is consistent with *McGill*.

*First*, *McGill* is inapplicable because plaintiffs do not seek public injunctive relief. Public injunctive relief is "limited to forward-looking injunctions that seek to prevent future violations of

law for the benefit of the general public as a whole, as opposed to a particular class of persons, and that do so without the need to consider the individual claims of any non-party." *Hodges v. Comcast Cable Commc'ns, LLC*, 21 F.4th 535, 542 (9th Cir. 2021). In contrast, "when the injunctive relief being sought is for the benefit of a discrete class of persons, or would require consideration of the private rights and obligations of individual non-parties, it has been held to be private injunctive relief." *Id.* at 543. In the latter circumstance, a party cannot avoid enforcement of an arbitration agreement, even if the arbitration agreement violates the *McGill* rule. *See id.* at 538. Here, the amended complaint never uses the phrase "public injunction" and seeks relief on behalf of particular classes (a limited group of Minecraft users)—not the general public. FAC ¶¶ 72-74. That is private injunctive relief. *See Torres v. Veros Credit LLC*, 2023 WL 5505887, at *5 (C.D. Cal. July 13, 2023) (finding plaintiff's requested relief to prevent another data breach constitutes private injunctive relief because it would only benefit a particular class of persons—defendants' customers).

*Second*, the arbitration agreement is consistent with *McGill*. The MSA states both that "requests for public injunctions … aren't allowed," Ex. A § 15, and that if a court finds any part of section 15 unenforceable as to any request for a remedy "(such as a request for a public injunction remedy)" then the arbitrator decides liability and the parties return to court to rule on the requested relief if liability is found, *id.* § 15(g). Section 15(g) "evidences the parties' intent that, to the extent possible, the valid provisions of the contracts be given effect, even if some provision is found to be invalid or unlawful." *Nickson v. Shemran, Inc.*, 306 Cal. Rptr. 3d 835, 841 n.6 (Ct. App. 2023) (brackets omitted); *accord Ramirez v. Charter Commc'ns, Inc.*, 551 P.3d 520, 547 (Cal. 2024). Courts have approved contracts that, like the MSA, require plaintiffs to arbitrate their claims while permitting requests for public-injunctive relief to proceed in court subsequent to any finding of liability in arbitration. *See, e.g.*, *Ferguson v. Corinthian Colls., Inc.*, 733 F.3d 928, 937 (9th Cir. 2013) ("Plaintiffs may return to the district court to seek their public injunctive relief" after arbitration); *Blair v. Rent-A-Ctr., Inc.*, 928 F.3d 819, 831 (9th Cir. 2019) (parties are "welcome to agree to split decision-making between a court and an arbitrator" so that the court fashions the

remedy, if needed); *Nguyen v. Tesla, Inc.*, 2020 WL 2114937, at *5 (C.D. Cal. Apr. 6, 2020) (compelling arbitration of individual claims and staying action pursuant to arbitration clause containing a public-injunctive-relief severance clause); *J.A. ex rel. Allen v. Microsoft Corp.*, 2021 WL 1723454, at *9 (W.D. Wash. Apr. 2, 2021) ("[I]f the arbitrator finds the issue of public injunctive relief cannot be arbitrated and finds Microsoft liable under California law, the case would return to this Court for a determination as to public injunctive relief."), *R&R adopted*, 2021 WL 1720961 (W.D. Wash. Apr. 30, 2021).

Accordingly, if *McGill* were found to apply in this case (and it should not be), the proper course of action would be to sever the public-injunctive-relief provision and to grant Microsoft and Mojang's motion to compel on the issues of liability and individual relief—not to deny the motion outright. *See Serafin v. Balco Props. Ltd.*, 185 Cal. Rptr. 3d 151, 165 (Ct. App. 2015); *see, e.g.*, *Majidi-Ahy v. Classpass, Inc.*, 2026 WL 585465, at *9 (C.D. Cal. Feb. 11, 2026) (severing provision found to violate *McGill* rule and otherwise enforcing arbitration agreement); *Jeong v. Nexo Cap. Inc.*, 2023 WL 2717255, at *9-10 (N.D. Cal. Mar. 29, 2023) (same); *Brown v. Madison Reed, Inc.*, 2021 WL 3861457, at *9 (N.D. Cal. Aug. 30, 2021) (same); *Lag Shot LLC v. Facebook, Inc.*, 545 F. Supp. 3d 770, 785-786 (N.D. Cal. 2021) (same).

**V. The Court Should Stay The Entire Case Pending Arbitration**

The Court has discretion to stay R.G.'s claims pending arbitration of Mr. Hays's, Ms. Dart's, and A.D.'s claims; the only question is whether the Court should exercise its discretion to stay the claims. MTC 16-18; Opp. 14-15. It should.

R.G.'s main rationale for opposing a stay of her claims is that her claims "involve school-provided credentials, a school-associated Minecraft Education account, and alleged tracking of a minor in an educational setting," whereas Mr. Hays's, Ms. Dart's, and A.D.'s claims allegedly arise from consumer accounts. Opp. 15. Yet R.G. and her co-plaintiffs assert substantially similar claims with overlapping legal and factual questions, as reflected by (1) the numerous paragraphs in the amended complaint that do not differentiate among different plaintiffs or Minecraft games, and (2) plaintiffs' choice to plead R.G. as representing a putative "Education Subclass," which is

alleged to be a subset of the broader putative "California Class" represented by the other named plaintiffs whose claims are arbitrable. *See* FAC ¶¶ 72, 74, 85. R.G.'s suggestion that her claims are wholly unrelated to Mr. Hays's, Ms. Dart's, and A.D.'s claims and that simultaneous proceedings would not be wasteful strains credulity.

R.G. also incorrectly argues that a stay is not warranted because it "would delay discovery and injunctive relief concerning children's educational privacy." Opp. 15. Given the overlapping legal and factual questions presented by R.G.'s and the other plaintiffs' claims, plaintiffs may seek discovery in arbitration that would be relevant to R.G.'s claims. And R.G. does not explain how any delay caused by a stay would outweigh the countervailing benefits to judicial economy of avoiding simultaneous, overlapping parallel proceedings. Indeed, it always is the case that a stay of claims pending resolution of arbitration "delays" discovery and ultimate relief on the stayed claims, but courts nonetheless regularly grant motions to stay. *See* MTC 16-17.

Finally, the Court should not credit R.G.'s speculation that a stay would "risk loss of evidence." Opp. 15. R.G. provides no basis for implying that Microsoft may not comply with its obligations to preserve evidence relevant to the dispute. *See, e.g.*, *Charlton v. Yepez*, 2022 WL 2953699, at *1 (9th Cir. July 26, 2022) ("A party's duty to preserve begins when it has 'some notice that the evidence is potentially relevant to the litigation.'" (brackets omitted)).

## CONCLUSION

For the foregoing reasons, Microsoft and Mojang respectfully request that the Court grant their motion to compel arbitration of Mr. Hays's, Ms. Dart's, and A.D.'s claims and stay this action in its entirety (including R.G.'s claims) pending the completion of arbitration of Mr. Hays's, Ms. Dart's, and A.D.'s claims.

DATED: May 20, 2026

Respectfully submitted,

*/s/ Emily Barnet*

Emily Barnet (*pro hac vice*)
WILMER CUTLER PICKERING
HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Telephone: (212) 230-8800
Facsimile: (212) 230-8888
emily.barnet@wilmerhale.com

Joshua H. Lerner (SBN 220755)
WILMER CUTLER PICKERING
HALE AND DORR LLP
50 California Street, Suite 3600
San Francisco, CA 94111
Telephone: (628) 235-1000
Facsimile: (628) 235-1001
joshua.lerner@wilmerhale.com

Siddharth Velamoor (*pro hac vice*)
WILMER CUTLER PICKERING
HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
Telephone: (202) 663-6000
Facsimile: (202) 663-6363
siddharth.velamoor@wilmerhale.com

*Attorneys for Defendants Microsoft Corporation and Mojang AB*